**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 21-106 (TJK) |
| Jerod Hughes | |
| Defendant. | |

**DEFENDANT'S MOTION FOR MODIFICATION OF**
**OF BOND TO PLACE THE DEFFENDANT**
**ON CONDITIONAL RELEASE PENDING TRIAL**

Defendant Jerod Hughes, by and through undersigned counsel, respectfully moves this Court, pursuant to the Bail Reform Act of 1984, 18 U.S.C. 3141 et seq., to release the defendant on personal recognizance. Alternatively, if the Court is not amenable to release defendant on personal recognizance, Defendant moves this court to commit him to the supervision of a High Intensity Supervision Program (HISP) with GPS monitoring by local Pretrial Services in Montana.   The defendant requests that he be placed on house arrest with reasonable curfew privileges that allow him to leave the house for work and activities related to this case.  In support of this request the defense states the following:

**I.  BACKGROUND**

Mr. Hughes is 36 years old has been gainfully employed his entire adult life. He has worked steadily since his teen years.[1] As the numerous character letters establish, he is a hard-working responsible family man Numerous witnesses have attested to that including his current employer from Valley Metal Services.

He lives with his wife, Katherine Hughes with whom he has been involved since they were classmates in High School.  They have one daughter, Andrea Hughes who is 14 years old.  Defendant's wife is completely disabled.  Defendant is the sole financial supporter of the family. Defendant works 4 days a week 10 hours per day on his full-time job. He also works at that job on Fridays when work is available and part time on weekends with a friend doing tile installation to make additional money. Given his wife's physical disability he is the primary home maker as well as caretaker for his wife.  She is currently scheduled for a medical appointment this Friday at which a surgical appointment is to be scheduled. Post-surgery she will be bed ridden and completely dependent on defendant for all services during her recovery period.  The defendant's

---

[1]  As a very young man the defendant did have some issues with "substance abuse."  It appears that there was some contact with the criminal justice system in that regard but it is relatively remote.

incarceration and inability to support his family is causing a grievous hardship on the family.

They are in debt due to her outstanding medical bills.  Defendant's inability to work is further aggravating their financial situation, driving them further into debt.

Defendant is before the Court charged with multiple counts arising out of his alleged participation in the activities that occurred at the United States Congress.  On January 6, 2021, defendant and his brother traveled by car for several days from their home in Montana in order to attend a rally in Washington, DC where many speakers, including then President of the United States, Donald J. Trump would be speaking. Defendant is not part of any group and was not part of any concerted action at the Capitol. He travelled on his own, to support the President and only had the intent to protest what he believed was the "stolen election." There was no plan nor intent to engage in civil disobedience.  As has been noted, several of the attendees came prepared for confrontation wearing, "combat gear," helmets, body armor, etc..   Defendant did not.    He had no intention nor expectation that he would be involved in anything other than a peaceful show of support for President Trump.

During President Trump's speech he encouraged the attendees to march to the United States Capitol to protest the Electoral College certification of the vote for the 2020 Presidential Election. When then President Trump encouraged the crowd to walk toward the Capitol. Defendant marched to the Capitol with the crowd, thinking he was protesting the election, which the President claimed had been fraudulently "stolen." Defendant did not cause damage to the Capitol buildings or grounds or commit any crime or acts of violence[2].  Defendant does not believe the prosecution is making any claims that Defendant was violent nor destructive while in the Capitol. Although there is evidence defendant entered into the Capitol, once inside when defendant saw others engaging in acts of destruction he did not want to associate with that type of conduct. Consequently, he voluntarily left the Capitol. Simultaneously, law enforcement in the Capitol were instructing people that they should leave; defendant complied with their admonitions.

## Defendant's Surrender

---

[2] Defense is preparing the instant motion without any discovery or a pre sentence report. All representations are "made upon information and belief."

The defendant returned home without incident. Once home he learned that his image may have appeared in the media as someone the FBI was seeking to identify. Defendant went to the local courthouse to surrender himself[3]. At the local courthouse he learned there was no arrest warrant, but was told he should go to the local FBI office. Defendant went to the local FBI office but was again told there was no arrest warrant. Defendant left his contact information, telling the agent that if there was anything further, they could contact him and he would be cooperative. Several weeks later, when contacted by the FBI, defendant was cooperative. He returned to their office on a Friday and was told that they were going to have to take him into custody because of the instant case. They advised him if he wanted, he could leave his cell telephone, go home for the weekend then return on Monday when he would be taken into custody. Defendant did so. He has been cooperative and in custody since.

It is hard to imagine anyone who presents less of a flight risk than defendant. At the risk of sounding facetious, he has been frighteningly proactive in pursuing his prosecution. Similarly, upon information and

---

[3] As noted in the letters of support, defendant has several family members that are law enforcement. He sought their advice which was to surrender himself, believing there was an arrest warrant.

belief, there has never been an allegation that he has ever done anything to harm any person. Consequently, hard to imagine anyone could seriously maintain that his release poses an unreasonable danger to the community.

## II.  PROPOSED CONDITIONS OF RELEASE

Defendant's first request is that he be released on personal recognizance, consistent with the statutory presumption as the favored form of release.  If the Court believes personal recognizance is not sufficient, defendant requests that he be released into the HISP program or it's functional equivalent in Montana, including that a GPS monitoring system be employed along with a reasonable curfew that permits him to work and support himself and attend to family business.

## III.  MEMORANDUM OF LAW AND ARGUMENT

Defendant submits that the order of detention should be vacated and that this Court should set conditions of release in this case.  Under the Bail Reform Act ("the Act"), 18 U.S.C. §§ 3142, *et. seq.,* there are four bail options: release on personal recognizance, release on conditions, temporary detention and pretrial detention.  18 U.S.C. § 3142(a).  The Act provides that if the Court finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the

appearance of the person as required and the safety of any other person and the community, such judicial officer shall order detention of the person before trial."  18 U.S.C. §§ 3142(e)(1), (f)(2)(g).  However, there is a strong presumption against detention.  *See United States v. Hassanshahi*, 989 F. Supp. 2d 110, 113 (D.D.C. 2013) (citing *United States v. Hanson*, 613 F. Supp. 2d 85, 87 (D.D.C. 2009); *United States v. Salerno*, 481 U.S. 739, 755 (1987) ("[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.").  Courts have held that a finding that defendant is a danger to the community or a serious flight risk is a basis of detention.  *See United States v. Anderson*, 177 F. Supp. 3d 458, 461 (D.D.C. 2016) (*citing United States v. Salerno*, 481 U.S. 739, 755 (1987).  The finding must be based on clear and convincing evidence that the defendant poses a danger to the community or a preponderance of the evidence to support the defendant's likelihood to flee.  *See id.*; *see also United States v. Xulam*, 318 U.S. App. D.C. 1, 84 F.3d 441, 442 (1996) (citing *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987)).

The Act mandates pretrial release on personal recognizance or unsecured bond stating that the court "shall order the pretrial release…" unless the court determines that release will not reasonably assure the person's appearance or will endanger the safety of any person or the

community. 18 U.S.C. § 3142(b)).  When personal recognizance or an unsecured bond is determined to be inadequate to guarantee appearance or safety, the Act still mandates release.  18 U.S.C. § 3142(c).  The conditions must be the least restrictive conditions necessary to reasonably assure the defendant's appearance and the community's safety.  *United States v. Fortna*, 769 F.2d 243 (5th Cir. 1985), cert. denied, 479 U.S. 950 (1986).

To determine whether the conditions of release will reasonably assure a defendant's future presence in court, the following factors are considered: "(1) the nature and circumstances of the offense charged… (2) the weight of the evidence against the person; (3) the history and characteristics of the person… (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g)(1)-(4).

The legislative history of the Act stresses that '[t]he decision to provide for pretrial detention is in no way a derogation of the importance of the [accused's] interest in remaining at liberty prior to trial.  It is anticipated that [pretrial release] will continue to be appropriate for the majority of federal

defendants."  S. Rep. No. 225, 98th Cong., 1st Sess. 7, 12, *reprinted in*, 1984 U.S. Code Cong. & Ad. News 3189.

In the instant case Defendant's continued detention without bond is not the least restrictive alternative case; there are conditions available that will assure the community's safety and his return for future court dates. *See U.S. v. Xulam*, 84 F.3d 441 (D.C. Cir. 1996).  Defendant  is among that majority for whom a combination of conditions short of detention without bond can be fashioned to "reasonably assure" the safety of the community and his appearance for trial.  *See United States v. Orta*, 760 F.2d 887 (8th Cir. 1985); *see also* 18 U.S.C. §3142(c)(1)(B) (stating the judicial officer shall order the pretrial release of an accused "subject to the least restrictive further condition or combination of conditions, that such judicial officer shall determine will reasonably assure the appearance of the person as required and the safety of any other person and the community").

Notwithstanding that the defendant has been indicted he is still presumed innocent.  The defendant's ability to prepare a defense will be hampered by his pretrial incarceration.  Additionally, there are several factors in the instant case which demonstrate that there are conditions of

release which would both guarantee Defendant's appearance and assure the safety of the community.

## i. The nature and circumstances of the offenses charged weigh in favor of defendant's s release.

In determining the nature and circumstances of the offense charged, the court looks at the seriousness of the offense.  *See* 18 U.S.C. § 3142(g)(1).  Here, the nature and circumstances of the charged offenses weigh heavily in favor of release. Defendant is charged primarily with offenses related to being on restricted Capitol grounds.  The offenses are non-violent offenses.  The prosecution does not allege that defendant ever physically injured anyone at any time.  There is no claim defendant ever attempted to injure anyone at any time. There is no claim defendant ever threatened to injure anyone at any time.  There is no claim defendant ever planned, conspired, agreed, aided, abetted, facilitated or encouraged anyone to physically harm anyone at any time.  There is no claim defendant ever possessed let alone used a firearm or weapon of any type at any time.  There is no claim defendant ever attempted to obtain nor transfer any weapon at any time for any purpose in connection with the underlying event or in connection with the activities at issue.  Similarly,

there is no claim defendant ever possessed any handcuffs, flex cuffs, or other forms of restraints as has been alleged against other persons involved in the underlying event.

There is no evidence that defendant participated in the planning of the underlying event, he was merely one of the thousands that participated in the event and ended up getting swept along with the crowd. He was not part of any group, is not a member of any organizations that was involved in the demonstration. Rather he travelled to the demonstration by himself to listen to a speech and exercise his right to protest. Similarly, he was not part of any group at the demonstration.

## ii.  The weight of the evidence weighs in favor of Defendant's release.

The charges and the weight of the evidence against defendant stem from allegations that he entered the Capitol and its grounds. Because there has been no discovery disclosed the defense does not know what the evidence is but assumes, like most of the January 6, 2021 protester cases, the evidence in this case primarily consists of various photographs and video that appear to capture defendant at the Capitol on January 6, 2021. As stated above, defendant is charged with crimes stemming from entering and remaining on Capitol grounds, principally offenses analogous to

trespass.   He is not charged with crimes of violence nor destruction. He never assaulted nor threatened anyone.  The weight of the evidence leans in favor of defendant's release.

## iii. Defendant's History and Characteristics weigh in favor of his release.

As clearly reflected in the numerous letters of support, defendant is a working citizen and family man.  Aside from the allegations in the instant case, he is a law-abiding citizen, not oriented towards a criminal lifestyle.

Defendant has extensive ties to the community where he lives, in Montana.

Due to these ties and his background, there is no indication that he would be a risk of flight or otherwise fail to comply with any order from this Court.  Defendant's history and characteristics weigh heavily toward his release.

## iv. Defendant is not a danger to the community and should be released.

On January 6, 2021, Defendant set out to exercise his First Amendment right to protest.  When he reached Capitol grounds things undoubtedly got out of hand.  Assuming the prosecution's allegations are

correct that he entered the Capitol area, it appears defendant   got swept up in the moment.  However, at no time does the government allege the defendant personally attempted to physically harm anyone.  They claim many other individuals of the thousands who participated in the activities of January 6, 2021, did inflict physical harm on individuals.   Still others expressed a desire and intent to do so. Apparently, they do not claim that there is evidence defendant personally did so.   Defendant is not a member of any far right-wing group.  He has no record of violence or criminality that poses a danger to the community.   There is no allegation he ever expressed a desire or inclination to physically harm anyone.

Lastly, in assessing the danger defendant's release poses on the community, his alleged activities must be viewed in context. Notwithstanding that his belief that the election was "stolen" may not have been rationally based, he was not acting out of criminal intent.  He sought no personal nor pecuniary gain.  Rather, he was responding to the entreaties of the then commander in chief, President Trump.  The former President maintained that the election had been stolen and it was the duty of loyal citizens to "stop the steal" by preventing the election certification. Although the claim appears to be baseless, it is apparent defendant was one of millions of Americans who were misled by the former President's

deception.  Defendant acted out of conscience, albeit one that was manipulated by deception. He thought he was standing up to protect his country, not to attack it.  As a result of this experience, he has learned not be so gullible and will not be so easily duped again.  His solitary action in this case, measured against a history of being a law-abiding citizen, safely predicts that he is more likely to resume behaving as a law-abiding citizen if released pending trial.  His history does not suggest that he is likely to resume the type of behavior that brings him before this court. It is an aberration in an otherwise exemplary record.

In view of that it is difficult to see how the government can credibly claim there are no conditions of release that protect the community from the danger defendant's release poses, particularly when they cannot point to any attempt by him to physically injure anyone.

## IV.  CONCLUSION

Congress enacted the Bail Reform Act of 1984, in passing the Act, however, Congress did not intend to authorize the wholesale pretrial incarceration of all persons accused of criminal offenses.  Indeed, the Act expressly provides that "[n]othing in this section shall be construed as modifying or limiting the presumption of innocence." 18 U.S. Code §

3142(j).  To the contrary, the passage of the pretrial detention provision of the 1984 Act bespeaks a recognition that "*there is a small but identifiable group of particularly dangerous [persons]* as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons.  It is with respect to this *limited group* ... that the courts must be given the power to deny release pending trial." S. Rep. No. 225, 98th Cong., 1st Sess. 6-7, *reprinted in* U.S. Code Cong. & Ad. News 3189 (emphasis added).

It is apparent from the Act's legislative history, as well as the statutorily mandated consideration of the least restrictive alternatives to detention, that Congress contemplated pretrial detention of only a small percentage of the individuals awaiting trial.  Defendant does not pose a danger to the community and there is no risk of flight.  All factors weigh in favor of him being released on his own personal recognizance.

**WHEREFORE**, for the foregoing reasons, and any others which may appear at a full hearing on this matter, and any others this Court deems just and proper, defendant through counsel, respectfully requests that he be released on personal recognizance.  If that request is denied defendant requests as an alternative that he be released  and placed into the High Intensive Supervision Program of the Pretrial Services Agency conditioned

15

on reasonable conditions including but not limited to work release and

curfew.

                                Respectfully submitted,


                                _____/s/_____
                                Jonathan Zucker # 384629
                                37 Florida Av. NE
                                Suite 200
                                Washington, DC  20002
                                (202) 624-0784
                                jonathanzuckerlaw@gmail.com
                                *Counsel for Jerod Hughes*

## CERTIFICATE OF SERVICE

I certify that on March 24, 2021, I caused a copy of the foregoing Motion and Memorandum to be filed with the Clerk using the CM/ECF System which will send notification of this filing to all parties.


Courtesy copies were sent by email to the assigned AUSAs.


                             ____/s/_____
                             Jonathan Zucker