**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| **v.** : | Case No. 21-CR-106-2 (TJK) |
| : | |
| **JEROD WADE HUGHES,** : | |
| : | |
| **Defendant.** : | |

## UNITED STATES' MOTION TO REVOKE PRETRIAL RELEASE

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully files this Opposition to Defendant's "Motion for Modification of Bond to Place the Defendant on Conditional Release Pending Trial." (Docket Entry 8) (hereinafter <u>Def. Motion</u>). The bases for the United States' opposition follow.

## FACTS AND PROCEDURAL POSTURE

The Defendants were charged by criminal complaint on Thursday January 28, 2021. (Docket Entry 1). The Defendants turned themselves in to law enforcement on Monday February 1, 2021. That same day, the Defendants had their initial appearance and detention hearing in the before United States Magistrate Judge John Johnston in the United States District Court for the District of Montana. In ruling that Defendant **JEROD WADE HUGHES** would be detained pending trial, Magistrate Judge Johnston noted that:

> Defendant Jerod Wade Hughes (Hugh es) is charged by Criminal Complaint with 9 crimes: Obstruction of an Official Proceeding; Obstructing, Impeding or Interfering with Law Enforcement during a Civil Disorder; Knowingly Entering or Remaining in a Restricted Building Without Authorization; Knowingly Disrupting Government Business or an Official Function; Entering or Remaining in a Capitol Building Without Authorization; Entering a Capitol Building with the Intent to Disrupt Official Business; Parading, Demonstrating or Picketing in a Capitol Building; Destruction of Property; and Aiding and Abetting.

> The Court conducted a detention hearing in this matter on February 1, 2021. The government presented the bond report. Hughes presented the testimony of his brother Joshua Hughes.
>
> The Court has considered the evidence and arguments presented at the detention hearing. The Court finds that the government has met its burden to show by a preponderance of the evidence that no combination of release conditions will reasonably assure Hughes' appearance at future court proceedings. The Court also finds that the government has met its burden to show by clear and convincing evidence that no combination of release conditions will reasonably assure the safety of the community.

See Attachment One.

On March 10, 2021, Defendant had his initial appearance in this District.[1] Magistrate Judge Faruqui ordered that Defendant would remain detained pending trial, and set this case down for a status conference before this Court on March 25, 2021. Defendant filed the instant motion for release on March 24, 2021. (Docket Entry 8). This opposition follows.

**ARGUMENT**

**1. The United States' Bases for Detention**

The United States moves for detention pursuant to 18 U.S.C. § 3142(e)(3)(C), which provides a rebuttable presumption in favor of detention for an enumerated list of crimes, including Destruction of Property in violation of 18 U.S.C. § 1361. The United States also seeks detention pursuant to 18 U.S.C. § 3142(f)(1)(A), because Destruction of Property, in violation of 18 U.S.C. § 1361, is a crime of violence. Moreover, when Destruction of Property is "calculated to influence or affect the conduct of government by intimidation or coercion," it also qualifies as a federal crime of terrorism. See 18 U.S.C. § 2332b(g)(5)(B).

---

[1] Co-Defendant JOSHUA CALVIN HUGHES was still in transit from the District of Montana to the District of Columbia on this date.

Defendant is subject to the rebuttable presumption in favor of detention pursuant to 18 U.S.C. § 3142(e)(3)(C), which states that it "shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed… an offense listed in Section 2332b(g)(5)(B) of Title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed." Id. Felony Destruction of Government Property under 18 U.S.C. § 1361, with which the Defendant is charged in Count Four of the Indictment, is among the offenses listed in 18 U.S.C. § 2332b(g)(5)(B). It is therefore subject to the rebuttable presumption under the Bail Reform Act. See United States v. Powell, Case No. 21-mj-197 (C.J. Howell, February 11, 2021); see also United States v. Watkins, Case No. 21-cr-28-3 (J. Mehta February 26, 2021); United States v. Bisgnano, Case No. 21-CR-36 (J. Nichols, February 26, 2021). As Chief Judge Howell explained in Powell:

> Once the presumption is triggered it imposes on the defendant, at a minimum, a burden of production to offer some credible evidence that rebuts it. Importantly, the burden of persuasion remains with the Government throughout. In assessing whether a defendant has successfully rebutted the presumption, the Court must take into account the available information concerning the four factors set out in 18 U.S.C. Section 3142(g).

(Tr. at 43, 16-19).[2]

**2.   Defendant's Proffer of Evidence is Not Compelling**

    **A.   Defendant Misstates the Nature of the Crimes He is Charged With**

Defendant contends that he "was not violent nor destructive while in the Capitol," that he "did not want to associate with [acts of destruction]" and that he complied with law enforcement

---

[2] Though the Court need not go further than the rebuttable presumption in order to find a statutory basis for detention, it is worth noting that detention is also appropriate pursuant to 18 U.S.C. § 3142(f)(1)(A), because Destruction of Property is a crime of violence. See Hearing Transcript at 74, United States v. Nordean, 21-MJ-195, (C.J. Howell March 2, 2021).

3

inside the Capitol building. <u>Def. Motion</u>, at 4. These arguments could not be further from the truth, as alleged in the Statement of Facts in furtherance of the Criminal Complaint (Document 1-1)[3] and argued below.

Furthermore, Defendant's characterization of the events of January 6, as well as his participation in those events, is out-of-step with the analysis that the judges in this District have taken. As Chief Judge Howell noted more than a month ago:

> The descriptions and . . . the title of those offenses to my mind don't even properly capture the scope of what [the defendant] is accused of doing here. <u>The felony and misdemeanor charges . . . in some ways are too benign-sounding to describe what happened on January 6, 2021</u>, at the U.S. Capitol.
>
> What happened on that day at the U.S. Capitol is criminal activity that is destined to go down in the history books of this country, of hundreds of Americans using force and violence against their own government to disrupt what we have been most proud of: A peaceful and Democratic transition of power.

<u>Hearing Transcript, at 31</u>, <u>United States v. Barnett</u>, Case No. 21-mj-13-GMH (Howell, C.J. January 28, 2021) (emphasis added).

This Court recently framed the question similarly, inquiring:

> [I]sn't it something that weighs strongly against your client about how serious and terrible that day was? In other words . . . <u>it was an almost unique attack on the crown jewels of our country, the peaceful transfer of power</u>. I mean, when you put it that way – and I don't – I think it's very fair to put it that way – it's almost a unique assault on America in American history, and I think that is something I have to weigh.

<u>Hearing Transcript, at 48</u>, <u>United States v. Pezzola</u>, Case No. 21-cr-52-TJK (March 1, 2021) (emphasis added).

---

[3] Defendant correctly notes that there has not yet been full discovery in this case. However, the Complaint and accompanying Statement of Facts was not sealed, and has been on the public docket since January 28, 2021.

4

### B.       Defendant's Veiled Entrapment By Estoppel" Argument Falls Flat

Defendant further contends that he should not be detained because he was merely doing what he believed former President Trump wanted him to do. Def. Motion, at 4. This argument has been summarily rejected by the Chief Judge of this Court. Memorandum Opinion (Docket Entry 23, at 21-27), United States v. Chrestman, 21-mj-218 (Howell, C.J., February 26, 2021).

As Chief Judge Howell wrote in Chrestman, the suggestion that former President Trump's words justified the Capitol rioters' actions rests on a false premise because the rioters "could not argue that they were at all uncertain as to whether they were at all uncertain whether their conduct ran afoul of the criminal law, given the obvious police barricades, police lines, and police orders restricting entry at the Capitol." Id. at 25. Rather, persons like Defendant who try to deflect blame for their own conduct to former President Trump's words, would necessarily rely on the argument that "though aware that his intended conduct was illegal, [he] acted under the belief President Trump had waived the entire corpus of criminal law as it applied to the mob." Id. Chief Judge Howell continued:

> Even more troubling than the implication that the President can waive statutory law is the suggestion that the President can sanction conduct that strikes at the very heart of the Constitution and thus immunize from criminal liability those who seek to destabilize or even topple the constitutional order. In addition to his obligation to faithfully execute the laws of the United States, including the Constitution, the President takes an oath to "preserve, protect and defend the Constitution." U.S. Const. art. II, § 1, cl. 8. He cannot, in keeping with his constitutional function and his responsibilities under Article II, lawfully permit actions that directly undermine the Constitution. Thus, a President cannot, within the confines of his constitutional authority, prevent the constitutionally mandated certification of the results of a Presidential Election or encourage others to do so on his behalf, nor can he direct an assault on the coequal Legislative branch of government. Were a President to attempt to condone such conduct, he would act ultra vires and thus without the force of his constitutional authority. See, e.g., Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 588-89, 614 (1952) (enjoining actions taken by the President that exceeded his constitutional powers).

> Put simply, even if former President Trump in fact, as defendant suggests, "told the assembled rabble what they must do," (i.e., attack the Capitol and disrupt the certification of the electoral vote count) and "ratified their actions," Def.'s Mem. at 10, he acted "beyond [his] power" as President, Cox, 379 U.S. at 569, and his statements would not immunize defendants charged with offenses arising from the January 6 assault on the Capitol from criminal liability.

Id. at 26-27 (emphasis added).

Judge Lamberth recently confirmed that "I was following President Trump's Directive" is not a valid argument in favor of pretrial release. Memorandum Opinion (Docket Entry 25, at 16), United States v. Chansley, 21-cr-3-RCL (March 8, 2021). As Judge Lamberth noted,

> If defendant truly believes that the only reason he participated in an assault on the U.S. Capitol was to comply with President Trump's orders, this shows defendant's inability (or refusal) to exercise his independent judgement and conform his behavior to the law. These are not the qualities of a person who can be trusted on conditional release. Moreover, the fact that defendant attributes his actions on January 6th to President Trump does little to persuade the Court that defendant will not act in the same or similar ways again.

Chansley, (Docket Entry 25, at 16) (emphasis added).

### 3.     The Bail Reform Act Factors Weigh In Favor of Detention

As the Court is aware, there are four factors under Section 3142(g) that the Court must analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. As noted below, each of these factors weighs in favor of pretrial detention in this case.

#### A.     The Nature and Circumstances of the Offense

The nature and circumstances of the offense are extremely serious. Defendant **JEROD WADE HUGHES** and his brother, co-defendant JOSHUA CALVIN HUGHES were present at

the "tip of the spear" and participated, along with known members of the Proud Boys[4] and the Oath Keepers, to break open windows and doors and force entry into the United States Capitol building. Specifically, video footage shows JOSHUA CALVIN HUGHES standing next to a man who threw a 2x4 piece of wood through a window, and **JEROD WADE HUGHES** watching the events from just a few feet away.


JOSHUA CALVIN HUGHES


JEROD WADE HUGHES

Immediately thereafter, Defendant **JEROD WADE HUGHES** can be seen on video watching from a few feet away as another rioter attempted to kick his way through a door into the United States Capitol. When that rioter was not able to kick his way through the door, **JEROD WADE HUGHES** rejoined his brother and watched as Dominic Pezzola broke through a window using a plastic riot shield that was taken from a law enforcement officer. Once the glass was broken out of the window frame, Defendant **JEROD WADE HUGHES** and JOSHUA CALVIN HUGHES and joined other rioters in climbing through the window into the Capitol.

---

[4] The United States has no direct evidence that either **JOSHUA CALVIN HUGHES** or **JEROD WADE HUGHES** is a member of either the Proud Boys or the Oath Keepers, but it is worth noting that the "tip of the spear" included New York Proud Boy member Dominic Pezzola, as well as identified members of the Montana chapter of the Proud Boys, Robert Gieswein, a known member of the Oath Keepers, among others.



Internal surveillance footage shows that Defendant **JEROD WADE HUGHES** and JOSHUA CALVIN HUGHES entered the United States Capitol building at approximately 2:13pm, and were among the first ten rioters to enter the building.



Once inside the Capitol, **JEROD WADE HUGHES**, both on his own and with another rioter, kicked a door until the lock broke so that other rioters could enter the United States Capitol.

JOSHUA CALVIN HUGHES, upon seeing Defendant **JEROD WADE HUGHES** kick the door, walked toward the door to assist in kicking it open, but the door is opened before he could reach it.



Once the door was opened, Defendant **JEROD WADE HUGHES** and JOSHUA CALVIN HUGHES worked their way back to the front of the mob and advanced toward the Senate floor.



Defendant **JEROD WADE HUGHES** and JOSHUA CALVIN HUGHES then joined up with Douglas Austin Jensen who was engaged in a confrontation with Capitol Police Officer Eugene Goodman. Officer Goodman repeatedly ordered the rioters to back up and leave the Capitol building. **JEROD WADE HUGHES**, JOSHUA CALVIN HUGHES, and the other rioters refused those commands. Rather, the rioters kept advancing toward Officer Goodman in a menacing manner – even as Officer Goodman retreated to recover a baton that had been dropped onto the floor. The video shows that Douglas Austin Jensen (circled below in green) was the primary aggressor, followed immediately by Defendant **JEROD WADE HUGHES** and JOSHUA CALVIN HUGHES.

/// /// ///

/// /// ///

/// /// ///

/// /// ///

/// /// ///

/// /// ///



Officer Goodman, who was facing the rioters on his own, retreated up the stairs and radioed twice for backup to direct other officers to the mob's location. Jensen, followed by the mob, chased Officer Goodman up the stairs. As Douglas Austin Jensen pursued Goodman, he was followed by Defendant **JEROD WADE HUGHES** and JOSHUA CALVIN HUGHES, who were in turn followed by other rioters. When Officer Goodman reached the second floor, he positioned himself so that he was between the rioters and the Senate floor – which had not yet been evacuated. Realizing that he could not prevent the mob from storming the Senate floor by himself, Officer Goodman baited the rioters into continuing to follow him – luring them away from the Senate floor and into an adjacent hallway.

Several additional U.S. Capitol Police officers joined Officer Goodman in that hallway and attempted to quell the mob. Officers reported that they were too far outnumbered to attempt to arrest the rioters, so instead they used their training to try and de-escalate the situation by talking with individuals in an attempt to calm them down. Notwithstanding these efforts, offers were met with shouting and aggression. In reviewing a digital video recording of this altercation, rioters can be heard shouting "this is our house," "this is *our* America," and "we're here for the corrupt government".



A Capitol Police Officer reported that, during this altercation, one of the rioters slammed a fire extinguisher on the ground causing it to rupture. The Officer described that it sounded like an "explosion," and – given both the sound and the white powder in the air – both the rioters and the officers were momentarily shocked and everyone took a step back.



Upon leaving the atrium, Defendant **JEROD WADE HUGHES** and JOSHUA CALVIN HUGHES found their way onto the Senate floor – which had since been evacuated while this confrontation took place. While on the Senate floor, Defendant **JEROD WADE HUGHES** and JOSHUA CALVIN HUGHES, and other rioters sat in Senators' chairs, opened Senators' desks, and reviewed sensitive material stored therein.



**JOSHUA CALVIN HUGHES**



**JEROD WADE HUGHES**



B.     **The Weight of the Evidence Against the Defendant**

As noted above, the weight of the evidence against Defendant is strong, and it weighs in favor of pretrial detention.  This evidence comes in multiple forms, but largely consists of the Defendants having been caught on surveillance and other digital video committing their crimes.

C.     **The Defendant's History and Characteristics**

Defendant has no known criminal history and also has strong ties to the area in which he resides.  Nevertheless, this factor weighs in favor of pretrial detention.  As the court noted with regard to defendant William Chrestman,

> [H]is more recent behavior surrounding the events January 6 gives rise to significant concerns about the danger he may present to the community. As explained above, the extent of his involvement in the mob clearly poses a danger. In addition, in the nearly two months that have passed since January 6, defendant has not exhibited any remorse for what occurred at the Capitol. Nothing in the record suggests that he has any remorse about the events of January 6 . . . .

United States v. Chrestman, 21-mj-218 (Docket Entry 23, at 27-28).  This is equally true of this Defendant.  Undersigned counsel is not aware of a single expression of remorse or regret about his actions on January 6. Such lack of remorse runs directly counter to Defendant's argument that his behavior that day were an aberration that are unlikely to recur.

D.     **Risk of Danger to the Community**

Defendant notes that he "reported" to law enforcement when he saw pictures of himself among the FBI's photo array of Capitol Rioters, and that he self-reported to FBI when he was informed that a warrant had been issued for his arrest. The Court may consider Defendant's actions when faced with the inevitability of his arrest as proof that he is not a flight risk. However, the United States' motion is predicated on the Defendant's risk of danger to the community.  The law creates a rebuttable presumption that Defendant poses a risk of danger to the community and, even

14

if Defendant presents sufficient evidence to rebut the presumption, this Court may still consider the presumption's application in weighing the Bail Reform Act factors.

Defendant proffers that he must be released as he has the strong support of his community is the sole means of support for his family, and that his wife is disabled and unable to work. Def. Motion, at 2-3.[5]  The United States is not unsympathetic to the fact that Defendant's criminal conduct, and the consequences of that conduct, has had a ripple effect on his loved ones.  However, as the Court well knows, this is an unfortunate truth in every criminal case – rare, indeed, is the arrest, pretrial detention, and/or incarceration that does not impact spouses, children, parents, siblings, or communities.

Nevertheless, Defendant's concern for his wife's health and well-being did not stop him from traveling nearly 2,200 miles from East Helena, Montana, to the United States Capitol. Neither did it stop him from joining the "tip of the spear," encouraging Dominic Pezzola to break open a window into the Capitol, entering the Capitol through that broken window, kicking open a locked door so that other rioters could enter the Capitol, chasing Officer Goodman up two flights of stairs, verbally harassing Capitol Police officers, storming the floor of the United States Senate, or perusing sensitive documents that Senators hastily left on their desks as they fled from the rioters in fear. Had Defendant born any concern for his family on January 6, he would not currently be housed in the D.C. Jail, and his family would not be suffering from his absence.

---

[5] Undersigned counsel has no reason to doubt counsel for Defendant's representation, but notes for the record that there is no Pretrial Services Report in the record which might illuminate the issue for the Court's consideration.

Moreover, though this court must undertake a de novo review, it is worth noting that a United States Magistrate sitting in Defendant's home district considered this issue and determined that Defendant posed a substantial enough risk of danger to the community that he should be detained and transported to the District of Columbia. See Attachment One.

15

The question before the Court is not to consider whether Defendant's <u>detention</u> will have a negative impact on Defendant or his family. Rather, the Court must consider whether Defendant's <u>release</u> will pose a substantial risk of danger to the Community, notwithstanding any terms of release the Court might fashion.

## **CONCLUSION**

Whatever his intent leading up to January 6, 2021, Defendant placed himself at the "tip of the spear" that day and actively engaged in the destruction of government property; harassment of, and interference with, Capitol Police officers; and obstruction of the Joint Session of Congress that had gathered to certify the Electoral College results. A presumption in favor of detention exists in this case which Defendant cannot rebut.  Even if he could, all four of the Bail Reform Act factors weigh heavily in favor of detention.

WHEREFORE the United States respectfully requests that this Court revoke Defendant's pretrial release and order that Defendant be detained without bond pending trial in this matter.

                                    CHANNING D. PHILLIPS
                                    Acting United States Attorney
                                    D.C. Bar No. 415793

By:     */s/  James B. Nelson*
           JAMES B. NELSON
           D.C. Bar No. 1613700
           Assistant United States Attorney
           Federal Major Crimes Section
           555 4th Street, N.W.
           Washington, D.C. 20530
           (202) 252-6986
           james.nelson@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel via the Electronic Case Filing (ECF) system, on March 25, 2021.

        By:    */s/ James B. Nelson*
                   JAMES B. NELSON
                   D.C. Bar No. 1613700
                   Assistant United States Attorney
                   Federal Major Crimes Section
                   555 4th Street, N.W.
                   Washington, D.C. 20530
                   (202) 252-6986
                   james.nelson@usdoj.gov