UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | Case No. 21-CR-106-2 (TJK) |
| : | |
| **JEROD WADE HUGHES,** : | |
| : | |
| **Defendant.** : | |

## UNITED STATES' AMENDED OPPOSITION
## TO DEFENDANT'S MOTION FOR CONDITIONAL RELEASE

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully files this amended Opposition to Defendant's "Motion for Modification of Bond to Place the Defendant on Conditional Release Pending Trial." (Docket Entry 8) (hereinafter Def. Motion).  The bases for the United States' opposition follow.

## FACTS AND PROCEDURAL POSTURE

Defendants JEROD WADE HUGHES and JOSHUA CALVIN HUGHES were charged by criminal complaint on Thursday January 28, 2021.  (Docket Entry 1). The Defendants were notified of the pending arrest warrant and turned themselves in on Monday February 1, 2021.  That same day, the Defendants had an initial appearance and detention hearing before United States Magistrate Judge John Johnston in the United States District Court for the District of Montana.  In ruling that both Defendants would be detained pending trial, Magistrate Judge Johnston noted that:

> Defendant Jerod Wade Hughes (Hughes) is charged by Criminal Complaint with 9 crimes: Obstruction of an Official Proceeding; Obstructing, Impeding or Interfering with Law Enforcement during a Civil Disorder; Knowingly Entering or Remaining in a Restricted Building Without Authorization; Knowingly Disrupting Government Business or an Official Function; Entering or Remaining in a Capitol Building Without Authorization; Entering a Capitol Building with the Intent to Disrupt Official Business; Parading, Demonstrating or Picketing in a Capitol Building; Destruction of Property; and Aiding and Abetting.

> The Court conducted a detention hearing in this matter on February 1, 2021. The government presented the bond report. Hughes presented the testimony of his brother Joshua Hughes.
>
> The Court has considered the evidence and arguments presented at the detention hearing. The Court finds that the government has met its burden to show by a preponderance of the evidence that no combination of release conditions will reasonably assure Hughes' appearance at future court proceedings. The Court also finds that the government has met its burden to show by clear and convincing evidence that no combination of release conditions will reasonably assure the safety of the community.

Attachment One.

On March 10, 2021, Defendant had his initial appearance in this District,[1] and Magistrate Judge Faruqui set this case for arraignment on March 25, 2021. Defendant filed the instant motion for release on March 24, 2021. (Docket Entry 8). The United States filed an opposition to Defendant's motion on March 25, 2021, shortly before the scheduled arraignment. (Docket Entry 9). After arraigning Defendant, the Court allowed the United States until March 26, 2021, to file any supplements or amendments to its Opposition. This amended opposition follows.

## ARGUMENT

**1.     The United States' Bases for Detention**

The United States' seeks pretrial detention pursuant to 18 U.S.C. § 3142(e)(3)(C), which provides a rebuttable presumption in favor of detention for an enumerated list of crimes, including Destruction of Property, in violation of 18 U.S.C. § 1361. The United States also seeks detention pursuant to 18 U.S.C. § 3142(f)(1)(A), because Destruction of Property, in violation of 18 U.S.C. § 1361, is a crime of violence. The United States also notes that where, as here, such Destruction of Property is "calculated to influence or affect the conduct of government by intimidation or

---

[1] Co-Defendant JOSHUA CALVIN HUGHES was still in transit from the District of Montana to the District of Columbia on this date.

coercion," that offense also qualifies as a federal crime of terrorism. See 18 U.S.C. § 2332b(g)(5)(B).

18 U.S.C. § 3142(e)(3)(C), provides that it "shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed… an offense listed in Section 2332b(g)(5)(B) of Title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed." Id. Destruction of Government Property, in violation of 18 U.S.C. § 1361, with which the Defendant is charged in Count Three of the Indictment, is among the offenses listed in 18 U.S.C. § 2332b(g)(5)(B). It is therefore subject to the rebuttable presumption under the Bail Reform Act. See United States v. Powell, Case No. 21-mj-197 (C.J. Howell, February 11, 2021); see also United States v. Watkins, Case No. 21-cr-28-3 (J. Mehta February 26, 2021); United States v. Bisgnano, Case No. 21-CR-36 (J. Nichols, February 26, 2021). As Chief Judge Howell explained in Powell:

> Once the presumption is triggered it imposes on the defendant, at a minimum, a burden of production to offer some credible evidence that rebuts it. Importantly, the burden of persuasion remains with the Government throughout. In assessing whether a defendant has successfully rebutted the presumption, the Court must take into account the available information concerning the four factors set out in 18 U.S.C. Section 3142(g).

(Tr. at 43, 16-19).[2]

---

[2] Though the Court need not go further than the rebuttable presumption in order to find a statutory basis for detention, it is worth noting that detention is also appropriate pursuant to 18 U.S.C. § 3142(f)(1)(A), because Destruction of Property is a crime of violence. See Hearing Transcript at 74, United States v. Nordean, 21-MJ-195, (C.J. Howell March 2, 2021).

**2.     Defendant's Proffer of Evidence is Not Compelling**

      **A**.     **Defendant Misstates the Nature of the Crimes He is Charged With**

Defendant contends that he "was not violent nor destructive while in the Capitol," that he "did not want to associate with [acts of destruction]" and that he complied with law enforcement inside the Capitol building. Def. Motion, at 4. These arguments are directly contradicted by video evidence in this case, as alleged in the criminal complaint's statement of facts (Document 1-1)[3] and argued below.

Furthermore, Defendant's characterization of both the events of January 6, and his participation therein, is out-of-step with the analysis of the judges in this District. As Chief Judge Howell noted more than a month ago:

> The descriptions and . . . the title of those offenses to my mind don't even properly capture the scope of what [the defendant] is accused of doing here. The felony and misdemeanor charges . . . in some ways are too benign-sounding to describe what happened on January 6, 2021, at the U.S. Capitol.
>
> What happened on that day at the U.S. Capitol is criminal activity that is destined to go down in the history books of this country, of hundreds of Americans using force and violence against their own government to disrupt what we have been most proud of: A peaceful and Democratic transition of power.

Hearing Transcript, at 31, United States v. Barnett, Case No. 21-mj-13-GMH (Howell, C.J. January 28, 2021) (emphasis added).

This Court recently framed the question similarly, inquiring of defense counsel:

> [I]sn't it something that weighs strongly against your client about how serious and terrible that day was? In other words . . . it was an almost unique attack

---

[3] Defendant correctly notes that there has not yet been full discovery in this case. However, neither the complaint nor the statement of facts were sealed. Both documents have been on the public docket since January 28, 2021, and the allegations have been published in the media. See, e.g., Jenni Fink, Joshua and Jerod Hughes, Brothers Who Chased Capitol Police Officer Eugene Goodman, Charged, NEWSWEEK ONLINE (January 29, 2021), available *https://www.newsweek. com/joshua-jerod-hughes-brothers-who-chased-capitol-police-officer-eugene-goodman-charged -1565412* (last visited March 26, 2021).

4

on the crown jewels of our country, the peaceful transfer of power. I mean, when you put it that way – and I don't – I think it's very fair to put it that way – it's almost a unique assault on America in American history, and I think that is something I have to weigh.

Hearing Transcript, at 48, United States v. Pezzola, Case No. 21-cr-52-TJK (March 1, 2021) (emphasis added).

### B. Defendant's Veiled Entrapment By Estoppel" Argument Falls Flat

Nevertheless, Defendant contends that he should be released from detention because he was merely doing what he believed former President Trump wanted him to do. Def. Motion, at 4. This argument has been summarily rejected. Memorandum Opinion (Docket Entry 23, at 21-27), United States v. Chrestman, 21-mj-218 (Howell, C.J., February 26, 2021).

As Chief Judge Howell wrote in Chrestman, the suggestion that former President Trump's words justified the Capitol rioters' actions rests on a false premise because the rioters "could not argue that they were at all uncertain as to whether they were at all uncertain whether their conduct ran afoul of the criminal law, given the obvious police barricades, police lines, and police orders restricting entry at the Capitol." Id. at 25. Chief Judge Howell continued:

> Even more troubling than the implication that the President can waive statutory law is the suggestion that the President can sanction conduct that strikes at the very heart of the Constitution and thus immunize from criminal liability those who seek to destabilize or even topple the constitutional order.
>
> . . .
>
> Put simply, even if former President Trump in fact, as defendant suggests, "told the assembled rabble what they must do," (i.e., attack the Capitol and disrupt the certification of the electoral vote count) and "ratified their actions," Def.'s Mem. at 10, he acted "beyond [his] power" as President . . . and his statements would not immunize defendants charged with offenses arising from the January 6 assault on the Capitol from criminal liability.

Id. at 26-27 (emphasis added) (citation omitted).

5

Judge Lamberth recently confirmed that "I was following President Trump's Directive" is not an argument that justifies pretrial release. Memorandum Opinion (Docket Entry 25, at 16), United States v. Chansley, 21-cr-3-RCL (March 8, 2021). As Judge Lamberth held,

> If defendant truly believes that the only reason he participated in an assault on the U.S. Capitol was to comply with President Trump's orders, this shows defendant's inability (or refusal) to exercise his independent judgement and conform his behavior to the law. These are not the qualities of a person who can be trusted on conditional release. Moreover, the fact that defendant attributes his actions on January 6th to President Trump does little to persuade the Court that defendant will not act in the same or similar ways again.

Chansley, (Docket Entry 25, at 16) (emphasis added).

### 3. The Bail Reform Act Factors Weigh In Favor of Detention

As the Court is aware, there are four factors under Section 3142(g) that the Court must analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. As noted below, each of these factors weighs in favor of pretrial detention in this case.

#### A. The Nature and Circumstances of the Offense

The nature and circumstances of the offense weigh heavily in favor of pretrial detention. Defendant and his brother, co-defendant Joshua Calvin Hughes (hereinafter "Co-Defendant"), were present at the "tip of the spear" and participated, along with known members of the Proud Boys[4] and the Oath Keepers, to break open windows and doors and force entry into the United

---

[4] The United States has no direct evidence that either Defendant or Co-Defendant is affiliated with the Proud Boys or the Oath Keepers, but the United States' investigation has confirmed that the "tip of the spear" included Proud Boy member Dominic Pezzola, as well as Proud Boys from the Montana chapter, and Robert Gieswein, a known member of the Oath Keepers, among others.

States Capitol building. Specifically, video footage shows Co-Defendant standing next to a man who threw a 2x4 piece of wood through a window, as Defendant watched the events from a few feet away.




Immediately thereafter, a rioter standing near Defendant attempted to kick his way through a door into the United States Capitol. When that rioter was not able to kick his way through the door, Defendant joined Co-Defendant and watched as Dominic Pezzola[5] broke through a window using a stolen police riot shield.



---

[5] Dominic Pezzola is charged in Case Number 21-cr-52 (TJK).

Once the window was broken, Defendant and Co-Defendant joined other rioters in climbing through the window into the Capitol.




Surveillance footage from inside the Capitol shows that Defendant and Co-Defendant entered the building at approximately 2:13pm, and were among the first ten rioters to enter.



Once inside the Capitol, Defendant, assisted by another rioter, kicked a door until the lock broke so that other rioters could enter the building.







After kicking open the door, Defendant and Co-Defendant worked their way back to the front of the mob and advanced toward the Senate floor.



Defendant and Co-Defendant then joined Douglas Austin Jensen[6] who was engaged in a confrontation with Capitol Police Officer Eugene Goodman. Officer Goodman repeatedly ordered

---

[6] Douglas Austin Jensen is charged in Case Number 21-cr-6 (TJK).

10

the rioters to disperse and exit the Capitol. Rather than follow those commands, the rioters advanced toward Officer Goodman in a menacing manner – even as Officer Goodman retreated to recover a baton that had been dropped onto the floor. The video shows that Douglas Austin Jensen (circled below in green) was the primary aggressor, followed immediately by Defendant and Co-Defendant.



Officer Goodman, who was facing the rioters on his own, retreated up the stairs and radioed twice for backup to direct other officers to the mob's location. Jensen, followed by Defendant, Co-Defendant, and other rioters gave chase. When Officer Goodman reached the second floor, he positioned himself so that he was between the rioters and the Senate floor – which had not yet been evacuated. Realizing that he could not prevent the mob from storming the Senate floor by himself, Officer Goodman baited the rioters into continuing to follow him – luring them away from the Senate floor and into an adjacent atrium.

Several additional U.S. Capitol Police officers joined Officer Goodman in that atrium and attempted to quell the mob. Officers reported that they were too far outnumbered to attempt to arrest the rioters, so instead they used their training to try and de-escalate the situation by talking

11

with individuals in an attempt to calm them down. Notwithstanding these efforts, officers were met with shouting and aggression. In reviewing a digital video recording of this altercation, rioters can be heard shouting "this is our house," "this is *our* America," and "we're here for the corrupt government".



A Capitol Police Officer reported that, during this altercation, one of the rioters slammed a fire extinguisher on the ground causing it to rupture. The Officer described that it sounded like an "explosion," and – given both the sound and the white powder in the air – both the rioters and the officers were momentarily shocked. The officer reported that a number of rioters dispersed and went to other locations inside the Capitol after that incident. Defendant and Co-Defendant were among those rioters that left this area of the Capitol after the fire extinguisher incident.



12

Upon leaving the atrium, Defendant and Co-Defendant joined other rioters in entering the Senate floor – which had been evacuated by this point. While on the Senate floor, Defendant and Co-Defendant walked amongst the Senators' desks, and reviewed sensitive material.



**JOSHUA CALVIN HUGHES**



**JEROD WADE HUGHES**



B. **The Weight of the Evidence Against the Defendant**

The weight of the evidence against Defendant is overwhelming, and it weighs in favor of pretrial detention. The evidence against Defendant comes in multiple forms, but largely consists of the Defendant having been caught on surveillance and other digital video committing the charged crimes.

C. **The Defendant's History and Characteristics**

Defendant has no known criminal history and also has strong ties to the area in which he resides. Nevertheless, this factor weighs in favor of pretrial detention. As Chief Judge Howell noted with regard to the events of January 6, a defendant's prior criminal history is but one determiner of this factor—the Court must also consider the defendant's actions on January 6, and thereafter.

> [Defendant's] more recent behavior surrounding the events January 6 gives rise to significant concerns about the danger he may present to the community. As explained above, the extent of his involvement in the mob clearly poses a danger. In addition, in the nearly two months that have passed since January 6, defendant has not exhibited any remorse for what occurred at the Capitol. Nothing in the record suggests that he has any remorse about the events of January 6 . . . .

United States v. Chrestman, 21-mj-218 (Docket Entry 23, at 27-28).

Here, not only was Defendant an active participant at the "tip of the spear," he was second-in-line in the chase of Officer Goodman up the stairs, participated in harassing Capitol police officers in the atrium, and entered the Senate floor to review sensitive documents. Moreover, undersigned counsel is not aware of a single expression of remorse or regret by Defendant regarding his conduct.[7] This lack of remorse runs directly counter to Defendant's argument that his behavior that day was an aberration that is unlikely to recur.

### D. Risk of Danger to the Community

As noted above, the law presumes that Defendant poses a substantial risk of danger to the community and should be detained pending trial. Moreover, even if Defendant presents sufficient evidence to rebut the presumption, this Court may still consider the presumption's application in weighing the Bail Reform Act factors. The United States respectfully submits that Defendant's conduct demonstrates his dangerousness to the community and weighs in favor of detention.

Defendant proffers that he must be released as he has the strong support of his community and is the sole means of support for his family, and because his wife is disabled and unable to work. Def. Motion, at 2-3.[8] The United States is not unsympathetic to the impact that Defendant's criminal conduct, and the consequences of that conduct, has had on his loved ones. As the Court well knows, this is an unfortunate truth in every criminal case – rare, indeed, is the arrest, pretrial

---

[7] Defendant makes much of the fact that he self-reported when he saw his face on the FBI's Capitol Riot BOLO, and again upon receiving word that a warrant had been issued for his arrest. The United States submits that Defendant's recognition that his arrest was inevitable does not constitute an expression of remorse.

[8] Undersigned counsel has no reason to doubt counsel's representation, but notes that there is no Pretrial Services Report or other documentation of this fact in the record which might illuminate the Court's consideration. Moreover, though this court must undertake a de novo review, a United States Magistrate sitting in Defendant's home district considered this issue and determined that Defendant posed a substantial enough risk of danger to the community that he should be detained and transported to the District of Columbia. See Attachment One.

15

detention, and/or prison sentence that does not also punish spouses, children, parents, siblings, or communities. However, this unfortunate truth is not a Bail Reform Act factor for the Court's consideration, and empathy for Defendant's family members is not a counterbalance to Defendant's dangerousness.

Ultimately, Defendant's concern that his arrest and detention would impact his family's health and well-being did not stop him from traveling nearly 2,200 miles from Helena, Montana, to the United States Capitol.  Neither did it stop him from: joining the "tip of the spear;" encouraging Dominic Pezzola to break a window; entering the Capitol through that broken window; kicking open a locked door so that other rioters could enter the Capitol; chasing Officer Goodman up the stairs; verbally harassing Capitol Police officers; entering the floor of the Senate; or  perusing sensitive documents hastily left on the Senators' desks as they fled to safety while the rioters advanced.

Finally, Defendant overlooks that the question before the Court is not whether Defendant's <u>detention</u> will have a negative impact on Defendant or his family. Rather, the Court must consider whether Defendant's <u>release</u> will pose a substantial risk of danger to the community, notwithstanding any terms of release the Court might fashion. <u>Memorandum Opinion & Order Denying Emergency Motion for Release</u> (Docket Entry 25, at 9), <u>United States v. Lee</u>, 19-cr-298-KBJ (March 30, 2020) (citing 18 U.S.C. § 3142(g)(4)).

## **CONCLUSION**

Defendant placed himself at the "tip of the spear" as rioters breached the Capitol building on January 6, 2021, and actively engaged in destroying government property; harassing, and interfering with, Capitol Police officers; and obstructing the Joint Session of Congress' certification of the Electoral College results – resulting in our Nation's failure to peacefully transfer

power from one President to another for the first time in 245 years. A presumption in favor of detention exists in this case which Defendant cannot rebut. Even if he could, all four of the Bail Reform Act factors weigh heavily in favor of detention.

WHEREFORE the United States respectfully requests that Defendant's motion to modify bond and place him on conditional release should be DENIED.

                                  Respectfully Submitted,

                                  CHANNING D. PHILLIPS
                                  Acting United States Attorney
                                  D.C. Bar No. 415793

By:      */s/ James B. Nelson*
           JAMES B. NELSON
           D.C. Bar No. 1613700
           Assistant United States Attorney
           Federal Major Crimes Section
           555 4th Street, N.W.
           Washington, D.C. 20530
           (202) 252-6986
           james.nelson@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel via the Electronic Case Filing (ECF) system, on March 26, 2021.

        By:    */s/ James B. Nelson*
                   JAMES B. NELSON
                   D.C. Bar No. 1613700
                   Assistant United States Attorney
                   Federal Major Crimes Section
                   555 4th Street, N.W.
                   Washington, D.C. 20530
                   (202) 252-6986
                   james.nelson@usdoj.gov