UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>v.<br>Jerod Hughes<br><br>Defendant. | Criminal No. 21-106 (TJK) |

## DEFENDANT'S SUPPLEMENTAL MOTION FOR MODIFICATION OF OF BOND PENDING TRIAL

Defendant filed his Motion for Bond (Docket #8) on March 21, 2021. The prosecution filed its opposition on March 25, 2021. (Docket #9) At arraignment on March 26, 2021, the Court afforded the Prosecution an opportunity to file an amended Motion if they chose to do so and offered the defense an opportunity to respond by filing a supplement.

Defendant adopts and incorporates the previously filed Motion for Bond Review and does not repeat those same arguments in the instant filing. Defendant shall respond to a few points made in the prosecution's Amended filing on the proposed bond conditions.

**Defendant's Release Does Not Present
a Danger to the Community** [1]

Preventive Detention is only warranted when a defendant's release presents a danger to the community that cannot be sufficiently addressed by conditional release.  As noted previously in the initial filing there is no allegation the defendant ever did anything to harm another person on January 6, 2021, nor at any other time in his entire life. Similarly, there is no allegation that he ever had a weapon, nor expressed an interest or intent to injure another person. The prosecution relies upon what is respectfully a hyper-technical reading of the statute that "destruction of government property" could qualify as a "dangerous crime."  However, common sense is required in analyzing the application of that point in this case. The sole act of destruction of government property alleged in the instant case is that once inside the Capital the defendant kicked a door in order to unlock it[2]. When that allegedly occurred, numerous other people had already entered the Capital and more were flowing in. Arguably his act might have made it

---

[1] The prosecution does not seem to contend that defendant's release presents a risk of flight.  Given defendant's remarkable efforts to surrender to law enforcement and cooperate with law enforcement soundly refutes any indication of abscondence.

[2] As noted previously there has been minimal discovery produced in the instant case. Defendant only became aware of this allegation based on disclosures in the prosecution's bond review Motion.

easier for some to enter the Capital but at that point the proverbial floodgates were already open and mass numbers of people were entering. Significantly, defendant's act in kicking the door did not present an added risk of physical harm to any person. It is respectfully suggested that it is a misinterpretation of the statute or at least an unwarranted extension to say that kicking a door presents a "rebuttable presumption of dangerousness" when such a presumption does not apply to numerous crimes of actual violence.

The prosecution does not challenge the defense assertion that defendant was not part of any "group"[3] when travelling to attend the demonstration. He played no role in planning of the events. He had no leadership role, was not directing others, nor involved in any decision as to what would occur on that day[4]. Defendant maintains, and the prosecution seems to not dispute, that defendant travelled as a citizen to support then President Trump and protest what he believed was a "stolen election." Once here with no plans to engage in anything remotely criminal the crowd

---

[3] There are allegations that numerous participants in January 6 were part of groups like "The Proud Boys," "Oath Keepers," "3 per centers" and various "militias" that came with plans to commit acts of violence during the demonstration. There is no indication defendant was part of any group or organization.

[4] Of course he bears responsibility for decisions he made to take actions he personally took.

mentality swept him, along with thousands of others, along. As has been noted by virtually all protesters and not disputed by the prosecution, defendant believed President Trump ordained this action in order to protect the country from a fraudulent election result[5].

However, notwithstanding all the hysteria and violence that was occurring that day, there is no indication defendant was violent towards another person. That coupled with a lifetime of living as a peaceful person who has never been accused of any act of violence should be sufficient to rebut any fear that defendant's release poses an unreasonable risk of danger to the community.

It is clear defendant's participation in the events of January 6, 2021, was an aberration, one that is unlikely to recur. Defendant will gladly agree as part of his conditions of release that he will not attend nor participate in any acts of protest as a condition of release. Given the consequences that resulted in his participation in the instant incident, apparently his first political protest, he has no desire to participate in any others.

---

[5] Defendant is not suggesting that it is a legal defense that the actions were done at the behest of the President. Rather only that in assessing danger the improbability a comparable action could be encouraged by a President reduces the likelihood of any recurrence.

Defendant simply wishes to resume his law-abiding life, to work to provide for and take care of his family while he awaits resolution of the instant case.

In the Prosecution's bond review motion they seem to seek to hold defendant accountable for all that transpired on January 6, at the Capital. The defense does not seek to minimize the gravity of what occurred that day and how frightening it was for the country. The Defense is asking the Court to recognize Defendant played a relatively small and comparatively less significant role in what occurred.  He was a minor actor – a follower, not a leader, organizer or planner.  At the risk of being redundant, there is no evidence he ever sought to physically hurt anyone.  In assessing the level of danger his release presents to the community the fact that he played a comparatively less significant role is a factor.  If released he will return to Montana. He will return to the life where he simply works and takes care of his family.

In the prosecution's motion they assert that Defendant's surrender is not indicative of remorse, (fn. 8). Defendant does not dispute that surrender in and of itself does not indicate remorse.   However, his surrender and cooperation with law enforcement while they awaited preparation of the warrant, which enabled law enforcement to take him into custody, is

indicative of intent to cooperate and comply with court orders designed to protect the community. This would include an order to remain in house except for work and family responsibility. This would include an order not to engage in any criminal activity as well as any protests[6].

**WHEREFORE**, for the foregoing reasons as well as those in Defendant's initial Bond Review Motion, and any others which may appear at a full hearing on this matter, and any others this Court deems just and proper, defendant through counsel, respectfully requests that he be released on personal recognizance or conditional release.

Respectfully submitted,

_____/s/_____
Jonathan Zucker # 384629
37 Florida Av. NE
Suite 200
Washington, DC  20002
(202) 624-0784
jonathanzuckerlaw@gmail.com
*Counsel for Jerrod Hughes*

---

[6] Based on representations of family and friends, January 6 was the first political protest event defendant ever attended. Similarly they have made clear defendant expresses remorse for participation in the underlying event.

## CERTIFICATE OF SERVICE

I certify that on March 30, 2021, I caused a copy of the foregoing Motion and Memorandum to be filed with the Clerk using the CM/ECF System which will send notification of this filing to all parties.

Courtesy copies were sent by email to the assigned AUSA.

_____/s/_____
Jonathan Zucker