UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | Case No. 21-CR-106-2 (TJK) |
| : | |
| **JEROD WADE HUGHES,** : | |
| : | |
| **Defendant.** : | |

**SUPPLEMENT TO UNITED STATES' OPPOSITION
TO DEFENDANT'S MOTION FOR CONDITIONAL RELEASE**

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully files this Supplement to its Opposition to Defendant's "Motion for Modification of Bond to Place the Defendant on Conditional Release Pending Trial," which supplements its argument and addresses arguments raised in Defendant's Supplement (Docket Entry 19).

**ARGUMENT**

1. **Defendant Planned to Storm the Capitol in Advance**

In his motion for conditional release, and during the detention hearing in this matter, Defendant argued at length that his case was distinguishable from those of other Capitol rioters because Defendant had no prior planning or intent to breach the Capitol building prior to January 6, 2021. Evidence acquired since the detention hearing suggests otherwise.

On April 5, 2021, undersigned counsel was provided with a Cellebrite report and forensic extraction from Defendant's cellular telephone. The evidence recovered from Defendant's phone, which undersigned counsel did not have access to until after the detention hearing demonstrates that Defendant planned in advance for the possibility of storming the Capitol. Defendant also

received donated funds from other, so-called "patriots" who hoped that Defendant would represent them in Washington, D.C.[1]

### a. *Defendant's Fundraising and Advanced Planning*

On December 29, 2020, Defendant had the following text message exchange with Person One:

> Person One: Yo buddy, do I wish I could go with you guys too [sic] Washington. It's not in the cards for me. But I admire the both of you for heading that direction. And I would also like to sponsor your trip in any way that I can . . .
> Person One: I also just bought a couple of fold down cots that you can take with you. If you guys don't have any.
> *Defendant: I appreciate it buddy. We've got 275 in donations for gas. My old buddy Bob tried donating ammo. People are down for the cause.*

On January 1, 2021, Person One sent another text message to Defendant, offering an additional $100 and "some weed" for Defendant to take with him to D.C. Later that day, Defendant exchanged text messages with Person Two:

> Person Two: You and Josh take care on your pilgrimage to DC. If I was younger I would go to [sic]. Be prepared for a fight. Give em hell!
> *Defendant: Thanks, [Person Two] we'll make you proud.*

On January 5, 2021, Defendant exchanged the following text messages with Person Three.

> *Defendant: Stay tuned tomorrow buddy Trump is gonna drop the hammer or we are.*
> Person Three: Right on. I really hope Pence doesn't open those envelopes. Get some hearings going crack down on these courts. The spineless bastard's [sic].

### b. *Defendant's Celebration on January 6 and Lack of Remorse*

In addition to text message exchanges prior to January 6, in which Defendant made it to his fellow "patriots" that he was prepared to "drop the hammer" and "make you proud," Defendant sent a flurry of messages after breaching the Capitol building to make sure that the "patriots" knew he'd made good on his promises.

---

[1] Undersigned counsel has seen no such evidence with regard to co-defendant Joshua Hughes.

As noted, Defendant entered the Capitol at approximately 2:13pm. (Docket Entry 11, at 8). Between 2:20pm and 3:04pm, Defendant had the following text message exchange with Person One.

<u>Person One</u>: Its [sic] over we're fucked. (2:20pm)
<u>*Defendant*</u>: *We broke into the capital. [sic]. (2:25pm)*
<u>Person One</u>: Be safe, call me later. Fuck Biden! (3:04pm)

At 3:16pm, Defendant texted Person Three, "we just stormed the fucking building." At 3:17, Defendant had the following text message exchange with Person Four.

<u>Person Four</u>: I can't see you on tv.
<u>*Defendant*</u>: *Just wait we stormed the capitol.*

Shortly after 4:40pm, Defendant and Person One had another text message exchange:

<u>Person One</u>: You guys safe?
<u>*Defendant*</u>: *Yes*
<u>Person One</u>: Getting the fuck out of there?
<u>Person One</u>: Good thing you were wearing a mask. They're claiming they're putting out arrest warrants.
<u>*Defendant*</u>: *No mask. We're outa [sic] here.*

At 6:50pm, Defendant exchanged text messages with Person Four regarding news coverage of Jacob Chansley, also known as "the Q'Anon Shaman." Person Four told Defendant that the news coverage suggested that Chansley led rioters into the Capitol, to which Defendant responded "*He might have been involved in the front door breach. Didn't see him when we breached the first time.*" Whether or not Defendant re-entered the Capitol as he suggested to Person Four, he did have an image on his phone of he and co-Defendant Joshua Hughes in the senate gallery – indicating that their activity in the Capitol was more extensive than Defendant suggests.



Between approximately 6:20pm and 7:17pm, Defendant exchanged text messages with Person Five. During this discussion, Person Five expressed concern that Defendant might be arrested, which led to this exchange:

> *Defendant:*  Ah we didn't do anything crazy like destroy shit or fight the cops. Trespass and vandalism. Meh. I've done time. It's josh I worry about.
> Person Five:  It's the trespassing I worry about, but there may have been so many of you that figuring it out is more trouble than it's worth. Were you in the photos? I could only see josh
> *Defendant:*  They got my ugly mug up and down. Trespassing ain't shit. <u>I feel like I was behaving like a model citizen ready to reclaim my country. Not enuff people followed.</u>

Beginning at 7:11pm, Defendant had a similar exchange with Person Six.

> Person Six:  How was it
> *Defendant:*  Insane on a few different levels.
> *Defendant:*  I saw picture [sic] of me and josh already on the news. <u>Not enough people followed us in to hold the place</u>.  We had to get the fuck out.

These text messages show that, not only did Defendant travel to Washington, D.C. with the intent to storm the Capitol, he stormed the Capitol with the intent of "holding" the building for some length of time and some purpose.  Whatever that purpose was, and however long its duration, it is clear that Defendant's involvement on January 6 went far beyond what has been suggested in his pleadings.

4

2. <u>**Response to Defendant's Supplement**</u>

   a. *<u>Defendant's Drug Use and Prior Arrests</u>*

In his recently-filed Supplement to his Motion for Conditional Release, Defendant states: "The defense recognizes that defendant's record may raise some concern. Defendant notes that the more serious charges, the felonies, arose out of a controlled substance addiction over 15 years ago that defendant has recovered from and that has not been an issue for approximately 15 years." (Docket Entry 19, at 4). Defendant's cell phone suggests that his drug use is not so much a thing of the past as he suggests.

In addition to the text message exchange outlined above, wherein Person One offers Defendant some "weed" for the road, Defendant sent multiple text messages about buying marijuana from a dispensary in Chicago on his way from Montana to Washington, D.C. Defendant's cell phone also contained a video of himself handling a large "bud" of marijuana at his home on November 27, 2020:



Defendant's cell phone also had a video from September 16, 2020, which showed a marijuana grow operation. Still shots of that video are below:



Whatever rules or regulations may govern marijuana possession or use in the State of Montana, it remains a controlled substance under federal law. Defendant's obvious affinity for marijuana, despite his recent claims of sobriety, suggests that he is unlikely to follow any conditions of release established by this Court.

### b. *Defendant's* **Mucnchel** *Argument is Without Merit*

Finally, Defendant suggests that the D.C. Circuit's recent decision in United States v. Munchel, requires that Defendant be released pending trial because he was less violent and destructive than other persons on January 6. (Docket Entry 19, at 4-8). Defendant's argument is meritless.

First, Defendant fails to note the different bases for detention in Munchel and the instant case. The United States sought detention in Munchel pursuant to 18 U.S.C. § 3142 (f)(1)(E), on the grounds that a dangerous weapon was carried into the Capitol building. Under that theory, detention is only appropriate if the United States proves by clear and convincing evidence that a defendant poses a risk of dangerousness, and that no combination of conditions can protect the community if he is released. Defendant, on the other hand, faces a rebuttable presumption in favor

of detention pursuant to 18 U.S.C. § 3142(e)(3)(C). Even if Defendant presents some evidence to rebut this presumption, the presumption "survives" and factors into the Courts' calculation of dangerousness. Although the Munchel opinion may be instructive to the Court's analysis, this case begins on different footing from Munchel and requires a different analysis of the facts as they relate to the Section 3142(g) factors.

Moreover, unlike in Munchel, the evidence of Defendant's dangerousness is not limited to his actions on January 6. As discussed during the detention hearing, Defendant has a lengthy criminal record – including two felony convictions for controlled substances offenses, and more recent misdemeanor offenses for disorderly conduct and assault. As the Court observed, the timing of Defendant's felony convictions indicates his failure to comply with court-ordered terms of release. All of these facts are suggestive of the Defendant's dangerousness in the community, particularly when combined with the ongoing use of controlled substances.

Finally, as noted above, Defendant's assertion that his case is distinguishable from other Capitol rioters because he had no advance plan to storm the Capitol runs counter to his own text messages. Defendant's suggestion that he merely stumbled across the Capitol riot and got caught up in the moment is at odds with statements to fellow "patriots" that he was coming to D.C. to "drop the hammer," that he was "prepared for a fight" and planned to "make you proud."

## CONCLUSION

A presumption in favor of detention exists in this case which Defendant cannot rebut. Even if he could, all four of the Bail Reform Act factors weigh heavily in favor of detention.

WHEREFORE the United States respectfully requests that Defendant's motion to modify bond and place him on conditional release should be DENIED.

7

                Respectfully Submitted,

                CHANNING D. PHILLIPS
                Acting United States Attorney
                D.C. Bar No. 415793

By:      */s/ James B. Nelson*
           JAMES B. NELSON
           D.C. Bar No. 1613700
           Assistant United States Attorney
           Federal Major Crimes Section
           555 4th Street, N.W.
           Washington, D.C. 20530
           (202) 252-6986
           james.nelson@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel via the Electronic Case Filing (ECF) system, on April 6, 2021.

        By:    */s/ James B. Nelson*
                  JAMES B. NELSON
                  D.C. Bar No. 1613700
                  Assistant United States Attorney
                  Federal Major Crimes Section
                  555 4th Street, N.W.
                  Washington, D.C. 20530
                  (202) 252-6986
                  james.nelson@usdoj.gov