UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-CR-106-TJK-2 |
| : | |
| JEROD WADE HUGHES, : | |
| : | |
| Defendant. : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR MODIFICATION OF PRETRIAL ORDER REGARDING CONDITIONS OF RELEASE

The United States, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully submits this opposition to Defendant Jerod Wade Hughes's ("the defendant") Motion for Modification of Pretrial Order Regarding Conditions of Release, filed on September 2, 2021. Dkt. 39. The defendant seeks to amend his conditions of release – conditions which he affirmatively proposed (Dkt. 8, at 6) – by: (1) removing the GPS monitoring requirement[1]; and (2) lifting his home detention condition. The Government opposes removing the defendant's location monitoring requirement. Assuming the location monitoring condition remains intact, the Government does not oppose modifying the home detention condition for the narrow purpose of allowing the defendant to pursue additional employment opportunities, with the permission of his Pretrial Services Officer. Under such circumstances, the Government would request that the Court require the defendant to provide his Pretrial Services Officer with advance

---

[1] It is the Government's understanding that defendant is being monitored by radio frequency electronic monitoring, not GPS monitoring. *See* Dkt. 23, at 2. Whereas GPS monitoring can track where a defendant is at all times, radio frequency monitoring only tracks when the defendant is at home. Both GPS and radio frequency monitoring require the defendant to be outfitted with some type of wearable technology, such as an anklet or bracelet.

1

notice of any planned travel for his employment, including dates, times, location, and expected duration of travel.

## FACTUAL BACKGROUND

The defendant is charged in a nine-count Indictment for offenses committed inside the U.S. Capitol Building on January 6, 2021.  The defendant was one of the first ten rioters to enter the U.S. Capitol Building on January 6.  After jumping through a broken window next to the Senate Wing door, the defendant, alongside another rioter, began kicking at the Senate Wing door until it broke open.  The defendant caused over $1,000 in damage to the Senate Wing door.

Next, the defendant joined a group of rioters in pursuing U.S. Capitol Police Officer Eugene Goodman up the Senate staircase and to the Ohio Clock Corridor.  There, the defendant was seen shouting at the U.S. Capitol Police officers assembled in the Ohio Clock Corridor.  The defendant then left the Capitol Building through the northeast Senate Carriage door at approximately 2:18 p.m.  As he left the U.S. Capitol building, the defendant likely witnessed several U.S. Capitol Police officers being assaulted by rioters.[2]

Despite having already been instructed to leave the Capitol building, the defendant instead ignored officer commands and re-entered the Capitol Building through the East Rotunda Door at approximately 2:40 p.m.  As he re-entered, the defendant rubbed shoulders with U.S. Capitol Police officers who were actively working to shut the doors that had been broken open by rioters only moments prior.

---

[2] *See* Jayden X, "The Insurrection Of The United States Capitol And Shooting of Ashli Babbitt," YouTube (Jan. 7, 2021), *available at* https://www.youtube.com/watch?v=PfiS8MsfSF4 (Time Stamp: 8:45-9:00).



The defendant proceeded up the stairs to the third floor of the U.S. Capitol building, where he entered the Senate gallery. He then traveled back downstairs and walked on to the Senate floor, where he remained for approximately two minutes. The defendant eventually left the Capitol Building through the northeast Senate Carriage Door – the same door from which he had previously been ordered to leave – at approximately 2:51 p.m., nearly 40 minutes after he first entered the building.

The defendant was prepared and eager to engage in lawless activity in Washington D.C. on January 6. His text messages to friends and his fellow "patriots" in the days leading up to the January 6 rally show that he was prepared to "drop the hammer" and "make you proud." *See* Dkt. 21, at 2. And despite witnessing law enforcement officers being assaulted inside the U.S. Capitol on January 6, the defendant expressed no remorse for his actions; rather, he bragged to his friends about repeatedly breaking into the Capitol Building. *Id.* at 3. In fact, he claimed to have felt like he was "behaving like a model citizen ready to reclaim my country," and that "not [enough] people followed" him inside. *Id.* at 4.

The defendant has a history of violating conditions of release. Approximately fifteen years ago, the defendant was convicted of two felony controlled substance offenses, the latter offense

3

having been committed while the defendant was on release for the first. The defendant also has a relatively recent history of violence, having accrued three misdemeanor convictions for assault and disorderly conduct based on various bar fights and physical altercations in 2013 and 2015.

## **PROCEDURAL HISTORY**

The defendant was charged by criminal complaint on January 28, 2021, and self-surrendered on February 1, 2021. Dkt. Nos. 1, 28. That same day, the defendant had his initial appearance in the United States District Court for the District of Montana and was ordered detained pending trial.

On February 10, 2021, a federal grand jury in the District of Columbia returned an indictment charging the defendant and his brother, Joshua Calvin Hughes, with three felonies and six misdemeanors. Dkt. 3. The felony offenses include Civil Disorder, in violation of 18 U.S.C. § 231(a)(3), Obstruction of an Official Proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2, and Destruction of Government Property, in violation of 18 U.S.C. §§ 1361 and 2. *Id.* The maximum penalty for Obstruction of an Official Proceeding is twenty years' imprisonment. *See* 18 U.S.C. § 1512(c)(2).

The defendant had his initial appearance in the United States District Court for the District of Columbia on March 10, 2021. On March 24, 2021, defendant filed a Motion for Modification of Bond to Place the Defendant on Conditional Release Pending Trial (hereinafter, "Bond Motion"). Dkt. 8. The Court held a hearing on the defendant's Bond Motion on April 1, 2021. *See* Dkt. 17 (Transcript of April 1, 2021 Bond Hearing). At the conclusion of the hearing, the Court provided the parties the opportunity to submit supplemental briefing regarding, among other things, the defendant's criminal history, and continued the hearing to April 7, 2021. *Id.* at 42.

At the April 7 continued hearing, the Court expressed concern about the defendant's ability to comply with conditions of release, finding it "significant" that one of defendant's felony convictions "was committed while on release for an earlier one which suggests issues complying with conditions of release." *See* Dkt. 41, at 35 (Transcript of April 7, 2021 Bond Hearing). The Court also found that the nature and circumstances of the defendant's offense, including the Government's proffered evidence of planning, weighed slightly in favor of detention. *Id.* at 33. The Court ultimately found that the defendant's danger to the community could be mitigated through the imposition of several additional conditions of release under 18 U.S.C. § 3142(c)(1)(B), including radio frequency location monitoring and home detention. *Id.*; *see also* Dkt. 23 (Order Setting Conditions of Release).

## ARGUMENT

### I. Applicable Authority

A defendant may file a motion for amendment of conditions of release with the court having original jurisdiction over the offense. 18 U.S.C. § 3145(a)(2). A defendant's "compliance—even model compliance—with the Court's requirements is not enough to warrant adjustment of [the defendant's] pretrial release conditions." *United States v. Henry*, 314 F. Supp. 3d 130, 133 (D.D.C. 2018). Rather, a defendant must demonstrate that there "has been a development in [his] situation that would affect the Court's assessment of the 'least restrictive' conditions of release that 'will reasonably assure . . . the safety of any other person and the community." *Id.* (quoting 18 U.S.C. § 3142(c)); *cf. United States v. Bikundi*, 73 F. Supp. 3d 51, 55 (D.D.C. 2014) ("As the D.C. Circuit has noted, the mere passage of time, without a substantial change in the 'underlying reasons for this court's prior decisions' regarding pretrial [conditions]

is generally not sufficient to warrant reconsiderations.") (quoting *United States v. Ali*, 534 Fed. App'x 1, 2 (D.C. Cir. 2013) (per curiam)).

### II. Location Monitoring and Home Detention Remain the Least Restrictive Means to Ensure the Safety of the Community.

Defendant has not presented any facts or developments regarding his situation that affect this Court's assessment of the least restrictive conditions of release that will reasonably assure the safety of any other person and the community. 18 U.S.C. § 3142(c). Rather, the defendant asserts – without any supporting documentation – that the current conditions of release place a substantial financial burden on the defendant and his family. *See* Dkt. 39, at 2. To the extent there has been any material change in defendant's ability to pay for the location monitoring equipment, the defendant may raise that issue with his Pretrial Services Officer, who can adjust the cost if necessary and if supported by appropriate documentation.

The embarrassment or discomfort that defendant may experience while wearing the location monitoring equipment similarly does not affect this Court's assessment of the least restrictive conditions of release that will reasonably assure the safety of any other person and the community. *Cf. United States v. Gabriel Garcia*, No. 21-cr-129 (ABJ), Dkt. 35 (Sept. 13, 2021) (denying defendant's request to remove the GPS monitoring condition where defendant complained that the ankle bracelet was uncomfortable and embarrassing). The disregard and disrespect defendant exhibited toward authorities on January 6 – including his repeated entries inside the Capitol building, his pursuit of Officer Goodman up the Senate staircase, and his unapologetic text messages to friends after January 6 – coupled with the defendant's history of violent behavior and of violating court-ordered terms of supervision, give rise to legitimate concerns about the defendant's likelihood to engage in similar acts and the defendant's ability to comply with the Court's conditions of release. Therefore, radio frequency monitoring – and the

additional accountability that it provides – is justified by the allegations against the defendant and the need to protect the community.

Finally, the defendant further requests that he be given the opportunity to earn additional income for his family by pursuing occasional work opportunities outside his district.  Based on defense counsel's proffer, the Government does not oppose modification of the defendant's home detention and out-of-district travel conditions to delegate to Pretrial Services the authority to approve limited out-of-district travel for employment purposes only.  Under such circumstances, the defendant should be required to inform his Pretrial Services Officer, in advance of any travel, the location and duration of his expected travel, including the name and address of the hotel where he will be staying.

    Respectfully submitted,

    CHANNING PHILLIPS
    Acting United States Attorney
    D.C. Bar No. 415793

By:   /s/ *Hava Arin Levenson Mirell*
    Hava Arin Levenson Mirell
    Assistant United States Attorney
    Detailee
    CA Bar No. 311098
    United States Attorney's Office
    312 N. Spring St., Suite 1100
    Los Angeles, CA 90012
    Phone: (213) 894-0717
    Hava.Mirell@usdoj.gov