**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-cr-106-TJK-2** |
| **v.** | : | |
| | : | |
| **JEROD WADE HUGHES,** | : | |
| | : | |
| **Defendant.** | : | |

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT TWO:**
**OBSTRUCTION OF AN OFFICIAL PROCEEDING**

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, hereby respectfully submits this opposition to the defendant's Motion to Dismiss Count Two of the Indictment: Obstruction of an Official Proceeding. (Dkt. 37 (hereinafter, "motion" or "Mot.")). The defendant advances three principal arguments in support of his motion. First, the defendant argues that the indictment is defective for failing to allege a nexus between the obstructive conduct and the official proceeding. (Mot. at 1-6). Second, the defendant argues that the indictment is defective for failing to identify the "official proceeding" that the defendant intended to obstruct. (*Id.* at 5-7). Finally, the defendant argues that Congress's certification of the Electoral College—a Joint Session of Congress mandated by the Constitution—does not qualify as an "official proceeding" for purposes of 18 U.S.C. § 1512(c)(2). (*Id.* at 7-17). All of the defendant's arguments are without merit and find no support in the plain text of the statute or in the caselaw.

**PROCEDURAL HISTORY**

On February 10, 2021, the Grand Jury returned an indictment charging the defendant, Jerod Wade Hughes, along with his brother and co-defendant, Joshua Calvin Hughes, with: Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) (Count One); Obstruction of an Official Proceeding,

in violation of 18 U.S.C. §§ 1521(c)(2) and 2 (Count Two); Destruction of Government Property, in violation of 18 U.S.C. §§ 1361 and 2 (Count Three); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Four); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Five); Entering and Remaining on the Floor of Congress, in violation of 40 U.S.C. § 5104(e)(2)(A) (Count Six); Entering and Remaining in Certain Rooms in the Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(C) (Count Seven); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Eight); Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Nine).

On August 30, 2021, the defendant filed the instant motion. For the reasons stated below, the defendant's motion is without merit and should be denied.

## **LEGAL STANDARD**

A defendant may move to dismiss an indictment or count for failure to state a claim prior to trial. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). "An indictment must be viewed as a whole and the allegations must be accepted as true in determining if an offense has been properly alleged." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.* An indictment must contain every element of the offense charged; if any part or element is missing, the indictment is defective and must be dismissed. *See United States v. Hillie*, 227 F. Supp. 3d 57, 70 (D.D.C. 2017).

Federal Rule of Criminal Procedure 7(c)(1) governs the "Nature and Contents" of an indictment. The rule states, in relevant part, that "[t]he indictment … must be a plain, concise, and definite written statement of the essential facts constituting the offense charged," and that "[f]or

each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1).

## ARGUMENT

**I.  Nexus is adequately alleged in Count Two of the indictment.**

Defendant argues that Count Two of the indictment must be dismissed because it "fails to allege the requisite 'nexus' between the alleged conduct and a known, obstructive effect on a proceeding before Congress." (Mot. at 5).  While the defendant is correct that § 1512(c) contains a nexus requirement, the defendant's argument lacks merit because the indictment's allegations adequately plead the requisite nexus to an official proceeding.

### A.  Background

To prove a violation of § 1512(c)(2), the government must satisfy the "nexus" requirement, namely, that the defendant "contemplated a particular, foreseeable proceeding, and that the contemplated proceeding constituted an 'official proceeding.'"  *United States v. Young*, 916 F.3d 368, 386 (4th Cir.), *cert. denied*, 140 S. Ct. 113 (2019) (citation omitted).  "'[T]he nexus limitation is best understood as an articulation of the proof of wrongful intent that will satisfy the *mens rea* requirement of "corruptly" obstructing or endeavoring to obstruct'—that is, the first element of proving a § 1512(c)(2) charge."  *Id.* (citing *United States v. Erickson*, 561 F.3d 1150, 1159 (10th Cir. 2009)); *see also United States v. Ring*, 628 F. Supp. 2d 195, 223 (D.D.C. 2009) (applying nexus requirement to § 1512(c)(2)).

The nexus requirement derives from the Supreme Court's decision in *United States v. Aguilar*, 515 U.S. 593 (1995).  There, the defendant was convicted under the omnibus clause in 18 U.S.C. § 1503 for lying to an FBI agent "who might or might not testify before a grand jury."  *Id.*

at 600.  That uncertainty was too attenuated to give rise to criminal liability because an obstructive act must "have a relationship in time, causation, or logic" with the official proceeding.  *Id.* at 599-600.  That was so, the Court held, because "if the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct."  *Id.* at 599.

The Supreme Court's decision in *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005), applied the nexus requirement to 18 U.S.C. § 1512(b)(2)(A) offenses, which prohibit "knowingly" and "corruptly persuad[ing]" another to destroy documents in contemplation of an official proceeding.  544 U.S. at 703.  Observing that "[i]t is . . . one thing to say that a proceeding need not be pending or about to be instituted at the time of the offense," *id.* at 707 (internal quotation marks omitted); *see* 18 U.S.C. § 1512(f)(1), the Supreme Court found it "quite another to say a proceeding need not even be foreseen," 544 U.S. at 708.  To secure a conviction under § 1512(b), therefore, the government must prove that the defendant has "in contemplation" a "particular official proceeding in which [the tampered-with] documents might be material."  *Id.*

### B. Courts have uniformly held that an indictment that pleads the statutory language satisfies the nexus requirement.

As several courts have recognized, while *Aguilar* and *Arthur Andersen* require proof of nexus in a § 1512(c) prosecution, they do not mandate a nexus allegation in the indictment beyond the statutory language.  *See Ring*, 628 F. Supp. 2d at 223; *United States v. Moyer*, 726 F. Supp. 2d 498, 507 (M.D. Pa. 2010) ("While *Aguilar* and *Arthur Andersen* require proof of a nexus in [obstruction] prosecutions, they do not mandate a nexus allegation in a criminal indictment; it is a factual determination appropriately left to the jury."); *United States v. Black*, 469 F. Supp. 2d 513, 543 (N.D. Ill. 2006) (same); *United States v. Gabriel*, 920 F. Supp. 498, 501 (S.D.N.Y. 1996) ("[T]here is nothing in *Aguilar* (a post-conviction case) that requires that the requisite 'nexus' be pleaded on the face of the indictment, in derogation of the hoary doctrine that an indictment that

does little more than track the language of the statute is sufficient."); *see also United States v. Suarez*, No. 5:13 CR 420, 2014 WL 1898995, at *4 (N.D. Ohio May 8, 2014) ("[T]he nexus need not be alleged or established in the indictment."); *United States v. Potts*, Crim. No. 07-85 (PAM/SRN), 2007 WL 2219392, at *4 (D. Minn. July 30, 2007) ("Whether a nexus exists, *i.e.* whether Defendant knew his actions would obstruct justice, is a jury question.").  As explained above, *Aguilar* and *Arthur Andersen* established a standard of proof for obstruction cases, not a pleading standard: "Neither *Aguilar* nor *Arthur Andersen* 'involved the sufficiency of the indictment—the issue in both cases was the sufficiency of the evidence' following a conviction." *Ring*, 628 F. Supp. 2d at 223 (quoting *United States v. Triumph Capital Grp., Inc.*, 260 F. Supp. 2d 470, 475 (D. Conn. 2003)).

The defendant is essentially asking this Court to make a factual determination that the government cannot prove a nexus between the obstructive act and the alleged official proceeding, which is a matter for the jury to decide after evidence has been presented at trial.  At this stage in the proceedings, it is enough that the indictment alleges the elements of obstruction of justice as set out under § 1512(c)(2)—namely, that the defendant: (1) corruptly, (2) did or attempted to obstruct, influence, or impede an official proceeding, that is, a proceeding before Congress, by, among other things, entering and remaining in the United States Capitol without authority and committing an act of civil disorder.  *Ring*, 628 F. Supp. 2d at 223.  Such allegations plainly charge the defendant with conduct that bears a relationship in time, causation, or logic to an "official proceeding" as that term is used in § 1512(c)(2) and defined in § 15151(a)(1)(B). *Id.* at 224. Whether the government can prove that the defendant knew his actions were likely to affect the Joint Session of Congress convened for the Electoral College vote certification when he, *inter alia*,

jumped through a broken window next to the Senate Wing door while Congress was in session and when he entered the Senate floor, will depend on the evidence at trial. *Id.*

In sum, the defendant's argument "conflates pleading with proof" and should be rejected. *Id.* at 223 (citation omitted).

## II.  The word "corruptly" is not unconstitutionally vague as applied here.

In arguing for the dismissal of Count Two based on the nexus requirement, the defendant makes passing reference to the argument that the term "corruptly" in § 1512(c) is unconstitutionally vague.  (Mot. at 3-4).  This argument is also without merit.

The defendant relies on *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991), which addressed a separate statute, 18 U.S.C. § 1505, that prohibited "corruptly" obstructing a congressional inquiry.  The D.C. Circuit held that the term "corruptly" was "vague . . . in the absence of some narrowing gloss." *Id.* at 378.  The statute "does not at all clearly encompass lying to the Congress," *id.*, and "the term 'corruptly' [was] too vague to provide constitutionally adequate notice" as to which lies it prohibited, *id.* at 379.

*Poindexter* is inapposite for three reasons.[1]  First, the D.C. Circuit narrowly confined *Poindexter*'s analysis to Section 1505's use of "corruptly," and expressly declined to hold "that term unconstitutionally vague as applied to all conduct."  951 F.2d at 385.  Five years later, in *United States v. Morrison*, 98 F.3d 619 (D.C. Cir. 1996), the D.C. Circuit rejected a *Poindexter*-based vagueness challenge to 18 U.S.C. § 1512(b) and affirmed the conviction of a defendant for "corruptly" influencing the testimony of a potential witness at trial. *Id.* at 629-30.  Other courts

---

[1] *Poindexter* was also superseded in significant part by the False Statements Accountability Act of 1996, Pub. L. No. 104-292, 110 Stat. 3459.  As codified at 18 U.S.C. § 1515(b), the Act provides that the term "corruptly" in § 1505 "means acting with an improper purpose, *personally or by influencing another*, including making a false or misleading statement." (Emphasis added).

have similarly recognized "the narrow reasoning used in *Poindexter*" and "cabined that vagueness holding to its unusual circumstances." *United States v. Edwards*, 869 F.3d 490, 502 (7th Cir. 2017); *see also, e.g.*, *United States v. Kelly*, 147 F.3d 172, 176 (2d Cir. 1998) (rejecting vagueness challenge to "corruptly" in 26 U.S.C. § 7212(a)); *United States v. Shotts*, 145 F.3d 1289, 1300 (11th Cir. 1998) (same for 18 U.S.C. § 1512(b)); *United States v. Brenson*, 104 F.3d 1267, 1280 (11th Cir. 1997) (same for 18 U.S.C. § 1503).   Defendant's rote incantation of *Poindexter* accordingly fails to establish that § 1512(c) suffers the same constitutional indeterminacy.

Second, *Poindexter* predated the Supreme Court's decision in *Arthur Andersen*.   There, the Court explained the terms "'[c]orrupt' and 'corruptly' are normally associated with wrongful, immoral, depraved, or evil*." Arthur Andersen*, 544 U.S. at 705 (citation omitted).   In doing so, the Court "did not imply that the term was too vague." *Edwards*, 869 F.3d at 502.

Third, courts have encountered little difficulty defining "corruptly" for purposes of § 1512(c)(2) following *Arthur Andersen*.  *See United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013) (same); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013) (upholding jury instruction defining "corruptly" as acting with "consciousness of wrongdoing"); *United States v. Matthews*, 505 F.3d 698, 706 (7th Cir. 2007) (upholding jury instruction defining "corruptly" as acting "with the purpose of wrongfully impeding the due administration of justice"); Seventh Circuit Pattern Criminal Jury Instruction for § 1512 ("A person acts 'corruptly' if he or she acts with the purpose of wrongfully impeding the due administration of justice.").   Such efforts demonstrate that the statute's "corruptly" element does not invite arbitrary or wholly subjective application by either courts or juries.

7

The defendant offers no additional cases for his column.  Nor could he.  "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."  *Parker v. Levy*, 417 U.S. 733, 756 (1974).  In this case, the defendant shoved his way past a line of officers on the steps leading to the Upper West Terrace of the Capitol, then entered the Capitol through a broken window alongside a mob of rioters, then broke the Senate Wing door by kicking the handle of the door repeatedly, and then pursued United States Capitol Police Officer Goodman up a flight of stairs.  After being instructed to leave the Capitol Building by United States Capitol Police officers standing guard at the Senate Carriage door, the defendant re-entered the Capitol Building and ultimately made his way on to the Senate floor.  This was all part of the defendant and other rioters' efforts to stop Congress from certifying the Electoral College vote.  Whatever the "uncertainty around the edges," *Edwards*, 869 F.3d at 502, § 1512(c)'s "corruptly" element provided ample notice to the defendant that *this conduct* was criminal.  His vagueness challenge accordingly fails.

### III. Count Two of the Indictment fairly apprises the defendant of the official proceeding that he intended to obstruct.

The defendant contends that Count Two of the indictment must be dismissed because it does not specify the "official proceeding" that the defendant intended to obstruct.  (Mot. at 5-6).  This argument is without merit because the indictment fairly informs the defendant of the facts underlying the § 1512 offense.

While an indictment must contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged," Fed. R. Crim. P. 7(c), it need not "set forth all the evidence the Government plans to present."  *Ring*, 628 F. Supp. 2d at 204 (quoting *United States v. Palfrey*, 499 F. Supp. 2d 34, 35 (D.D.C. 2007)).  An indictment is "sufficiently specific where it (1) contains the elements of the offense charged and fairly informs the defendant of those charges so that he may defend against them, and (2) enables him to plead acquittal or conviction in bar of

future prosecutions for the same offense, thus protecting him against future jeopardy for the same offense." *Id.* (internal quotation marks and citations omitted).

Count Two of the indictment describes the "official proceeding" that the defendant intended to obstruct as a "proceeding before Congress" that occurred "[o]n or about January 6, 2021, within the District of Columbia," and that the defendant is alleged to have obstructed by, among other things, entering and remaining in the United States Capitol and, specifically, the Senate floor. Thus, the indictment, viewed as a whole, sufficiently apprises the defendant of what charge he must be prepared to meet.

Nor does the defendant actually lack knowledge about the official proceeding in question. Indeed, the defendant also argues in his motion to dismiss that the certification of the Electoral College proceeding does not qualify as an "official proceeding" under § 1515—making clear that he knows full well the official proceeding he is charged with obstructing. *See Moyer*, 726 F. Supp. 2d at 511 (denying defendant's motion to dismiss two § 1512 counts where the indictment failed to allege what specific official proceeding defendant's conduct obstructed because it was "readily apparent" from the overt acts alleged in the indictment the nature of the official proceeding).

The cases the defendant cites in support of his argument are distinguishable. In *United States v. McGarity*, for example, the court vacated a conviction under § 1512(c) where "the only notice provided [by the indictment was] that the defendant[] obstructed an unknown official proceeding at some time in some place by some action." 669 F.3d 1218, 1240 (11th Cir. 2012). Here, by contrast, the indictment identifies a specific date (January 6, 2021), a specific jurisdiction (Washington D.C.), and specific actions that the defendant undertook to obstruct a proceeding before Congress (entering and remaining in the United States Capitol without authority and committing an act of civil disorder, destroying and attempting to destroy Government property,

entering the Senate floor, and engaging in disorderly and disruptive conduct and destroying federal property).

*Russell v. United States*, 369 U.S. 749 (1962), is also easily distinguished.  In *Russell*, the Supreme Court reversed convictions under a statute which made it a crime for any person summoned to testify before a committee of Congress to refuse "to answer any question pertinent to the subject under inquiry" before the congressional committee.  2 U.S.C. § 192.  The indictments contained no information identifying the particular matter "under inquiry" before the subcommittee, instead using generic terms of the statute.  *Id.* at 752.  The Court held that the indictments were insufficient because "the very core of criminality" under the statute is "pertinency to the question under inquiry," and the matter under inquiry is "central to every prosecution under the statute."  *Id.* at 764.  The Court thus held that the defendants could not be fairly informed of the charges against them unless their indictments identified the subject of the subcommittee's inquiry.  *Id.*  The same cannot be said of Count Two of the indictment, which adequately advises the defendant of the nature, date, and location of the "official proceeding," as well as the conduct that the defendant is alleged to have committed in order to obstruct that proceeding.  *Cf. United States v. Williamson*, 903 F.3d 124, 131 (D.C. Cir. 2018) (declining to extend *Russell* to a violation of 18 U.S.C. § 115(a)(1)(B) because the "official duties" performed by a threatened federal officer do not constitute "the very core of criminality" under the statute) (internal quotation marks omitted); *United States v. Staggs*, 881 F.2d 1527, 1533 n.8 (10th Cir. 1989) (describing *Russell* as "involving a unique situation"); *United States v. McClean*, 528 F.2d 1250, 1257 (2d Cir. 1976) (distinguishing *Russell* as a fact-specific case and noting that the Supreme Court in *Russell* "made clear that it was not holding as a general rule that a conviction

will be reversed where it is based on an indictment that has failed to list all of the technical requirements of an offense").

### IV. Certification of the Electoral College Vote is an "official proceeding."

The defendant's central argument is that the Joint Session of Congress convened for the Electoral College vote certification is not, as a matter of law, an "official proceeding" under § 1512(c). (Mot. at 7-17). Yet, the defendant fails to grapple with the plain language of § 1515(a)(1)(B), which defines "official proceeding" as a "proceeding before the Congress." The defendant's argument lacks merit, and the Court should deny the defendant's motion to dismiss Count Two of the indictment.

#### A.  Background

The Constitution and federal statutory law require that both Houses of Congress meet to certify the results of the Electoral College vote. Two separate provisions in the Constitution mandate that the Vice President, while acting as the President of the Senate, "shall, in the Presence of the Senate and House of Representatives, open all the Certificates, and the Votes shall then be counted." U.S. Const. art. II, § 1, cl. 3; U.S. Const amend. XII. Under the Electoral Count Act of 1887, a Joint Session of the Senate and the House of Representatives must meet at "the hour of 1 o'clock in the afternoon" on "the sixth day of January succeeding every meeting of the electors." 3 U.S.C. § 15. Section 15 details the steps to be followed: the President of the Senate opens the votes, hands them to two tellers from each House, ensures the votes are properly counted, and then opens the floor for written objections, which must be signed "by at least one Senator and one Member of the House of Representatives." *Id.* The President of the Senate is empowered to "preserve order" during the Joint Session. 3 U.S.C. § 18. Upon a properly made objection, the Senate and House of Representatives withdraw to consider the objection; each Senator and

Representative "may speak to such objection . . . five minutes, and not more than once." 3 U.S.C. § 17. The Electoral Act, which specifies where within the chamber Members of Congress are to sit, requires that the Joint Session "not be dissolved until the count of electoral votes shall be completed and the result declared." 3 U.S.C. § 16.

The obstruction statute with which the defendant is charged prohibits corruptly obstructing, influencing, or impeding any official proceeding. 18 U.S.C. § 1512(c)(2). An official proceeding for purposes of § 1512(c)(2) is defined as:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
> (B) *a proceeding before the Congress*;
> (C) a proceeding before a Federal Government agency which is authorized by law; or
> (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce[.]

18 U.S.C. § 1515(a)(1) (emphasis added).

## 1.   Certification of the Electoral College vote is a "proceeding before the Congress."

The certification of the Electoral College vote, as set out in the Constitution and federal statute, is a "proceeding before the Congress," 18 U.S.C. § 1515(a)(1)(B), and, therefore, an "official proceeding" for purposes of § 1512(c)(2). That conclusion flows principally from the obstruction statute's plain text. Skipping past the text, the defendant argues that Congress's intent and other language in the obstruction statute import a requirement that the proceeding be "adjudicatory or inquisitive in nature." Mot. at 14. That argument is incorrect.

Understanding what qualifies as an official proceeding "depends heavily on the meaning of the word 'proceeding'" because "official proceeding" is defined "somewhat circularly" as, among other things, a congressional "proceeding." *See United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013).   The certification of the Electoral College vote constitutes a "proceeding" under any interpretation of that term.

In its broadest and most "general sense," a proceeding refers to "[t]he carrying on of an action or series of actions; action, course of action; conduct, behavior." *Id.* (quoting *Proceeding,* Oxford English Dictionary, *available at* http://www.oed.com).   The defendant does not meaningfully contest that the certification of the Electoral College vote, which involves a detailed "series of actions" outlining how the vote is opened, counted, potentially objected to, and ultimately certified, is a "proceeding"—and indeed an "official proceeding"—under that general definition.   And there is good reason to construe "proceeding" as used in § 1515 in this fashion. Section 1515's text encompasses not only congressional proceedings, but judicial proceedings, grand jury proceedings, any legally authorized proceedings before federal government agencies, and proceedings "involving the business of insurance."   18 U.S.C. § 1515(a)(1); *see* S. Rep. No. 97-532, at 17 (1982) (noting that the "term 'official proceeding'" in the obstruction statute is "defined broadly").

But even if the "legal—rather than the lay—understanding" of proceeding governs § 1515's interpretation, *see Ermoian*, 752 F.3d at 1170, the Electoral College vote certification qualifies.   This narrower definition includes the "business conducted by a court or other official body; a hearing."   Black's Law Dictionary, "proceeding" (11th ed. 2019).   Taken with its modifier "official," the term proceeding thus "connotes some type of formal hearing."   *Ermoian*, 752 F.3d at 1170; *see United States v. Ramos*, 537 F.3d 439, 462 (5th Cir. 2008) (the "more formal sense"

13

of "official proceeding" is "correct in the context of § 1512").  For example, in cases assessing whether a law enforcement investigation amounts to an "official proceeding" as defined in § 1515, courts analyze the degree of formality involved in an investigation.  *See, e.g.*, *United States v. Sutherland*, 921 F.3d 421, 426 (4th Cir. 2019) (FBI investigation not an "official proceeding" because that term "implies something more formal than a mere investigation"), *cert. denied*, 140 S. Ct. 1106 (2020); *Ermoian*, 752 F.3d at 1170-72 (same); *United States v. Perez*, 575 F.3d 164, 169 (2d Cir. 2009) (internal investigation conducted by a review panel within the Bureau of Prisons was an "official proceeding" because the review panel's "work [was] sufficiently formal"); *Ramos*, 537 F.3d at 463 (internal investigation conducted by Customs and Border Patrol not an "official proceeding" because that term *"*contemplates a formal environment"); *United States v. Dunn*, 434 F. Supp. 2d 1203, 1207 (M.D. Ala. 2006) (investigation conducted by Bureau of Alcohol, Tobacco, and Firearms not an "official proceeding" because that term encompasses "events that are best thought of as hearings (or something akin to hearings)"); *see also United States v. Kelley*, 36 F.3d 1118, 1127 (D.C. Cir. 1994) (holding that a "*formal* investigation" conducted by the Officer of the Inspector General at the Agency for International Development qualified as a "proceeding" for purposes of 18 U.S.C. § 1505) (emphasis added).

The formality involved in the certification of the Electoral College vote places it "comfortably within the category" of an official proceeding.  *See Perez*, 575 F.3d at 169.  Few events are as solemn and formal as a Joint Session of the Congress.  That is particularly true for the certification of the Electoral College vote, which is expressly mandated under the Constitution and federal statute.  Required by law to begin at 1:00 p.m. on the January 6 following a presidential election, the certification of the Electoral College vote is both a "hearing" and "business conducted by . . . [an] official body."  *See* Black's Law Dictionary, *supra*.  The Vice President, as the President

of the Senate, serves as the "presiding officer" over a proceeding that counts votes cast by Electors throughout the country in a presidential election. 3 U.S.C. § 15. As in a courtroom, Members may object, which in turn causes the Senate and House of Representatives to "withdraw" to their respective chambers so each House can render "its decision" on the objection. *Id.* And just as the judge and parties occupy specific locations in a courtroom, so too do the Members within the "Hall." *See* 3 U.S.C. § 16 (President of the Senate is in the Speaker's chair; the Speaker "immediately upon his left"; the Senators "in the body of the Hall" to the right of the "presiding officer"; the Representatives "in the body of the Hall not provided for the Senators"; various other individuals "at the Clerk's desk," "in front of the Clerk's desk," or "upon each side of the Speaker's platform"). The Electoral College vote certification, moreover, must terminate with a decision: no recess is permitted until the "the count of electoral votes" is "completed," and the "result declared." *Id.* In short, the certification of the Electoral College vote is a "proceeding before the Congress." *See* 18 U.S.C. § 1515(a)(1)(B).

> **2.** **The "proceeding before the Congress" is not limited to purely "adjudicatory" proceedings, but even if it were, the certification of the Electoral College vote would qualify.**

The defendant incorrectly asks this Court to limit the interpretation of "proceeding before the Congress" to encompass only proceedings that are "judicial," "quasi-judicial," "adjudicatory" or "inquisitive in nature, requiring investigations, due process, sworn testimony, and document production." (Mot. at 10, 14). Whatever the merits of the defendant's argument for other provisions in Section 1515(a)(1), it finds no textual support when applied to Section 1515(a)(1)(B), which speaks broadly of a proceeding "before the Congress." Had Congress wanted to import a definition that more closely resembled a quasi-adjudicative setting—like a court hearing—it needed to look only a few provisions away to 18 U.S.C. § 1505, which criminalizes obstruction of

"the due and proper administration of the law under which any pending proceeding is being had" by a federal department or agency.  Indeed, § 1505 expressly criminalizes obstruction of "any inquiry or investigation [that] is being had by" Congress, including by congressional committees and subcommittees.  18 U.S.C. § 1505; *see United States v. Bowser*, 964 F.3d 26, 31 (D.C. Cir. 2020).  Section 1505 shows that Congress knew how to limit an obstruction prohibition to congressional investigations, and that it could have also done so in the text of § 1515(a)(1)(B).  But it did not.  Instead, Congress enacted language—"a proceeding before the Congress"—to cover a broader range of proceedings than the "inquir[ies] and investigation[s]" envisioned in § 1505.  That distinctively broader definition includes the Electoral College vote certification.  *See, e.g.*, *Russello v. United States,* 464 U.S. 16, 23 (1983) ("We refrain from concluding here that the differing language in the two subsections has the same meaning in each.  We would not presume to ascribe this difference to a simple mistake in draftsmanship.").

Rather than engage with § 1515's text, the defendant relies on irrelevant legislative history to argue that the certification of the Electoral College vote is not an "official proceeding."  That approach fails for several reasons.  First, it is methodologically flawed.  To determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning." *Levin v. United States*, 568 U.S. 503, 513 (2013) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)).  In ordinary parlance, a gathering of the full Congress to certify the Electoral College vote is "a proceeding before the Congress."  Because § 1515(a)(1)(B)'s words "are unambiguous, the judicial inquiry is complete."  *See Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020) (internal quotation marks omitted).  The defendant offers no rationale for looking past the statute's plain text to reach for other interpretive tools.

Second, even if this Court were to consider legislative history—which it should not, given the plain meaning of the statute's text—that legislative history makes clear Congress's intent that § 1512 be construed broadly.  The defendant points to legislative history for a proposed obstruction statute that Congress did not ultimately enact (*see* Mot. at 11-14), which included a narrower definition of "official proceeding."  Far from showing that Congress intended to limit the term "official proceeding" to "be limited to congressional inquiry hearings," (Mot. at 13-14), that history shows precisely the opposite: that Congress considered, but ultimately rejected, the narrower provision in favor of a broad definition of official proceeding that includes any "proceeding before the Congress."  18 U.S.C. § 1515(a)(1)(B).

The defendant's challenge fails even if he is correct—and he is not—that a proceeding must be judicial or quasi-judicial in nature.  Far from informal or ministerial, the certification of the Electoral College vote comprises features that resemble an adjudicative proceeding.  It involves the convening of a Joint Session of Congress, a deliberative body over which a government officer, the Vice President as President of the Senate, "presid[es]."  3 U.S.C. § 15.  That body convenes to render judgment on whether to certify the votes cast by Electors in the presidential election.  As in an adjudicative setting, parties may lodge objections to the certification, and if any such objection is lodged, each House must consider the objection and make a "decision" whether to overrule or sustain it.  *Id.*  And just as a jury does not (barring a mistrial) recess until it has a reached a verdict, the Joint Session cannot "be dissolved" until it has "declared" a "result."  3 U.S.C. § 16.

### 3.      Caselaw interpreting § 1515(a)(1)(C) is inapposite.

.  The defendant's reliance on cases interpreting subsections § 1515(a)(1)(A) and (a)(1)(C), (*see* Mot. at 14-17), is misplaced, because those decisions hinge on the phrase "which is authorized by law" that is absent from subsection (a)(1)(B).  In *Ermoian*, for example, the question was

whether an FBI investigation was an "official proceeding" that was "authorized by law" under subsection (a)(1)(C).  752 F.3d at 1170.  The same question was addressed in *Ramos*, 537 F.3d at 463 (internal investigation conducted by Customs and Border Patrol); *United States v. Binette*, 828 F. Supp. 2d 402, 404 (D. Mass. 2011) (preliminary SEC investigation); and *Perez*, 575 F.3d at 169 (review panel within the Bureau of Prisons).  Specifically, those courts grappled with questions such as when an agency investigation is a proceeding, *Ramos*, 537 F.3d at 462; whether the requirement in § 1512(f)(1) that a proceeding "need not be pending or about to be instituted at the time of the offense" as applied to agency investigations would reach "conduct that occurred even pre-criminal-investigation," *Ermoian*, at 752 F.3d at 1172; and whether the "official" modifier "implies something more formal than a mere investigation," *Sutherland*, 921 F.3d at 426.  Those questions do not arise here.  The certification of the Electoral College vote is a congressional proceeding, not an investigation, and involves a degree of formality distinct from any agency investigation.  And, in any event, the pertinent statutory definition—a "proceeding before the Congress"—is phrased more broadly than the "official proceeding" definition at issue in those cases.

The defendant's reliance on *United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013), (*see* Mot. at 16), is similarly unavailing.  In *Burge*, the defendant provided false responses to written interrogatories as part of a civil lawsuit.  Before trial, the defendant filed a motion to dismiss the indictment for failure to state an offense under § 1512(c) because the obstructive conduct did not occur in or during the official proceeding before a judge or court.  Significantly, the parties did not contest that a civil suit qualifies as an "official proceeding" within the meaning of § 1515(a)(1)(A).  Thus, the Court's dicta that obstruction of justice "occurs when a defendant acts to impede the types of proceedings that take place before judges or grand juries" has no bearing on this Court's

analysis of subsection (a)(1)(B), since *Burge* did not consider, much less analyze, the definition of "a proceeding before the Congress," as set forth in § 1515(a)(1)(B).

### 4.    An internal, out-of-date Department of Justice resource manual is irrelevant to this Court's analysis of § 1512(c)(2).

The defendant's invocation of the Department of Justice's Criminal Resource Manual, (*see* Mot. at 16 n.4), which was published *before* Congress enacted § 1512(c)(2) in 2002, has no bearing on the Court's analysis of the phrase "official proceeding" in that statute.

According to an archived Department of Justice website, the Criminal Resource Manual was last published in 1997.  *See* Department of Justice, United States Attorneys' Manual & Resource Manual Archives (hereinafter, "DOJ, Resource Manual Archives"), *at* https://www.justice.gov/archive/usao/usam/index.html ("1997 - Criminal Resource Manual"). The defendants cite to § 1729 of the Manual,[2] (ECF 240 at 12), but the text of that provision proves that it was published *before* Section 1512(c) was added.  First, Section 1512(c) is not mentioned in any of the nine paragraphs.  Second, the text references a pre-2002 version of the statute; as an example, it cites extraterritorial jurisdiction as subsection (g) but in 2002 that provision was moved to subsection (h).  *See* Pub. L. 107-204, § 1102(1) (2002).

The Criminal Resource Manual was formerly appended to the Justice Manual, but it has been "superseded" and is now simply "archival material" with "no current application."  DOJ, Resource Manual Archives.  The Criminal Resource Manual was, as its name implies, merely a *resource* manual.  And even the Justice Manual contains only "*internal* DOJ guidance."  Justice Manual § 1-1.200 (emphasis added).  It creates no rights.  *United States v. Blackley*, 167 F.3d 543,

---

[2] Section 1729 is archived at https://www.justice.gov/archives/jm/criminal-resource-manual-1729-protection-government-processes-tampering-victims-witnesses-or.  The bottom of the page indicates that it was "updated January 17, 2020," but that appears to be the date it was archived.

548 (D.C. Cir. 1999); *see also United States v. Caceres*, 440 U.S. 741, 754 (1979) (noting that the IRS manual does not confer any rights but is instead only an internal statement of policy).

Finally, Criminal Resource Manual Section 1729's very generalized discussion and summary of § 1512 does not address the very specific question regarding the scope of the obstructive conduct that Congress intended to criminalize by inserting § 1512(c)(2) in 2002.

## CONCLUSION

For the foregoing reasons, and any additional reasons as may be cited at a hearing on this motion, the government respectfully requests that the defendant's motion be denied.


Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793


By:      /s/ *Hava Arin Levenson Mirell*
Hava Arin Levenson Mirell
Assistant United States Attorney
CA Bar No. 311098
312 N. Spring St., Suite 1100
Los Angeles, CA 90012
Phone: 213-894-0717
Email: Hava.Mirell@usdoj.gov