UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 21-CR-106-2 (TJK) |
| : | |
| : | |
| JEROD WADE HUGHES, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S SECOND MOTION TO DISMISS COUNT TWO**

Defendant Jerod Wade Hughes moves for a second time to dismiss Count Two, which charges obstruction of an official proceeding and aiding and abetting in violation of Title 18, U.S. Code, Sections 1512(c)(2), 2. ECF No. 63 ("Def. Mtn."). In this motion, he raises a new argument, claiming that Section 1512 applies only to conduct that impairs the integrity of a document, record, or other object. Although the defendant does not acknowledge it, this very Court has rejected the same argument. *United States v. Nordean*, 21-cr-175 (TJK), 2021 WL 6134595 (D.D.C. Dec. 28, 2021). For the same reasons explained in *Nordean*, the defendant's motion should be denied.

**I.   Relevant Background**

Defendant Jerod Hughes and his co-defendant and brother Joshua Hughes were charged by a second superseding indictment on November 10, 2021. ECF No. 49. This indictment charges nine counts, all relating to the defendants' participation in the riot at the U.S. Capitol on January 6, 2021. Relevant here, Count Two alleges that the defendants "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote…" *Id.* at 2.

Congress enacted Section 1512 as a prohibition on "[t]ampering with a record or otherwise

impeding an official proceeding" in Section 1102 of the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745, 807, and codified it in Chapter 73 of Title 18 of the United States Code, placing it within the pre-existing Section 1512 as subsection (c). That prohibition applies to

> (c) [w]hoever corruptly--
>
>> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>>
>> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so[.]

18 U.S.C. § 1512(c).

In *United States v. Miller*, No. 21-cr-119, another case arising out of the January 6 riot, the defendant was charged with the same offense as Hughes is charged here, using the same relevant charging language and allegations. ECF 61, at 2-3 (D.D.C Nov. 10, 2021). Miller moved to dismiss on several grounds, including the claim that Section 1512(c)(2) did not apply to his alleged conduct because the statute is limited to conduct impairing the availability and integrity of evidence. No. 21-cr-119, ECF 72, Memorandum Opinion at 6-7 (D.D.C. Mar. 7, 2022) (hereinafter, "*Miller*"). The Honorable Carl J. Nichols applied principles of "restraint" and lenity to agree that Miller's alleged conduct did not fall within Section 1512(c)(2)'s scope. *Id*. at 10-29.

Focusing on the word "otherwise" in Section 1512(c)(2), Judge Nichols identified "three possible readings" of Section 1512(c)(2)'s scope. *Miller* at 11. First, Section 1512(c)(2) could serve as a "clean break" from Section 1512(c)(1), *id.* at 11-12, a reading that "certain courts of appeals have adopted," *id.* at 14. Judge Nichols, however, identified multiple "problems" with that interpretation, all focused on the interpretation of the term "otherwise." Judge Nichols reasoned that reading "otherwise" in Section 1512(c)(2) to mean "in a different way or manner" is "inconsistent" with the Supreme Court's decision in *Begay v. United States*, 553 U.S. 137 (2008), which considered whether driving under the influence qualified as a "violent felony" under the

2

now-defunct residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1). *Miller* at 12–14. Judge Nichols accordingly rejected the first interpretation. *Id.* at 19-20. Second, in Judge Nichols's view, Section 1512(c)(1) could "provide[] examples of conduct that violates" Section 1512(c)(2). *Id.* at 15-16. Third, Section 1512(c)(2) could be interpreted as a "residual clause" for Section 1512(c)(1), such that both provisions are linked by the document-destruction and evidence-tampering "conduct pr[o]scribed by" Section 1512(c)(1). *Id.* at 17. After considering Section 1512(c)'s structure, "historical development," and legislative history, Judge Nichols found "serious ambiguity" as to which of the two "plausible" readings—the second and third readings identified above—Congress intended. Applying what Judge Nichols described as principles of "restraint," he then interpreted Section 1512(c)(2) to mean that a defendant violates the statute only when he or she "take[s] some action with respect to a document, record, or other object in order to corruptly obstruct, impede, or influence an official proceeding" (the third reading). *Id.* at 28. Because, in Judge Nichols's view, the indictment did not encompass an allegation that Miller took any such action, Judge Nichols dismissed that charge. *Id.* at 29.

Both before and after the ruling in the *Miller* case, judges on this Court have rejected a document-focused interpretation of Section 1512(c)(2). In *United States v. Sandlin*, No. 21-cr-88, 2021 WL 5865006 (D.D.C. Dec. 10, 2021), the Honorable Dabney L. Friedrich found that Section 1512(c)(2)'s terms are "expansive and seemingly encompass all sorts of actions that affect or interfere with official proceedings" and determined that the use of the word "otherwise" in Section 1512(c)(2) "clarifies" that it "prohibits obstruction by means *other than* document destruction*.*" *Id*. at *5-*6. She did not view the Supreme Court's decision in *Begay* as altering that conclusion, because *Begay* rested on the ACCA's different statutory language and history. *Id.* at *6. Judge Friedrich also rejected the defendant's reliance on *Yates v. United States*, 574 U.S. 528 (2015)

3

(plurality opinion). *Sandlin*, 2021 WL 5865006, at *6-*8. Finally, Judge Friedrich concluded that, although a plain-text construction of Section 1512(c)(2) creates "substantial overlap" with other provisions in Section 1512 and Chapter 73, it does not create "intolerable overlap." *Id.* at *7-*8 (citing *United States v. Aguilar*, 515 U.S. 593, 616 (1995) (Scalia, J., concurring in part and dissenting in part)) (emphasis omitted).

Decisions from other judges on this Court followed suit. For example, in *United States v. Caldwell*, No. 21-cr-28, 2021 WL 6062718 (D.D.C. Dec. 20, 2021), the Honorable Amit P. Mehta concluded that Section 1512(c)(2) is not "limited" to conduct "affecting the integrity or availability of evidence in a proceeding." *Id.* at *11 (brackets and internal quotation marks omitted); *see id.* at *11-*19 (addressing Section 1512(c)(2)'s text and structure, *Begay*, and *Yates*). In *United States v. Mostofsky*, No. 21-cr-138, 2021 WL 6049891 (Dec. 21, 2021), the Honorable James E. Boasberg found persuasive the analysis in *Sandlin* and *Caldwell*. *See id.* at *11. In *United States v. Nordean*, 21-cr-175, 2021 WL 6134595 (D.D.C. Dec. 28, 2021), this Court reasoned that an interpretation of Section 1512(c)(2) limiting it to "impairment of evidence" could not "be squared with" Section 1512(c)(2)'s "statutory text or structure." *Id.* at *6; *see id.* at *6-*9 (addressing *Yates* and superfluity concerns). And in *United States v. Montgomery*, 21-cr-46, 2021 WL 6134591 (D.D.C. Dec. 28, 2021), the Honorable Randolph D. Moss reached the same conclusion following an extended discussion of Section 1512(c)'s text, structure, and legislative history, as well as the *Begay* and *Yates* decisions. *Id.* at *10-*18; *see also United States v. Bozell*, 21-cr-216, 2022 WL 474144, at *5 (D.D.C. Feb. 16, 2022) (Bates, J.) (reaching the same conclusion on the scope of Section 1512(c)(2)); *United States v. Grider*, 21-cr-22, 2022 WL 392307, at *5-*6 (D.D.C. Feb. 9, 2022) (Kollar-Kotelly, J.) (same).

Following Judge Nichols's decision in *Miller*, judges on this Court have disagreed with its

analysis. For example, in denying a defendant's post-trial motion for acquittal under Rule 29 of the Federal Rules of Criminal Procedure, Judge Friedrich indicated that she was "not inclined to reconsider" her ruling in *Sandlin* and described her points of disagreement with *Miller*. *United States v. Reffitt*, 21-cr-32, Trial Tr. 1502-05 (Mar. 8, 2022) (attached as Exhibit A). And in *United States v. Puma*, 21-cr-454, 2022 WL 823079 (D.D.C. Mar 19, 2022), the Honorable Paul J. Friedman concluded that the word "otherwise" in Section 1512(c)(2) "clarifies" that a defendant violates that section "through 'obstruction by means *other than* document destruction.'" *Id.* at *12 (quoting *Mostofsky*, 2022 WL 6049891, at *11). In reaching that conclusion, Judge Friedman rejected *Miller*'s "premise that any 'genuine ambiguity persist[s],'" *id.* at *12 n.4 (quoting *Miller* at 7), and therefore found the rule of lenity "inapplicable," *id.*

## II. Argument

Echoing the arguments advanced in *Miller*, Hughes claims that Section 1512(c)(1) should be read as a limit on the scope of Section 1512(c)(2), because, he argues, "specific examples enumerated prior to a residual clause are typically read as refining or limiting" the broader clause. Def. Mtn. at 3. He relies on *Miller*'s conclusion that the rule of lenity or "restraint" requires this interpretation. *Id.* at 4 (citing *Miller* at 28). Hughes's argument, and the reasoning in *Miller* upon which he relies, is flawed. The rule of lenity or restraint does not apply to Section 1512(c)(2) because, as many other judges including this Court have concluded after examining the statute's text, structure, and history, there is no genuine—let alone "grievous" or "serious"—ambiguity.

Moreover, even if Hughes's narrow interpretation of Section 1512(c)(2) were correct, dismissal at this stage is not appropriate. *Miller* erred in dismissing the Section 1512(c)(2) charge because the indictment's allegations—tracking the statutory text—validly alleged a violation of Section 1512(c)(2) under a broad or narrow reading of the law, just as they do here.

### A. The rule of lenity does not apply to Section 1512(c)(2).

The rule of lenity ensures that "legislatures and not courts" define criminal activity given the "seriousness of criminal penalties" and the fact that "criminal punishment usually represents the moral condemnation of the community." *United States v. Bass*, 404 U.S. 336, 348 (1971); *see Liparota v. United States*, 471 U.S. 419, 427 (1985) ("Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability."). This rule does not come into play, however, when a law merely contains some degree of ambiguity or is difficult to decipher. The rule of lenity "only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (citation and internal quotation marks omitted); *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998); *Young v. United States*, 943 F.3d 460, 464 (D.C. Cir. 2019). In short, some ambiguity is insufficient to trigger the rule of lenity; instead, a court must find "grievous ambiguity" that would otherwise compel guesswork. *See Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016) (internal quotation marks omitted). "Properly applied, the rule of lenity therefore rarely if ever plays a role because, as in other contexts, 'hard interpretive conundrums, even relating to complex rules, can often be solved.'" *Wooden v. United States*, 142 S. Ct. 1063, 1075 (2022) (Kavanaugh, J., concurring) (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019)).

*Miller* erroneously applied the rule. That opinion referred to the "'grievous' ambiguity" standard when initially discussing the rule, *see Miller* at 9, and found "a serious ambiguity" regarding the conduct that Section 1512(c)(2) reaches, *id.* at 28; *see also id.* at 22 ("[T]he Court does not believe that there is a single obvious interpretation of the statute."). But this interpretation

6

of Section 1512(c)(2)'s scope places undue emphasis on a single word ("otherwise") and a single Supreme Court decision (*Begay*) that interpreted that word as used in an entirely different statute and statutory context. A proper reading of Section 1512(c)(2)'s text, structure, and history demonstrates that Section 1512(c)(2) prohibits any corrupt conduct that intentionally obstructs or impedes an official proceeding, not merely where a "defendant ha[s] taken some action with respect to a document, record, or other object," *id.* at 28, to corruptly obstruct an official proceeding.

Simply put, as this Court has held, "Section 1512(c)(2) is not ambiguous after application the ordinary canons of statutory construction. Thus, the rule of lenity does not apply." *Nordean*, 2021 WL 6134595, at *12; *see also Puma*, 2022 WL 823079, at *12 n.4. Congress made clear in Section 1512(c)(2) that it sought to protect the integrity of official proceedings—regardless of whether a defendant threatens such a proceeding by trying to interfere with the evidence before that tribunal or threatens the tribunal itself. Confirming the absence of ambiguity—serious, grievous, or otherwise—is that despite Section 1512(c)(2)'s nearly 20-year existence, no other judge has found ambiguity in Section 1512(c)(2),[1] including eight judges on this Court considering

---

[1] *See, e.g.*, *United States v. Martinez*, 862 F.3d 223, 238 (2d Cir. 2017) (police officer tipped off suspects about issuance of arrest warrants before "outstanding warrants could be executed, thereby potentially interfering with an ongoing grand jury proceeding"), *vacated on other grounds*, 139 S. Ct. 2772 (2019); *United States v. Petruk*, 781 F.3d 438, 446-47 (8th Cir. 2015) (defendant attempted to secure a false alibi witness while in jail for having stolen a vehicle); *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014) (defendant solicited information about a grand jury investigation from corrupt "local police officers'); *United States v. Ahrensfield*, 698 F.3d 1310, 1324-26 (10th Cir. 2012) (law enforcement officer disclosed existence of undercover investigation to target); *United States v. Phillips*, 583 F.3d 1261, 1265 (10th Cir. 2009) (defendant disclosed identity of an undercover officer, thus preventing him from making controlled purchases from methamphetamine dealers); *United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009) (false testimony before a grand jury); *United States v. Reich*, 479 F.3d 179, 185-87 (2d Cir. 2007) (Sotomayor, J.) (defendant an opposing part a forged court order that purported to recall and vacate a legitimate order, causing the opposing party to withdraw an application for a writ of mandamus).

the same law and materially identical facts. *See supra* at 3-5. Section 1512(c)(2)'s text and context make clear that it reaches conduct that obstructs, influences, or impedes an official proceeding in a manner other than document destruction or evidence tampering.

> **B. Even if Section 1512(c)(2)'s scope were limited to conduct that impairs the integrity of a document, record, or other object, pretrial dismissal based on the indictment's allegations is premature.**

Federal Rule of Criminal Procedure 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*." Fed. R. Crim. P. 12(b)(1) (emphasis added). As the defendant recognizes, dismissal under Rule 12 based on a claimed defect in the indictment must be based "only on the language charged in the Indictment and the language of the statute alleged to have been violated." Def. Mtn. at 3 (citing *United States v. Akinyoyenu,* 199 F. Supp. 3d 106, 109-10 (D.D.C. 2016)). Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.); *see also United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005) (noting that pretrial dismissal on sufficiency-of-the-evidence grounds is not warranted unless the government "has made a full proffer of evidence" or the parties have agreed to a "stipulated record").

The scope of conduct covered under Section 1512(c)(2) is distinct from whether Count Two adequately states a violation of Section 1512(c)(2). The second superseding indictment here puts Hughes on notice as to the charges, while also encompassing both the broader theory that a defendant violates Section 1512(c)(2) through any corrupt conduct that "obstructs, impedes, or influences" an official proceeding *and* the narrower theory that a defendant must "have taken some action with respect to a document," *Miller* at 28, in order to violate Section 1512(c)(2). Even under *Miller*'s conclusion that only the narrower theory is a viable basis for conviction, dismissal of

Count Two is not the result; instead, the Court would properly enforce that limitation by permitting conviction on that basis alone. *See United States v. Ali*, 885 F.Supp.2d 17, 33 (D.D.C. 2012) (limiting the government's aiding and abetting theory under 18 U.S.C. § 1651 to acts of piracy committed while the defendant was on the high seas but not dismissing the count), *reversed in part by* 718 F.3d 929, 941 (D.C. Cir. 2013) (disagreeing with the district court's limitation on aiding and abetting liability under Section 1651). Critically, cases involving successful challenges by defendants concerning whether their *conduct*—and not merely the allegations against them—falls within the scope of the charged statute arise not under Rule 12 but following trials that establish the evidentiary record necessary to determine precisely what the defendant's conduct entailed. *See, e.g.*, *Marinello v. United States*, 138 S. Ct. 1101, 1105 (2018) (considering scope of 26 U.S.C. § 7212(a) following defendant's conviction at trial); *Yates*, 574 U.S. at 534-35 (plurality opinion) (considering scope of the phrase "tangible object" in 18 U.S.C. § 1519 following defendant's conviction at trial); *Aguilar*, 515 U.S. at 597 (considering scope of omnibus clause in 18 U.S.C. § 1503 following the defendant's conviction at trial).

It is clear why that is so. Even assuming Hughes's argument (and *Miller*'s interpretation of Section 1512(c)(2)) were correct, and that the government therefore must prove that the defendant "took some action with respect to a document, record, or other object in order to corruptly obstruct, impede[,] or influence Congress's certification of the electoral vote," *Miller* at 29, no court could ascertain whether a defendant's conduct meets that test until after a trial. At trial, the government could present evidence that the Certification proceeding operates through an assessment of ballots, lists, certificates, and, potentially, written objections. For example, evidence would show Congress had before it boxes carried into the House chamber at the beginning of the Joint Session that contained "certificates of votes from the electors of all 50 states plus the District

9

of Columbia." *Reffitt*, *supra*, Trial Tr. at 1064 (Mar. 4, 2022) (testimony of the general counsel to the Secretary of the United States Senate) (excerpt attached as Exhibit B). Evidence would further show that, as rioters began to breach the restricted area around the Capitol building and grounds on January 6, 2021, legislators were evacuated from the House and Senate chambers, and the staff for the Secretary of the United States Senate "took the ballot boxes and other paraphernalia of the proceeding" out of the chamber "to maintain custody of the ballots and make sure nothing happen[ed] to them." *Id.* at 1072.

Additional evidence could establish that Hughes's conduct had the "natural and probable effect," *Aguilar*, 515 U.S. at 599 (internal quotation marks omitted), of destroying or imperiling the ballots and "other paraphernalia" from the Certification proceeding. Whether or not the defendant in fact placed hands on a document or record connected to the Certification proceeding, his forcible entry into the Capitol building and onto the Senate floor, and his interference with law enforcement officers, contributed to the chaos that led to the evacuation of lawmakers, the entrance of a Capitol police officer with a "very long, very large long gun" onto the Senate floor, and the scramble to remove the sealed electoral ballots to safety. *Reffitt*, *supra*, Trial Tr. at 1071-72 (excerpt attached as Exhibit B). In that respect, the defendant here "took" many "action[s]" with respect to Congress's consideration of documents and records central to the Certification proceeding and thereby corruptly obstructed and impeded that Certification proceeding, including blocking lawmakers from considering such documents and records. In acting to thwart the commencement and operation of an official proceeding that involved such documents, the evidence would establish that Hughes violated Section 1512(c)(2) even under an interpretation of Section 1512(c)(2) that requires that the defendant "have taken some action with respect to a document, record, or other object" to obstruct an official proceeding, *Miller* at 28.

### III. Conclusion

For the foregoing reasons, this Court should deny the defendant's motion to dismiss Count Two, charging a violation of Section 1512(c)(2).

Respectfully submitted,

For the UNITED STATES:

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

/s/ *Emily W. Allen*
EMILY W. ALLEN, Cal. Bar No. 234961
Assistant United States Attorney
601 D Street, N.W.
Washington, DC 20530
emily.allen@usdoj.gov
(907) 271-4724
