## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>Jerrod Hughes<br><br>              Defendant. | Crim No.:  1:21- CR 00106 (TJK) |

### Defendant's Sentencing Memorandum

COMES NOW, the defendant, Jerrod Hughes, in accordance with 18 U.S.C. Section 3553(a) and requests that this Court grant a <u>variance</u> from the Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines"), and impose a sentence beneath the USSG sentence recommended. The defense agrees with the prosecution that US Probation office correctly calculated the defendant's criminal history as category II. (PSR 59) Consequently, the correct USSG guideline is 46-57 months.  Defendant requests the Court find good cause for a variance and impose a sentence below the guidelines.  Additionally, defendant requests, for reasons of safety and in the interest of avoiding unnecessary hardship that the defendant be granted conditional release under the same conditions that were in place prior to his sentencing  and allow the defendant to voluntarily surrender upon designation to a facility by the Bureau of Prisons.

1

## Voluntary Surrender

Defendant notes that at the time of Defendant's plea the defense requested, and the prosecution did not oppose, that defendant be permitted to remain on conditional release pending sentencing. That was granted and defendant has been in compliance with all conditions without any allegation of any violations. Defendant has shown that he has no intention to avoid complying with any conditions of release nor complying with law enforcement generally. At the outset in this case, prior to any arrest warrant issuing, defendant and his co-defendant brother voluntarily came to the local police station in Montana and advised officers there that he expected that law enforcement was looking for him because of his activities in connection with the January 6, 2021, activities at the Capitol. As noted by the prosecution, the Hughes brothers did identify themselves to police in photos from the Capitol. Because there was no warrant police released him. Subsequently, when contacted, they did again self-surrender knowing they would be arrested. They fully cooperated with police at all times, including surrendering their cell phones knowing that they were granting access to incriminating evidence.

After surrender defendant was placed on HISP release on April 7, 2021. He has been in compliance with all conditions of release, including

making all court appearances etc., for one year and 8 months[1]. His remaining in the community presents no risk to the community nor is there any reason to believe he will abscond or fail to report when ordered.

If the defendant is "stepped back" at the time of sentencing it will likely be 60-120 days before the defendant is "designated" and transferred to his "designated" facility. In the interim defendant will be held, most likely, at a series of local "jails" which have minimal services and are likely to be more restrictive. If the Court grants voluntary surrender it will lessen his BOP security rating, (Salient Factor), thereby, making him eligible for a less restrictive facility. Additionally, he is the primary caretaker for his disabled wife and supporter of the family. Allowing him to remain in the community pending "voluntary surrender" would enable him to continue to provide services to her at least while he is awaiting surrender.

## THE SENTENCING GUIDELINES PRESENT A STARTING POINT FOR THE CALCULATION OF SENTENCE

---

[1] Admittedly, the approximately 20 months defendant has spent on home detention is not credited by BOP to any sentence imposed. However, the Court has discretion to consider that period in home detention in fashioning an appropriate sentence.

3

The defense does not dispute the Sentencing guidelines calculations as reflected in the Pre Sentence Report[2].

The U.S. Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), and its progeny, require district courts to consider both the U.S.S.G. range and all of the factors contained in 18 U.S.C. Section 3553(a) when calculating a criminal defendant's ultimate sentence. District courts are instructed first to correctly calculate the guideline range and then consider the factors in Section 3553(a) to determine whether a sentence within the guideline range is appropriate or whether a variance from the guideline range is warranted. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). There is no presumption of reasonableness attached to the guideline range nor is there a presumption of unreasonableness to a non-guideline range sentence. *See id.* at 50. Following a consideration of the guideline range along with the Section 3553(a) factors in relation to the facts of the case, the district court shall impose a sentence *sufficient, but not greater than necessary*, to comply with the intent of Section 3553(a). *See id.* at 52 (quoting *Koon v. United States*, 518 U.S. 81, 98 (1996)) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted

---

[2] The PSR correctly calculated the defendant's criminal history as II. The parties previously miscalculated it in the plea agreement.

4

person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue").

In the instant case, we submit that a sentence beneath the applicable USSG sentencing guidelines is sufficient to accomplish the goals of sentencing under section 3553(a), and, therefore, is the appropriate sentence in this case. The instant request is a variance from the guideline range.

Consideration of 18 U.S.C. § 3553 (a) factors

The core requirement of 18 U.S.C. §3553(a) is that the court impose "a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in § 3553(a), which provides no order of priority among the factors. The factors outlined in § 3553(a) are as follows:

· The nature and circumstances of the of the offense and the history and characteristics of the defendant 18 U.S.C. § 3553(a)(1);

· the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A);

5

· the need for the sentence imposed "to afford adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2)(B);

· the need for the sentence imposed "to protect the public from further crimes of the defendant," 18 U.S.C. § 3553(a)(2) (C);

· the need for the sentence imposed "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," 18 U.S.C. § 3552(a)(2)(D);

· the kinds of available sentences available, 18 U.S.C. § 3553(a)(3);

· the guidelines in effect at the date of sentencing and any pertinent policy statements, 18 U.S.C. § 3553(a)(4) and (5);

· "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6);

· "the need to provide restitution to any victims of the offenses," 18 U.S.C. § 3553(a)(7).

APPLICATION TO THE INSTANT CASE

<u>The Defendant</u>

6

As the PSR makes clear the defendant has a remote history when he was much younger of some issues involving substance abuse. They occurred and ended when the defendant was approximately 20. He is currently 38 and there is no indication he has been involved in that type of activity in the last 18 years[3]. To the contrary he has a stable history or working, supporting his family emotionally and financially. By all accounts he is an honest citizen with a long history of gainful lawful employment. Aside from the instant case there is no indication he has been involved in any serious criminal conduct. There is no indication he has been involved in substance abuse. He is clearly not oriented towards a criminal lifestyle. As noted in the PSR, the defendant's wife is severely disabled and defendant is the primary caretaker for her, in addition to being the primary means of financial support for his family, which includes his dependent daughter. In essence, the defendant goes to work and takes care of his family. He appears to do little else.

Defendant's Involvement in the Underlying Offense

---

[3] Defendant has had some minor misdemeanor assault offenses, one of which was a dispute with a co-worker that escalated into a fight. Although these may reflect issues with temper, they do not indicate a criminal lifestyle orientation.

7

The Court, as well as the entire country, are painfully aware of what occurred at the Capitol on January 6, 2021. The defense takes little factual issue with the recounting of the events in the PSR, the plea proffer, the Prosecution's sentencing memorandum, etc.. The defense points out that there is no allegation that defendant ever sought to physically strike anyone that day. He was not armed, did not bring weapons nor any of the various "sprays" that were in use, nor any protective armor. He is not alleged to be a member of any of the various groups or organizations that planned or sought to provoke violence that day. Aside from the single incident of admittedly kicking a door handle, he is not alleged to have sought to vandalize or destroy property[4].

Defendant is one of millions of gullible citizens who were duped into believing that, due to corruption, the presidential election had been "stolen." Unfortunately, he was also one of the thousands who mistakenly believed that it was his patriotic duty to stand up to do what he could to prevent this perceived miscarriage of justice in order to protect his country. In retrospect he regrets his actions and recognizes that his actions were mistaken.

---

[4] Defendant's recollection is that when he saw others engaged in destruction of property he discouraged them from doing so.

8

Unfortunately, he and his family are going to have to pay a heavy price for his letting himself be so easily misled and manipulated. In assessing what punishment should be imposed it should be noted that at the time he engaged in the criminal conduct at issue he was doing so with the best of intentions, proving the aphorism that "the road to hell is paved with good intentions." This does not minimize the harm caused by defendant's admittedly criminal acts.  The defense recognizes that the harms caused by the collective acts of the January 6 attack on Congress and the country were horrendous.  The defense only suggests that in deciding what punishment is warranted for the defendant the Court should be mindful that defendant's intentions were honorable.  Defendant was not committing criminal acts in pursuit of financial gain or to satisfy prurient desires.  Those are the motivations behind most criminal behavior, but they are inapplicable in the case at bar. To the contrary, defendant took time off from work, time away from his family, travelled for days at his own expense to engage in what he perceived was his patriotic duty.  He was responding to the entreaties of the Commander in Chief to save the country.  It is only in retrospect he has learned that he was responding to the clarion call of a charlatan. Defendant's intentions were noble in that he was responding to a call to sacrifice and civic duty as a citizen.  It is only in hindsight that he

9

recognizes that he was a misguided, naïve dupe.  In calculating what kind of punishment should be imposed the absence any of any traditional "mens rea" should be considered.  How long should we incarcerate someone who admittedly committed a criminal offense but at the time did so because he believed it was his patriotic duty to protect his country and democracy?

The instant case does not fit into traditional paradigms of criminal justice punishment.  In terms of protecting the public from the defendant, lengthy incarceration is not a deterrent.  Defendant now knows that he was "played for a fool" when he participated in the insurrection of January 6. He does not need lengthy incarceration to dissuade him from repeating the same mistake. He now knows he was misled into believing that the election was corruptly stolen and he was taken advantage of by those who knowingly misled him.   The same deterrent effect would be served by a sentence of one month or 10 years; defendant does not want be so easily misled and taken advantage of no matter what the sentence is[5].

Similarly in terms of discouraging others from committing similar crimes, the relative length of the sentence is somewhat inapplicable. It is

---

[5] Conversely if there was an actual attack on democracy and in reality patriots were required to engage in acts of civil disobedience to prevent the corrupt usurping of power, it would not be in the interest of society to dissuade them from doing so.

10

the recognition that they had been duped into believing the lie that the "election was stolen" that is likely to dissuade them from engaging in similar action, not the length of the sentences imposed on others who had been similarly duped. A sentence of two years would likely be as effective as a sentence of twice that.

The defendant does not need rehabilitative nor employment training as part of his incarceration, he already is a gainfully employed citizen and has been for many years. Restitution is being addressed as part of the plea agreement and need not further be addressed in sentencing.

Defendant sincerely regrets his involvement in the instant case and is embarrassed that he allowed himself to be so gullible.  He feels tremendous guilt that, because of his incarceration, he will not be able to provide financial and physical support for his disabled wife and family. They are the ones who will suffer the most.  He asks that the Court impose the shortest sentence possible so he may return to his family as soon as possible.

Conclusion

For the foregoing reasons as well as any others that may arise at a sentencing hearing in this case, the defendant respectfully requests the

Court impose the shortest sentence the Court believes justice would permit. The defendant suggests that a downward variance beneath the USSG guidelines would be "sufficient but not greater than necessary" to achieve the objectives inherent in sentencing.

Respectfully submitted,

_____s_____
Jonathan Zucker
Bar # 384629
37 Florida Av. NE
Suite 200
Washington, D.C.  20003
(202) 624-0784
Counsel for Defendant

## CERTIFICATE OF SERVICE

    I certify that on December 30, 2022, I caused a copy of the foregoing Motion to be filed with the Clerk using the CM/ECF System which will send notification of this filing to all parties.

Courtesy copies were sent by email to the assigned AUSAs.

\_\_\_/s/_____
Jonathan Zucker

12