1               IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
2

3    UNITED STATES OF AMERICA,        ) CRIMINAL ACTION NO.:
                                      ) 21-0106-TJK
4              Plaintiff,             )
          vs.                         )
5                                     )
     JEROD WADE HUGHES,               )
6                                     ) Washington, D.C.
               Defendant.             ) January 6th, 2023
7    _____ ) 3:04 p.m.

8

9                        Transcript of Sentencing
                   Before the Honorable Timothy J. Kelly
10                    United States District Judge

11

12   APPEARANCES:

13   For the Government: Emily W. Allen, Esquire
                         U.S. Attorney's Office
14                       United States Attorney's Office
                         222 West 7th Avenue
15                       Room 253
                         Anchorage, AK 99513
16

17   For the Defendant:  Jonathan Seth Zucker, Esquire
                         Law Offices of Jonathan Zucker
18                       37 Florida Avenue, NE
                         Suite 200
19                       Washington, DC 20002

20

21   Reported by:        Christine T. Asif, RPR, FCRR
                         Official Court Reporter
22                       United States District Court
                         for the District of Columbia
23                       333 Contitution Avenue, NW
                         Washington, D.C., 20001
24                       (202) 354-3247

25   Proceedings recorded by machine shorthand; transcript produced
     by computer-aided transcription

```
 1                      P R O C E E D I N G S
 2            THE CLERK:  Your Honor, this is criminal matter
 3    21-106, United States of America number versus Defendant 2,
 4    Jerod Wade Hughes.
 5            Present for the Government is Emily Allen.  Present
 6    for the defendant is Jonathan Zucker.  Present for the United
 7    States Probation Office is Robert Walters.  Also present is
 8    the defendant, Mr. Hughes.
 9            THE COURT:  All right.  Good afternoon to everyone.
10    We are here for Mr. Hughes' sentencing.
11            I have received and reviewed in this case the
12    presentence report and the sentencing recommendation from the
13    probation office.  I've received sentencing memoranda from
14    both parties, including the most recent supplement filed by
15    the defendant on the 2nd, which had attached to it a number of
16    letters in support of the defendant's character.
17            Are there any other documents or materials for me to
18    review, from either side?
19            MS. ALLEN:  No, Your Honor.
20            MR. ZUCKER:  No, Judge.
21            THE COURT:  Okay.
22            Mr. Hughes, our sentencing hearing is going to
23    proceed in four steps.  And all the while, I want you to keep
24    in mind the seriousness of why we are here.  You committed and
25    pled guilty to a federal crime.  And today's proceeding is
```

1    about the consequences you'll face as a result of your

2    decision to commit that crime.

3            The first step of today's hearing is for me to

4    determine whether you have received and reviewed the

5    presentence report, and whether there are any outstanding

6    objections to that report, and if so, to resolve those

7    objections.

8            The second step is for me to determine what

9    sentencing guidelines and sentencing range applies in this

10   case based on your criminal history, and considering any

11   mitigating or aggravating factors that may warrant a departure

12   under the Sentencing Guidelines manual.

13           The third step is for me to hear from the

14   government, from your counsel, and from you, if you wish to be

15   heard, about sentencing in this case.

16           And the last step requires me to fashion a just and

17   fair sentence in light of the factors Congress set forth in

18   18 United States Code 3553(a).  And as part of this last step,

19   I will actually impose the sentence along with other required

20   consequences of the offense.

21           So let's start with the presentence report.  The

22   final presentence report and sentencing recommendation were

23   filed in this matter on November 15th of last year.

24           Does the government have any objection to any of the

25   factual statements set forth in the report?

1          MS. ALLEN:  No, Your Honor.

2          THE COURT:  And are -- is the government expecting

3    an evidentiary hearing on any matter?

4          MS. ALLEN:  No.

5          THE COURT:  Same question to you, Mr. Zucker, does

6    the defendant have any objection to any of the factual

7    statements in the report?

8          MR. ZUCKER:  None.

9          THE COURT:  Okay.  And, Mr. Hughes, you can address

10   me from there.  Are you fully satisfied with Mr. Zucker's work

11   in this case?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  And do you feel you've had enough time

14   to talk with him about both the presentence report and the

15   papers that the government has filed in connection with your

16   sentencing?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  Okay.  Then I will accept the facts as

19   stated in the presentence report, and that report will be part

20   of my findings of fact for the purposes of this sentencing.

21         So the next step then is the determination of the

22   guidelines.  The presentence report lays out the statutory

23   sentencing framework that applies in this case.  And I will

24   attempt to summarize it as follows:  First, as a preliminary

25   matter, Congress has imposed a statutory maximum sentence for

1    the offense to which Mr. Hughes pled guilty, Count 2,

2    obstruction of an official proceeding, in violation of

3    18 United States Code Section 1512(c)(2).  The statutory

4    maximum is 20 years incarceration.  As far as the guidelines

5    go, the presentence report calculates the base offense level

6    as 14, and with two enhancements because the offense involved

7    property damage and substantial interference with the

8    administration of justice, the offense level rises to 25, but

9    it's then offset by a three-level reduction for acceptance of

10    responsibility.  So netting that out, the total offense level

11    is 22.

12          Now, any objection to that offense level from the

13    government?

14          MS. ALLEN:  No, Your Honor.

15          THE COURT:  All right.  From the defense?

16          MR. ZUCKER:  No.

17          THE COURT:  We next turn to determining the

18    defendant's applicable criminal history.  The PSR calculates

19    that the defendant has two criminal history points, which

20    places Mr. Hughes in Criminal History Category II, for

21    sentencing guidelines purposes.  So given the offense level of

22    22 and a Criminal History Category of II, the guidelines range

23    is 46 months to 57 months.

24          Any objections to the criminal history or the

25    guideline range, from the government?

1           MS. ALLEN:  No, Your Honor.

2           THE COURT:  And from the defense?

3           MR. ZUCKER:  No, Your Honor.  I just note that the

4    presentence report writer found the error that I think we made

5    and we miscalculated.

6           THE COURT:  Correct.  Correct.

7           MR. ZUCKER:  Grateful for them for finding that.

8           THE COURT:  Yes.  Yes, I hope that I would have

9    found it, but, on the other hand, you know, and especially the

10   correction they found, we all rely and are thankful for the

11   folks who diligently prepare those reports.

12          Having determined the applicable guidelines

13   sentence, the next step is for me to consider departures from

14   the guidelines sentence.  I understand that certainly the

15   defendant's going to ask for a variance, but I don't believe

16   either party is asking for a departure.

17          Is that correct, Mr. Zucker?

18          MR. ZUCKER:  Pursuant to the plea agreement, that is

19   correct.

20          THE COURT:  All right.  So I'll now discuss the

21   remaining applicable penalties in terms of supervised release,

22   fines, and forfeiture.

23          In terms of supervised release, under the statute, I

24   may impose a term of supervised release of not more than three

25   years and the guidelines range for a term of supervised

1      release is one year to three years.

2              For probation, under the statute, the defendant is

3      eligible for one to five years probation, but under the

4      guidelines, he is ineligible -- under the guidelines, that is,

5      he is ineligible for probation.

6              And in terms of fines, the maximum fine under the

7      statute is $250,000, and under the guidelines, the recommended

8      fine is between $15,000 and 100 -- and $150,000.  The parties

9      have agreed on restitution in the amount of $2,000.  And

10     there's also a special assessment, a mandatory special

11     assessment, of $100 under 18 United States Code Section

12     3013(a)(2)(A).

13             So have I stated accurately the statutory and

14     guidelines framework under which we are operating in this

15     case.

16             Ms. Allen?

17             MS. ALLEN:  Yes, Judge, I believe so.

18             MR. ZUCKER:  Yes.

19             THE COURT:  All right.  So getting to the heart of

20     the matter in some ways, I must now consider the relevant

21     factors that Congress set out under 18 United States Code

22     3553(a), and I must ensure that I impose a sentence

23     sufficient, but not greater than necessary, to comply with the

24     purposes of sentencing.  These purposes include the need for

25     the sentence imposed to reflect the seriousness of the

1    offense, to promote respect for the law, and to provide just

2    punishment for the offense.  The sentence should also afford

3    adequate deterrence to criminal conduct, protect the public

4    from future crimes of the defendant, and promote

5    rehabilitation.

6         And in addition to the guidelines and policy

7    statements, I must consider the nature and circumstances of

8    the offense, the history and characteristics of the defendant,

9    the need for the sentence imposed to comply with the purposes

10   I just mentioned, the kinds of sentences available, the need

11   to avoid unwarranted sentence disparities among defendants

12   with similar records who have been found guilty of similar

13   conduct, and the need to provide restitution to victims of the

14   offense.

15        So with all of that said, let me turn to the

16   government, and I will hear the government with regard to the

17   3553(a) factors and their sentencing recommendation.

18        MS. ALLEN:  Thank you, Your Honor.  It's a little

19   weighty to be here on January 6th, a full two years, an

20   unbelievable two years after these events happened, to be

21   talking once again about some facts that I know Your Honor and

22   many of us have gone over, over and over and over and over

23   again in that time.  And I hope that that passage of time and

24   the frequency with which we're all exposed to these details

25   doesn't take away from the importance of them and doesn't numb

1    us to the realities of what happened that day.

2         Mr. Hughes' conduct that day was among some of the
3    more aggravated actors that day.  He, even after the fact,
4    explained the reason why he left the building that day,
5    "because not enough people followed us in to hold the place.
6    We had to get the fuck out."  He told this to at least two
7    people in the text message that we found.  And I think that
8    suggests a really sort of chilling reality here, that things
9    could have gone a lot worse than they did and that it was
10   certainly within Mr. Hughes' mind at the time that they
11   should.

12        He was really vicious in his attacks, verbal
13   attacks, I should say, on the police officers.  When he got to
14   the Ohio Clock Corridor, even before he got to that corridor,
15   he was screaming with venom toward the line of, frankly,
16   terrified police officers, "We are mad.  There's an army
17   behind us."  And then he told them, "This is my house.  This
18   is my country."  He told Officer Goodman, as they were
19   approaching him, when he was alone and relatively defenseless
20   against a large mob of people he knew were armed, that, "They
21   can't stop us."

22        Even the night before, January 5th, when he texted a
23   friend, he knew what to foresee the next day when he said,
24   "Trump is going to drop the hammer or we are."  And he was
25   ready for what happened that day.  And he and his brother made

1    sure that they got to the front of every line and through

2    every police line.  Which is why when the mob threatened the

3    police, once they even got inside to the Ohio Clock Corridor,

4    that they were going to break through that line, it was

5    particularly threatening because they had succeeded every time

6    before then.  And it was nothing short of a miracle that they

7    didn't succeed in breaking down that police line, because as

8    we now know, the senators were feet away from them, still

9    waiting to be evacuated from the Senate floor that was just

10   across -- just behind the doors from where they stood.

11           This case is also aggravated for some of the

12   comments that Mr. Hughes made about the seriousness of what he

13   had done.  He suggested to a friend of his that he had acted

14   like a model citizen that day.  And there's some text messages

15   set forth on page 24 of the government's sentencing memo,

16   where he reflects, after the fact, that, "We didn't do

17   anything crazy like destroy shit or fight the cops.  Trespass

18   and vandalism, meh, I've done time."  And he said it's his

19   brother that he worried about.  Again, he repeated that not

20   enough people had followed them in to take the building.  He

21   suggested that he was hopeful that he would just be looking at

22   a fine as the consequence for what he did that day.

23           That's simply completely inadequate to account for

24   the seriousness of the offense and achieve the goals of

25   sentencing in this case.  The Sentencing Guidelines here

1    produce a sentence that is the just and appropriate sentence

2    in light of all the circumstances and the least severe

3    sentence that can be imposed to achieve those goals.

4         We're asking for a sentence in the middle of the

5    guidelines range.  That would result in a 51-month sentence of

6    incarceration.  And that accounts for the seriousness of the

7    defendant's conduct.  It also accounts for the fact that he

8    took responsibility and pled guilty.  But Mr. Hughes was on

9    the Senate floor.  He stormed the Capitol, he broke through

10   the police lines, he climbed through a broken window.  He was

11   the eighth person to enter the building.  He chased Officer

12   Goodman up the stairs, following close behind the leader of

13   that chase.  He screamed at the officers in the Ohio Clock

14   Corridor and then he was forced to leave the building.

15        Now, when the government filed its sentencing memo,

16   we had not accounted for where Mr. Hughes was between --

17   around 2:17, when he left the Ohio clock corridor, and around

18   2:44, when he came back into view.  Since that time, we have

19   discovered that he actually left the building.  At about 2:18,

20   he left through the first floor exit, the Senate carriage

21   door, where a number of rioters were being shown their way

22   out.  And then just 20 minutes later, he re-entered through

23   the east Rotunda doors.  So he was on the east side of the

24   building at that point.  He and his brother forced their way

25   up through the crowd on the east rotunda stairs, forced their

1   way back through the doors there, into the foyer of the east

2   rotunda, up the stairs that led to a hallway and straight back

3   to the Senate side where they walked into the Senate gallery.

4        And I think the fact that he has entered essentially

5   forcibly -- forced his way into the building for a second

6   time, is something that has been seen as a pretty

7   significantly aggravating circumstance in most cases.  He had

8   the opportunity to leave when he saw, as anyone would, that

9   things had gotten out of hand, to put it quite lightly, and

10  that wasn't enough for him.  He came back.  He came back.  He

11  went, again, straight to the Senate side, he walked into the

12  gallery, he was there for about a minute.  He could see at

13  that point that rioters had already breached the Senate.

14       At that point, somebody had jumped down from the

15  Senate gallery on the third floor, which is an open area

16  seating for the public, someone had jumped down from the

17  Senate gallery into the Senate floor and then unlocked the

18  doors from the inside.  Mr. Hughes was able to take advantage

19  of that, make his way down the stairs to the second floor, and

20  into the door that led to the Senate floor.

21       Now, he wasn't there for very long, but he was well

22  deep within the Senate floor.  It's not as though he had -- he

23  didn't know where he was going, saw that he was on the Senate

24  floor, in what was very obviously an extremely sensitive area

25  and turned around.  Instead he walked into the Senate floor.

1    He walked through the desks.  You've seen pictures and video

2    of him gazing at paperwork that was left out, sensitive

3    paperwork that the senators, who had fled the room, had left

4    sort of scattered as they fled.  And again, Mr. Hughes left

5    the Senate, according to his own words, only because he

6    realized at that point that they didn't have enough rioters

7    behind them to hold building.

8            Mr. Hughes has raised sentencing disparities, and I

9    want to address that for a moment.  After the government filed

10   its sentencing memorandum in this case, another case, *United

11   States versus Wood*, was decided.  And Mr. Hughes has raised

12   that in his sentencing papers.  We've also cited a number of

13   other cases in our sentencing papers.  And as Your Honor

14   obviously knows, since then we've sentenced his brother to 38

15   months in custody, and also another individual by the name of

16   Doug Jensen, that was before Your Honor, who was the person

17   who led that charge up the stairs.  Mr. Jensen received a

18   sentence of 60 months.  He was, of course, convicted of

19   assault, and he did not accept responsibility.

20           In this case, though --

21           THE COURT:  And there were mitigating factors in

22   that case that -- mitigating factors about characteristics

23   about the particular defendant that are not present here.

24           MS. ALLEN:  There certainly were.  There certainly

25   were.

1          This case, you know --

2          THE COURT:  Just for the record, Ms. Allen was the

3    prosecutor in that case.  I say that -- I don't mean to be

4    cryptic.  She knows what I'm talking about.

5          But go ahead.

6          MS. ALLEN:  Yes, Your Honor.

7          And just for the record, Mr. Jensen had medical and

8    mental health issues.  He also had an extraordinary set of

9    character references from the community where he lived, that

10   were really out of the ordinary, much like Mr. Hughes'

11   brother, both of which resulted in this Court giving some

12   consideration to that and imposing sentences that were, I

13   think in both cases, three months lower than the low end of

14   the guidelines sentence.

15         THE COURT:  No, Mr. Jensen's was a guidelines

16   sentence.

17         MS. ALLEN:  I'm sorry, Your Honor, it was slightly

18   below the government's requested sentence.

19         THE COURT:  That may be.

20         MS. ALLEN:  Yes.  And the government asked for a

21   middle range.

22         And in Mr. Hughes' brother's case, of Joshua Hughes,

23   I believe the guidelines resulted in a low end of 41 months,

24   and Mr. Joshua Hughes was sentenced to 38 months.

25         THE COURT:  That's right.

1    MS. ALLEN:  Those mitigating circumstances are not

2    present here.  Mr. Hughes has, you know, not a particularly

3    serious, but a long-standing criminal history that results in

4    maybe less scoring even than the number of convictions that he

5    suffered.  As he even said, he's done time before.  He served

6    about a year in custody for one of those offenses, and most of

7    the other sentences were suspended.

8    Mr. Woods' case, the facts of that case were

9    somewhat similar, but the -- Judge Mehta decided that the

10   eight-level enhancement did not apply.  So his guidelines were

11   significantly lower.  I think he was starting out with a low

12   end sentence -- a low end range of 21 months, if I'm not

13   mistaken.

14   THE COURT:  So I -- following up on what the

15   defendant filed in this case, I did do my best to look at that

16   case.  And there's nothing even on the docket, even under

17   seal, that would lay out what the Court calculated the

18   guideline -- the ultimate guidelines range to be, I don't

19   think.  But there is what the probation office did, and the

20   probation office calculated at 15 to 21 months.

21   MS. ALLEN:  15 to 21?

22   THE COURT:  Correct, from what I saw.  That doesn't

23   mean that Judge Mehta agreed with that, but that's what the

24   PSR calculated it at.

25   MS. ALLEN:  It's my understanding that Judge Mehta

1    calculated the guidelines slightly higher because of the

2    two-level enhancement for obstruction of justice after -- of

3    the investigation of his crime.  And so I think that the

4    guidelines range that Judge Mehta was operating under started

5    at 21 months.

6              THE COURT:  I see, okay.

7              MS. ALLEN:  I think more fundamentally, I would also

8    just put out that I think that sentence, in and of itself, was

9    a disparate one.  That was aberrant.  It's not in line with

10   the sentences for other defendants whose behavior was similar

11   to Mr. Woods.  There may be reasons that Judge Mehta imposed

12   that sentence that we don't know here in this case.  But there

13   are no such -- there are no mitigating circumstances here in

14   this case that suggest that a sentence outside of the

15   guideline range would be appropriate for what Mr. Hughes did.

16             I think it's really critical to understand that

17   Mr. Hughes kicked open the Senate wing door.  The Senate wing

18   door is where -- it was the site of the first breach of the

19   Capitol.  The window -- as I said, he was the eighth person in

20   the building, jumping through the window that had just

21   recently been broken.  And then he opened the door.  That

22   allowed hundreds of rioters to stream into the building.  And

23   most of those people can now plausibly claim that they simply

24   walked into a building.  Some of them have claimed that they

25   didn't believe they were doing anything wrong by doing so.  I

1    don't know that we can credit those claims, but that has been

2    advanced in a number of cases.

3              THE COURT:  It has.

4              MS. ALLEN:  From there -- sorry, Your Honor, I

5    didn't mean to interrupt.

6              THE COURT:  No, it has.

7              MS. ALLEN:  From there, rioters dispersed across the

8    building and opened other doors to allow access from other

9    access points.  The building could not have become as overrun

10   as it was.

11             Now, of course, over time, there were rioters coming

12   in from all different places.  But if that door hadn't been

13   opened such that those hundreds of people couldn't fan out

14   into the building, and then open more doors for more people to

15   get access all across the building, it may not have resulted

16   in the event that we saw on January 6th, two years ago.

17   Somebody else might have kicked that door open if it weren't

18   for Mr. Hughes, but the fact of the matter is he engaged in

19   that conduct.  He watched a rioter make that effort.  He saw

20   that that rioter couldn't open the door, and he went over and

21   kicked it himself, very -- with great amount force, three

22   times, until the door broke itself open.  That fact puts him

23   in a very different place from anyone like Mr. Wood.

24             And the guidelines here are the same as for his

25   brother and a number of the other defendants who have been

1    charged and pled guilty to 1512 offenses who didn't engage in

2    that sort of conduct, even though they have the same

3    guidelines.  So I think a middle-range sentence is appropriate

4    given all those circumstances.

5         THE COURT:  All right.  Thank you.

6         MS. ALLEN:  Thanks.

7         THE COURT:  Thank you, Ms. Allen.

8         I'll hear from you, Mr. Zucker.

9         MR. ZUCKER:  Thanks, Judge.

10        Judge, I don't want to repeat everything that was in

11   the sentencing memorandums.  I want to respond briefly to the

12   idea that somehow because Mr. Woods joined someone else in

13   kicking a door, that that person had already begun kicking, in

14   an obvious attempt to open the door, that somehow that was the

15   act that opened the floodgates that dramatically changed the

16   events that happened that day is to put a spin on it that's

17   just not true, okay.  I don't think it would have changed -- I

18   think it's fair to say that what was set in motion was not

19   dramatically changed, one way or the other, by Mr. Hughes

20   joining someone else in kicking that door.  So I'd ask not to

21   put undue influence on that point.

22        THE COURT:  Let me just -- I mean, I think what

23   you're saying to me is, I think we can all agree that if he

24   didn't break it open, someone else would have.  And that's why

25   you're arguing to me nothing would have been different; right?

1          MR. ZUCKER:  Basically, yes.

2          THE COURT:  Okay.  And on the other hand -- and I

3    think that's true.  And on the other hand, he did do it.  So,

4    I mean, I think, you know, the government has that argument

5    and it's not a wrong one either.  So there's truth on both

6    sides.

7          MR. ZUCKER:  Okay.  I just didn't want it blown out

8    of proportion in terms of --

9          THE COURT:  No.

10         MR. ZUCKER:  -- evaluating the context of the

11   disaster that occurred that day.  And, of course, yes, he

12   readily admitted having done it.  He didn't minimize, shy

13   away.

14         And, frankly, Mr. Hughes, in keeping with his

15   character, has done nothing to minimize or shy away from

16   accepting responsibility in this case.  He went down to the

17   police station before they were looking for him and said,

18   look, I know there's an investigation, that's me on the tape.

19   That's me.  And they let him go because there was no warrant

20   for his arrest.  And when there was -- when there was contact

21   saying, okay, now there's an arrest warrant, he said okay, and

22   he came in and voluntarily surrendered.  And he's been nothing

23   but cooperative all the way through.

24         And I think if we look at Mr. Hughes in context, as

25   I think the Court must for any defendant, looking at them

1    context, this is a man who, in most regards -- I mean, he had

2    some spats as a kid, okay.  He had some substance abuse issues

3    when he was a teenager, early 20s, but those are long in his

4    history.  And for that reason, the criminal history should not

5    affect this one way or the other.  Because after that, he has

6    nearly 20 years of being essentially a model citizen, a family

7    man, a working man.  Not someone who's engaged in any criminal

8    activity, someone who, all the letters make clear, is not only

9    supportive of his family but his community, the extended

10   family, volunteers to help others.  His generosity and

11   selflessness are admirable and things that should be

12   considered in imposing a sentence.

13          And I've thought about this, this case a lot and

14   these January 6 cases a lot, particularly in the context of

15   Mr. Hughes.  And I know you're in a position more than any of

16   us, having spent the last two weeks listening to citizens

17   react to the January 6 events and understand how hurtful and

18   scorned and wounded this country is as a result of those

19   events, but this is not a criminal who's in front of you.  And

20   I say that recognizing that he committed a criminal act.  I

21   don't think there's any two ways about it.  And that's why he

22   pled guilty and accepted responsibility for what he did.  But

23   what he did was not motivated by the normal motivations for a

24   criminal act.  He did what he did believing he was a patriot.

25   He made sacrifices at his own expense to come here.

1          Now, would I wish he hadn't?  Would the community

2     wish he hadn't?  Of course, we would.  Was he misguided?  No

3     two ways about it.  But he was misguided but well intended.  I

4     mean, he believed he was acting as a patriot.  He, along with

5     nearly half the country, were duped into believing that the

6     election was stolen, and he believed he was standing up as a

7     patriot for his country for democracy.  Was it misguided?

8     Nobody with a straight face, I think, could -- well, except

9     for maybe 20 Congresspeople.  But nobody with a straight face

10    could really, you know, debate that seriously.

11          THE COURT:  It's a very tough thing, because I --

12    look, as you say, I've got to take all of this into account.

13    I've got to and do and will.

14          MR. ZUCKER:  Okay.

15          THE COURT:  And you're right, on some level that is

16    mitigating.  On the other hand, the flip side is the actual

17    thing that happened was very bad.  And on some level, yeah, it

18    matters that a person thinks they're doing -- they think in

19    their mind they're doing the right thing.  And let me

20    underscore, this has -- what I'm saying has nothing to do with

21    the election, who won and who lost, or whatever people's

22    perceptions of the fairness of the election.  It doesn't

23    matter whether you think the election was wrongly decided or

24    stolen.  You can't -- I mean, you can't resort to violence.

25    We can't -- we can't have the peaceful transfer of power

1    disrupted because of someone's opinion about that the election

2    wasn't fairly conducted when we have laws and we have courts

3    and we have all sorts of ways of adjudicating disputes that

4    don't involve violence.

5         So anyway, I agree with you.  I -- look, in all

6    these cases, I think that's a thing that I have to weigh, that

7    many people did think they were doing the right thing.  It is

8    counterbalanced in many ways by the fact that the thing they,

9    in fact, did was extremely -- and I'm not -- you know, we

10   haven't even gotten to the fact that I have to separate out

11   the overall event from what your client did and what he did

12   alone.  And I think I -- you know, I have to consider both

13   things, but more strongly consider just what he did.

14        So, you know, as you say, it's tough to make sense

15   of it.  I do think, though, there were people -- let's put it

16   this way, if we want to talk about what someone thought they

17   were doing and their motivations, on the other hand, there is

18   a spectrum of what people were doing that day.  Some people

19   genuinely -- let's put it this way, they wandered in

20   afterward, and they maybe didn't really know what they were

21   doing or have a plan.

22        You know, it -- I've got to say, I mean, it is

23   chilling, I was chilled to read that the messages that -- I

24   think it was a text -- whatever it's text messaging or

25   whatever it was that the government pointed out that's in the

1    sentencing memo, gee, if only we had more people here, we

2    could have held the building.  Like there's -- in the scope of

3    what people thought they were doing that day, he doesn't come

4    out so well in terms of the different mental -- whatever was

5    going on in people's minds in that sense.  You would have to

6    agree with that.

7         MR. ZUCKER:  I agree.  Unfortunately, he's a strong

8    person and wanted to be and was zealous in his pursuits, and

9    that put him physically in the front of the line.  On the

10   other hand, he isn't somebody who brought a weapon.  He wasn't

11   part of a group that came, you know, looking to hurt anybody.

12   He never hit anyone.

13        THE COURT:  Yup.

14        MR. ZUCKER:  He's never -- he didn't come with, you

15   know, the sprays.  He wasn't part of any planned anything.  He

16   was somebody who believed he was standing up for America and

17   got swept along with the crowd and, unfortunately, and

18   probably because of his physical prowess and his enthusiasm,

19   got to the front of that crowd.  And as his counsel, I wish he

20   hadn't been, okay.

21        THE COURT:  It took effort.  It took effort to get

22   there.

23        MR. ZUCKER:  I don't dispute that.  I don't dispute

24   that, but I think that was effort that came from a misguided

25   zeal but not a deliberate, planned attempt to commit violence

1    that day.  And I think those are factors the Court should

2    consider and treat as mitigating factors in imposing a just

3    sentence here, which I know you intend to do.

4            I think the comparison with Mr. Woods, I don't

5    know -- I can't quarrel with your representations about the

6    guidelines.  The presentence report wasn't in the docket that

7    I reviewed.  And so I don't know if his guidelines were

8    significantly less.  I know that his actions, he was, I think,

9    the tenth person, Mr. Hughes being the eighth.  And his

10   actions, other than kicking the door, seem to have been

11   comparable and parallel.  He also pled to six counts rather

12   than the one.  And exactly that -- where that factors in, I

13   don't know, but it seems in fashioning a sentence that doesn't

14   vary, those factors should be taken into account.

15           There's the other things about Mr. Hughes, and I

16   know the Court's read the letters, but he is consumed with

17   guilt for the harm -- I mean, on the one hand, he was pursuing

18   a greater social good, albeit misguided.  The consequence,

19   though, is going to fall most -- on the people he cares most

20   about, his daughter, his wife, who need him more.  And so the

21   guilt and remorse he feels for that, that he's not going to be

22   there to provide emotional support and physical support,

23   unless the Court agrees that a home confinement sentence is

24   appropriate, which does not seem to be where you're going.

25   That's obviously what we're requesting, and based on the Woods

1    case, I think there's precedent for that.  And this would be

2    an appropriate case for that.

3            That not being said, recognizing that completely

4    innocent people he loves very much and cares very much about

5    and feels consumed with guilt that he has, as a result of his

6    misguided attempts to perform a civic good, left them in a

7    very, very vulnerable situation, and that they're going to

8    have to pay the price for it, we just ask that you impose the

9    sentence that keeps him away from them for the least amount of

10    time that, in good conscious, you feel can be imposed.

11            I note the government is not imposing voluntary

12    surrender.  That would --

13            THE COURT:  You don't have to make any argument to

14    me about that.

15            MR. ZUCKER:  Okay, thank you.

16            THE COURT:  He'll surrender voluntarily.

17            MR. ZUCKER:  Appreciate that very much.

18            And then bear in mind, his brother just received his

19    designation, which is Englewood, Colorado.  I'm going to

20    assume that's also -- that's not what you recommended.  That's

21    not what he requested.

22            THE COURT:  No.  Okay.

23            MR. ZUCKER:  But he got the designation and,

24    frankly, he would like to -- assuming you impose a sentence,

25    we would ask for that as the recommendation.

1          THE COURT:  Okay.

2          MR. ZUCKER:  It might have as much effect as your

3   other recommendation to the Bureau of Prisons.  I'm not sure

4   they pay a whole lot of attention.

5          THE COURT:  Someone doesn't pay attention to a

6   federal judge?  This is outrageous.  No, that's why they call

7   them recommendations and not orders.

8          MR. ZUCKER:  Well, I mean -- sometimes they can't

9   accommodate them.

10          THE COURT:  Right, right.

11          MR. ZUCKER:  It's the population controls that make

12   them impossible.

13          THE COURT:  Absolutely.

14          MR. ZUCKER:  So I don't necessarily fault BOP for

15   that.

16          THE COURT:  No.

17          MR. ZUCKER:  And we don't have to get into a debate

18   on that.  But that would be our recommendation, for the least

19   amount of time, in good conscious you feel you could do.  And

20   you obviously have articulated, repeated all the factors we've

21   made, so I'm not going to dwell on them with you.  We just

22   appreciate whatever mercy you can show.

23          THE COURT:  All right.  Thank you.  Thank you, sir.

24          Let's see, Mr. Zucker, if -- does Mr. Hughes want to

25   address me?

1          THE DEFENDANT:  Yes.

2          MR. ZUCKER:  Please.

3          THE COURT:  All right.  Please, now's the time to do

4   so.  Come on up, sir.

5          THE DEFENDANT:  I just want to start off by

6   apologizing to everybody, my country, the Congress, most of

7   all the police officers that had to endure us that day.

8   Eugene Goodman, Officer Eugene Goodman.  I'm just ready to get

9   this behind me and I can get back to my family, because

10  they're going to be in a very bad spot without me.  I just

11  want to apologize.  That's all I have.

12         THE COURT:  All right.  Thank you, sir.  I

13  appreciate it.

14         Anything else from the government?

15         MS. ALLEN:  No, Your Honor.  Thank you.

16         THE COURT:  All right.  Well, I have assessed the

17  particular facts of this case in light of the 3553(a) factors.

18  So I'm going to provide my thoughts before imposing sentence,

19  for the record and for you, Mr. Hughes, about my

20  considerations in regard to the nature of the offense, your

21  history and characteristics, and the other factors that I have

22  to consider.

23         Let me begin by talking about the nature of the

24  offense.  And in some ways, this is the hardest thing that I

25  and many of my colleagues have to grapple with in these cases.

1    One aspect of why it's hard is, as Ms. Allen said, it's hard

2    not to become numb to it and to, after now two years, to --

3    well, not to become numb to it, and to consider it -- maybe

4    not let, as time goes on, the seriousness of it wear off; on

5    the other hand, as time goes by, not to somehow elevate it

6    beyond what it was.

7          But what it was, was very significant.  What

8    happened that day was, in some ways, as serious an offense

9    that can be given that it threatened the peaceful transfer of

10   power from one president to another.  The damage that was done

11   that day to our country was both tangible and intangible.  And

12   as we'll talk about in a moment when we talk about your

13   particular role, Mr. Hughes, you didn't physically assault any

14   officers that day, thank goodness, but you did play a role in

15   what had happened that day and not a small role.

16         So let me just first say a few things about the

17   overall events of the day that over -- insofar as I have to

18   consider the nature and circumstances of the offense.  As I

19   mentioned before, Mr. Hughes, you know, our Constitution and

20   laws give you rights that people in other countries would do

21   just about anything for, and that many Americans who came

22   before all of us in this courtroom died for, gave their lives

23   for.  And we have so many rights.  You have the right to vote

24   for whoever you want for president.  You have the First

25   Amendment right to speak out in favor of that candidate, put

1    up signs, try to convince your friends and neighbors to vote

2    for that person.

3         And if you don't like how an election is being

4    conducted, you can speak out about that too.  You can call,

5    write your -- try to meet with your elected officials in your

6    state or in the federal government.  You can try to get

7    election laws changed.  You can engage in peaceful protest.

8    And if you think you've been wronged, and you have a case, you

9    can file a lawsuit in state court or in federal court.  And

10   candidates have those rights too.  Candidates have those

11   rights too.  If a candidate thinks the election is being

12   conducted in an unfair way, every candidate in America can

13   come into a court, whether it's a state or local court, to try

14   to make their case that things have gone wrong.

15        But the freedom we have in this country means that

16   with all those rights, the flip side is responsibilities.  And

17   so what no one can do, and what you cannot do, under any

18   circumstances, is become part of a mob that, using violence

19   and the threat of violence, disrupts Congress's ability to

20   fulfill its role to process the certification of the Electoral

21   College for president.  But that's what you did, and you

22   placed yourself at the very forefront of that mob, with great

23   effort.

24        I know, you know, there are people who thought that

25   day that they were doing something patriotic.  But there was

1    nothing patriotic about it.  And no matter how much any of us,

2    or you, might not like the way the process of electing the

3    president was proceeding, there was nothing patriotic about

4    it.

5         So what happened that day not only damaged property,

6    it injured people.  It was a blow against the customs and

7    practices that help support the rule of law and the

8    Constitution.  It snapped our previously unbroken tradition of

9    the peaceful transfer of power.  And we can't get that back.

10   We can't get that unbroken tradition -- we can get the

11   tradition back, but it's been broken.  And we can't get that

12   part of it back.  So it was more than extremely serious.  I've

13   said on many occasions, I think it was a national disgrace,

14   and one that severely damaged the rule of law.

15        That's the overall event.  I have to weigh that.

16   But I really then have to focus in on you and your actions

17   that day in crafting a sentence for you.  There are a lot of

18   things -- I guess I could start with that -- that you didn't

19   do that, if you had done, you'd be in a far worse situation,

20   and I'm glad you didn't.  As your lawyer pointed out, you

21   never -- you didn't strike anyone, strike an officer.  You

22   didn't have a weapon.  You weren't part of a group.  Whatever

23   planning went into your day that day, I think, was -- seems

24   pretty minimal.  So those things weigh greatly in your favor.

25        But on the flip side, you know, as I said, I've seen

1    the videos of how you've placed yourself at the front of

2    the -- at the front of the mob, climbing on the scaffolding,

3    getting yourself in the position.  Again, it took great effort

4    to do that.  You were one of the first folks to enter.  And,

5    again, the fact that you broke the lock on the door, you know,

6    I -- as I said, when I discussed it with your lawyer, I think

7    it is fair to say, look, someone would have done it.  This is

8    one of the difficulties of trying to figure out and apportion

9    sort of responsibility when, in an event like this -- it is

10   true, I'm sure, that someone else would have done what you

11   did.  But, you did do it.  And it can't be that just because a

12   lot of people engaged in an act like what happened that day,

13   that ends up being -- that no one ends up -- you know, because

14   everyone was there, no one is responsible for the things that

15   happened.  So you have to -- you -- even if someone else would

16   have done it, might have done it -- no, more than that, would

17   have done it, you still have to be held accountable for what

18   you did.  And you did use your effort to break open that door.

19   That did have the effect of letting many more rioters in.  Is

20   that the same as, you know, using a weapon against a police

21   officer?  No, no, it's not.  But it is a significant factor.

22          Then we have the incident with Officer Goodman,

23   chasing Officer Goodman and the confrontation in the Ohio

24   Clock Corridor.  You know, you were behind at least one other

25   person through at least part of that event.  I guess most of

1    that event.  And so that is mitigating, to some degree.  But I

2    do think, again, the things you were yelling at the

3    officers -- you know, one of the things -- the prosecutor

4    didn't focus on this, but it's in the memo, you know, "You

5    guys don't want this," was among the things you were sort of

6    saying, which is threatening.  I mean, you -- by placing

7    yourself toward the forefront and by saying things like that,

8    I mean, there's no doubt you made the officers' jobs more

9    difficult in so many ways.

10          I'll just press pause and say, one of the things I

11    did say when I was going through the things you didn't do,

12    that were mitigating, I should have said, but you did -- I

13    guess we'll get -- this is kind of -- whether this is your

14    role there or your history and characteristics, I don't know,

15    but you did apologize today, and that matters.  You did plead

16    guilty, and that matters.  And you're going to get -- I take

17    those things very seriously.  Particularly, the fact that you

18    took responsibility and pled guilty, because people who do

19    that are in a different category, as far as I'm concerned,

20    than people who refuse to take that responsibility.

21          So in any event, but back to the things that go on

22    the other side of the ledger, unfortunately, the threats

23    against the officers and the things you shouted at them don't

24    weigh in your favor.  The fact that you left the building and

25    came back in, not a positive factor.  The fact that you were

1    on the Senate floor and got all the way to that sacred space,

2    again, not good.  Going through the senators' papers, again,

3    not a positive thing.

4         And then as I mentioned before, the statement

5    afterward that left no doubt about your intentions that day.

6    Honestly, it -- you know, if you had gotten your way, it is --

7    you know, I think a lot of -- some people might exaggerate

8    what was possible that day.  And I try not to use -- I try not

9    to -- what happened, I've already said my piece, it was not

10   good.  It was very bad.  But I don't -- but I think I've heard

11   many people talk about what happened that day and, I think,

12   maybe overstate what the possible outcomes were.  But, you

13   know, "Not enough people followed us to hold the place," I

14   mean, that is getting us to a place where we would have been

15   in the middle of a kind of constitutional crisis if what you

16   had hoped had happened, happened.  So that, also, I have to

17   weigh.

18        Turning to your characteristics as an offender.

19   You're 38 years old, you live with your wife and your

20   daughter.  You're a high school graduate.  You have been --

21   you have -- work as a framer and a steelworker.  You -- I know

22   your wife has health issues.  Your counsel mentioned that you

23   feel remorse for the fact that you will be apart from her for

24   a while, and your daughter.  You know, I -- anybody whose

25   family has to bear the brunt of a sentence, I feel terrible

1    about.

2           You do have, you know, one thing -- you also do have

3    a criminal history.  Is it the worst criminal history in the

4    world?  No, it's not.  But I do have people who come in here

5    on January 6-related matters who have never had any contact

6    with the criminal justice system.  You have, you know, on more

7    than a few -- more than a few occasions.  Some of those are

8    older things.  Some of those are newer things.  But, you know,

9    they all add up to something where I can't really conclude

10   here that this was a complete aberration and that you'd never

11   been in trouble before, because that's not really true.

12          As I said, I -- you did take responsibility by going

13   to the police, by pleading guilty, and I think it's important

14   to reward defendants for taking responsibility in that way.

15   That affects your guidelines.  You get a benefit there.  But I

16   also want to be clear that the sentence I impose will give you

17   credit for that.

18          The next factor is that the sentence has to reflect

19   the seriousness of the offense, promote respect for the law,

20   and to provide just punishment for the offense.  The sentence

21   would also afford adequate deterrence to criminal conduct,

22   protect the public from future crimes of you, and promote

23   rehabilitation.  I do think, again, to some degree, there

24   really does have to be specific deterrence in this case.  You

25   know, your own words, you sort of sounded like, well, what I

1    did, I can take the hit for.  And, you know, the purposes of

2    sentencing is supposed to be to make sure that -- to deter and

3    to make sure that individual defendants realize that that's

4    not the calculation they want to make going forward and that

5    they should conform to the law and not commit crimes.

6            So, I mean, I think specific deterrence is a part of

7    my sentence here in this case.  But as in all the January 6th

8    cases, I think general deterrence is also very important.

9    General deterrence, meaning making sure that the community

10   knows that what happened here cannot happen again.  And for

11   all the reasons I described, the overall nature of what

12   happened on January 6th, it's important to send that message

13   that we cannot, as a country, have a repeat of what happened,

14   happen.

15           Turning to the types of sentences available, the

16   guidelines are calculated out at 46 to 57 months.  Probation

17   recommends 46, government recommends 51.  The defendant has

18   asked for sort of an unspecified, but a variance, a variance

19   below the guidelines, as low as I think appropriate.  And

20   last, I have to consider -- well, maybe next to last, I have

21   to consider unwarranted sentencing disparities.  Let me just

22   say, I do think that the case -- I mean, the government cites

23   a bunch of cases -- well, let me start this way, the most

24   obvious comparison is the sentence I gave to your brother.

25   The government asked for a sentence -- also asked for a

1   sentence at the midpoint of the guidelines.  The guidelines

2   were slightly lower.  They were the same for the offense, but

3   because he did not have the same criminal history, his

4   guidelines ended up calculating out lower.

5           The government asked for a sentence in the middle

6   of -- as I recall, I think in the middle of that guidelines

7   range.  I went just slightly below the guidelines range, in

8   part because I thought one of the specific offense

9   characteristics the parties had agreed upon overstated his

10  culpability in some way.  In fact, really, the government's

11  argument, they -- well, let's just put it that way.  I thought

12  that it overstated his culpability.

13          But I don't think that's true here given that --

14  given that Mr. Jerod Hughes' kick broke that door open and

15  given his conduct toward the police.  So I think, in general,

16  the government has -- in terms of how they treated this

17  defendant's brother and how -- the cases they've cited, the

18  other cases, unrelated cases they've cited, for the most part,

19  Courts have given guidelines sentences.  And the guidelines,

20  of course, are the ultimate way in which unwarranted

21  sentencing disparities are accounted for.

22          Now, that having been said, Mr. Zucker, you raised

23  the issue of this other case, Mr. Wood.  And I -- when I got

24  your memo, I wanted to learn as much as I could about that

25  case.  So we have the government's representation.  As I said,

 1    I think that the PSR calculated the guidelines much lower.  I

 2    had 15 to 20 months.  Ms. Allen has represented that, for some

 3    other reasons, Judge Mehta calculated them even slightly

 4    higher, beginning at 21 months instead of ending at 21 months.

 5    But either way, I think it does seem like that case is an

 6    outlier unto itself.

 7           And even apart from those things, I think that there

 8    are a number of things that distinguish -- and I think it's

 9    very fair for Mr. Zucker to have brought the case to my

10    attention and make the arguments he did.  If I were in his

11    shoes, I would have done the same thing.

12           But I think there are some differences I just want

13    to highlight.  One is, I didn't see anything in that case that

14    suggested that defendant broke anything and did anything --

15    did anything somewhat similar to Mr. Hughes' kick and breaking

16    of the door that had that similar effect, number one.  Number

17    two, I didn't see -- again, I may be wrong, but I didn't see

18    anything in that case that suggested that he was as

19    confrontational with the police as Mr.  -- this Mr. Jerod

20    Hughes was that day.  Third, I didn't see anything in that

21    case in which the defendant ended up on the floor of the

22    Senate and going through papers on senators' desks.  And then,

23    four, I'll just say, again, I don't think that defendant had a

24    criminal record that pushed his guidelines up further and

25    that -- and that, you know, regardless even of the guidelines

1    that a Court has to take into consideration when they consider

2    the characteristics of the defendant.  So I think there are

3    distinguishing factors there, but I think even considering

4    those distinguishing factors, it seems as though that case was

5    a significant -- an outlier unto itself.  Last, I have to

6    consider the need to provide restitution.  The parties here

7    have agreed on a restitution amount of $2,000.

8           So considering all the 3553(a) factors, considering

9    what's sufficient, but not greater than necessary, to comply

10   with the purposes of sentencing, I am going to sentence

11   Mr. Hughes to below what the government has asked for, but

12   46 months of incarceration, 36 months of supervised release,

13   and $2,000 in restitution.  He'll be able to report for his

14   sentence, as directed by probation or Pretrial Services.  He

15   will not surrender today.  And I will recommend that he be

16   placed in FCI Englewood, as per counsel's request.

17          So, Mr. Hughes, and your counsel, if you'd approach,

18   I'll impose the sentence.

19          All right.  I will now impose the sentence, which, I

20   conclude, after considering all the 3553(a) factors, is

21   sufficient, but not greater than necessary, to comply with the

22   purposes of sentencing.  Pursuant to the Sentencing Reform Act

23   of 1984, and in consideration of the provisions of 18 United

24   States Code 3553, as well as the advisory sentencing

25   guidelines, it's the judgment of the Court that you, Jerod

1    Wade Hughes, are hereby committed to the custody of the Bureau

2    of Prisons for a term of 46 months as to Count 2.

3            You are further sentenced to serve a 36-month, or

4    three-year term, of supervised release as to Count 2.  And in

5    addition, you're ordered to pay a special assessment of $100

6    in accordance with 18 United States Code 3013.

7            While on supervision, you shall abide by the

8    following mandatory conditions, as well as all discretionary

9    conditions recommended by the probation office in part D

10   sentencing options of the presentence report, which are

11   imposed to establish the basic expectations for your conduct

12   while on supervision.  These mandatory conditions include:

13   One, you must not commit another federal, state or local

14   crime; two, you must not unlawfully possess a controlled

15   substance; three, you must not [sic] refrain from any unlawful

16   use of a controlled substance.  You must submit to one drug

17   test within 15 days of placement on supervision and at least

18   two periodic drug tests thereafter, as determined by the

19   Court; four, you must cooperate in the collection of DNA, as

20   directed by the probation officer; and five, you must make

21   restitution in accordance with 18 United States Code

22   Section 3663 and 3663(a), or any other statute authorizing a

23   sentence of restitution.

24           You shall also comply with the following special

25   conditions:  You are ordered to make restitution to the

1    Architect of the Capitol in the amount of $2,000.  The Court

2    has determined you do not have the ability to pay interest,

3    and therefore, waives any interest or penalties that may

4    accrue on the balance.

5         Financial -- in terms of special conditions, another

6    one is financial payment.  You must pay the financial penalty

7    in accordance with the schedule of payments sheet of the

8    judgment.  You must also notify the Court of any changes in

9    economic circumstances that might affect the ability to pay

10   this financial penalty.

11        Financial payment schedule.  Having assessed your

12   ability to pay, payment of the total criminal monetary

13   penalties is due as follows:  Payment in equal monthly

14   installments of $100 a month over a period of 20 months, to

15   commence after the date of this judgment.

16        Financial information disclosure.  You must provide

17   the probation officer access to any requested financial

18   information and authorize the release of any financial

19   information.  The probation office may share financial

20   information with the United States Attorney's Office.

21        Financial restrictions.  You must not incur new

22   credit charges or open additional lines of credit without the

23   approval of the probation officer.

24        Substance abuse testing.  You must submit to

25   substance abuse testing to see if you have used a prohibited

1   substance.  You must not attempt to obstruct or tamper with
2   the testing methods.
3         And re-entry progress hearing.  Within 60 days of
4   release from incarceration, you will appear before the Court
5   for a re-entry progress hearing.  The United States Probation
6   Office, in the district you are supervised, will submit a
7   progress report to the Court within 30 days of the
8   commencement of supervision.  Upon receipt of the report, the
9   Court will determine if your appearance is required.
10        I do find that you do not have the ability to pay a
11  fine and, therefore, I waive imposition of a fine in this
12  case.
13        Restitution amounts shall be made to the Clerk of
14  the Court for the United States District Court, District of
15  Columbia, for disbursement to the following victim:  Victim
16  name:  Architect of the Capitol, Office of the Chief Financial
17  Officer, Ford House Office Building, Room H-2-205B,
18  Washington, D.C. 20515.  And the amount of loss $2,000, as
19  agreed upon by the parties.
20        The financial obligations are immediately payable to
21  the Clerk of the Court for the U.S. District Court,
22  333 Constitution Avenue NW, Washington, D.C. 20001.
23        Within 30 days of any change of address, you shall
24  notify the Clerk of the Court of the change until such time as
25  the financial obligation is paid in full.

1    The probation office shall release the presentence

2  investigation report to all appropriate agencies, which

3  includes the United States Probation Office in the approved

4  district of residence.  In order to execute the sentence of

5  the Court, treatment agencies shall return the presentence

6  report to the probation office upon the defendant's completion

7  or termination from treatment.

8    Pursuant to 18 United States Code 3742, under

9  certain circumstances, you have the right to appeal the

10  sentence imposed by the Court.  If you choose to appeal, you

11  must file any appeal within 14 days after the Court enters

12  judgment.  And if you are unable to afford the cost of an

13  appeal, you may request permission from the Court to file an

14  appeal without cost to you.  Pursuant to the D.C. Circuit's

15  opinion in *United States versus Hunter*, 809 F.3d 677, decided

16  on January 12th, 2016.

17    Are there any objections to the sentence imposed

18  that are not already noted on the record, Ms. Allen?

19    MS. ALLEN:  No, Your Honor.

20    THE COURT:  Mr. Zucker?

21    MR. ZUCKER:  There is not an objection.  There's a

22  request for a slight modification.  I understand the Court has

23  structured the restitution to be paid at $100 a month after

24  judgment.  Given the fact that he's incarcerated, his wife is

25  disabled, it will create a burden on them.  I'd ask that the

1    Court modify it only that the payments -- the monthly payments

2    start after he is released from incarceration.

3              THE COURT:  So, I've had, Mr. Zucker, this request

4    before, and my -- let me ask Mr. Walters.

5              MR. WALTERS:  They'll start after -- once he's

6    released.

7              THE COURT:  Okay.

8              MR. WALTERS:  He'll be instructed by his

9    probation -- I understand, Your Honor.  It's -- the wording is

10   a little convoluted.  The only thing that may happen with the

11   BOP is if he's working --

12             THE COURT:  Hold on, Mr. Walters.  Hold on one

13   second.

14             Can the court reporter -- I know, he doesn't have a

15   microphone -- you can?  All right.

16             Mr. Walters, the court reporter says she can hear

17   you, so speak away.  Or they've invited you to come up to the

18   mike.  Please, go ahead.

19             MR. WALTERS:  Occasionally, while -- if there's

20   money on the books in the Bureau of Prisons, they may take a

21   percentage to offset a little, just to start it.  But

22   otherwise, his payments won't start until he is on supervised

23   release.  And his probation officer in Montana will direct him

24   where to start making payments.

25             THE COURT:  Okay.  Let's just do this.  Mr. Zucker,

1    if you find out this is happening and it's a burden -- you

2    know what, if you even just -- I'll even save you the -- if

3    you just e-mail chambers rather than even filing a motion,

4    just give us a -- you know, you let your lawyer know.  And if

5    that happens, we'll work something out and take care of it.

6              MR. ZUCKER:  Thank you.

7              THE COURT:  All right.

8              MR. ZUCKER:  In an abundance of caution, I know the

9    Bureau of Prisons is supposed to do it anyway, just credit for

10   all time held.

11             THE COURT:  I'll just say it right now, it's my

12   expectation that he would get credit for all the time he

13   served.  That's right.  There was a little bit of time early

14   on this case.  Very well.

15             You may return to your seats.

16             Is there, Ms. Allen -- and first of all, so that

17   concludes -- that concludes my judgment in this case.  Is

18   there a motion to dismiss from the government?

19             MS. ALLEN:  Yes, Your Honor.  We have two prior

20   indictments and then the remaining counts on the second

21   superseding -- I'm not sure how many indictments, but we would

22   like to dismiss all the counts except for this one.

23             THE COURT:  So all prior counts -- all prior

24   indictments, and all counts but Count 2 in the pending

25   indictment shall be dismissed.

1          Mr. Hughes, you know, I read the letters your lawyer

2    submitted and, of course, I had your brother before me as well

3    and read a lot of letters about him that also talked about

4    your family.  And, you know, let me just say, I think having

5    that strong family and having that strong community that you

6    do, and having even your wife and daughter to come back to, I

7    have every expectation that you're going to pay the penalty

8    for what you did, but I have every expectation that you will

9    be able to put this behind you on the other side, and I wish

10   you luck in that, sir.

11          THE DEFENDANT:  Thank you.

12          THE COURT:  All right.  Anything further from the

13   government?

14          MS. ALLEN:  No, Your Honor.  Thank you.

15          THE COURT:  Anything further from you, Mr. Zucker?

16          MR. ZUCKER:  Nothing, Judge.  Thank you.

17          THE COURT:  With that then, the parties are excused.

18          (The proceedings were concluded at 4:12 p.m.)

19

20          I, Christine Asif, RPR, FCRR, do hereby certify that
     the foregoing is a correct transcript from the stenographic
     record of proceedings in the above-entitled matter.

21

                    _____/s/_____
22                       Christine T. Asif
                      Official Court Reporter

23

24

25

< Dates >.
677, decided
   42:15.
January  34:5,
   42:16.
January 5th,
   9:22.
January 6
   20:14,
   20:17.
January 6th
   35:7.
January 6th,
   8:19,
   35:12.
January 6th,
   two year
   17:16.
November 15th
   3:23.
$100 7:11,
   39:5, 40:14,
   42:23.
$15 7:8.
$150 7:8.
$2 7:9, 38:7,
   38:13, 40:1,
   41:18.
$250 7:7.
.
.
< 0 >.
000 7:7, 7:8,
   7:9, 38:7,
   38:13, 40:1,
   41:18.
.
.
< 1 >.
100 7:8.
12 45:18.
12th 42:16.
14 5:6,
   42:11.
15 15:20,
   15:21, 37:2,
   39:17.
1512 18:1.
1512(c)(2
   5:3.

17 11:17.
18 3:18, 5:3,
   7:11, 7:21,
   11:19, 38:23,
   39:6, 39:21,
   42:8.
1984 38:23.
.
< 2 >.
2 2:3, 5:1,
   11:17, 11:18,
   11:19, 39:2,
   39:4,
   44:24.
20 5:4, 11:22,
   20:6, 21:9,
   37:2,
   40:14.
200 1:36.
20001 1:46,
   41:22.
20002 1:37.
2016 42:16.
202 1:47.
2023 1:11.
20515 41:18.
20s 20:3.
21 15:12,
   15:20, 15:21,
   16:5, 37:4.
21-0106-TJK
   1:6.
21-106 2:3.
22 5:11,
   5:22.
222 1:28.
24 10:15.
25 5:8.
253 1:29.
2nd 2:15.
.
.
< 3 >.
30 41:7,
   41:23.
3013 39:6.
3013(a)(2)(a
   7:12.
333 1:45,

41:22.
354-3247
   1:47.
3553 38:24.
3553(a 3:18,
   7:22, 8:17,
   27:17, 38:8,
   38:20.
36 38:12.
36-month
   39:3.
3663 39:22.
3663(a 39:22.
37 1:35.
3742 42:8.
38 13:14,
   14:24,
   33:19.
3:04 p.m.
   1:12.
.
.
< 4 >.
4 45:18.
41 14:23.
44 11:18.
46 5:23, 35:16,
   35:17, 38:12,
   39:2.
.
.
< 5 >.
51 35:17.
51-month
   11:5.
57 5:23,
   35:16.
.
.
< 6 >.
6-related
   34:5.
60 13:18,
   41:3.
.
.
< 7 >.
7th 1:28.
.
.

< 8 >.
809 42:15.
.
.
< 9 >.
99513 1:30.
[sic] 39:15.
_____/s/___
   _____
   45:24.
.
.
< A >.
aberrant
   16:9.
aberration
   34:10.
abide 39:7.
ability 29:19,
   40:2, 40:9,
   40:12,
   41:10.
able 12:18,
   38:13,
   45:9.
above-entitled
   45:22.
Absolutely
   26:13.
abundance
   44:8.
abuse 20:2,
   40:24,
   40:25.
accept 4:18,
   13:19.
acceptance
   5:9.
accepted
   20:22.
accepting
   19:16.
access 17:8,
   17:9, 17:15,
   40:17.
accommodate
   26:9.
accordance
   39:6, 39:21,
   40:7.

according
    13:5.
account 10:23,
    21:12,
    24:14.
accountable
    31:17.
accounted
    11:16,
    36:21.
accounts 11:6,
    11:7.
accrue 40:4.
accurately
    7:13.
achieve 10:24,
    11:3.
across 10:10,
    17:7,
    17:15.
Act 18:15,
    20:20, 20:24,
    31:12,
    38:22.
acted 10:13.
acting 21:4.
ACTION 1:5.
actions 24:8,
    24:10,
    30:16.
activity
    20:8.
actors 9:3.
actual 21:16.
actually 3:19,
    11:19.
add 34:9.
addition 8:6,
    39:5.
additional
    40:22.
address 4:9,
    13:9, 26:25,
    41:23.
adequate 8:3,
    34:21.
adjudicating
    22:3.
administration
    5:8.

admirable
    20:11.
admitted
    19:12.
advanced
    17:2.
advantage
    12:18.
advisory
    38:24.
affect 20:5,
    40:9.
affects
    34:15.
afford 8:2,
    34:21,
    42:12.
afternoon
    2:9.
afterward
    22:20,
    33:5.
agencies 42:2,
    42:5.
aggravated 9:3,
    10:11.
aggravating
    3:11, 12:7.
ago 17:16.
agree 18:23,
    22:5, 23:6,
    23:7.
agreed 7:9,
    15:23, 36:9,
    38:7,
    41:19.
agreement
    6:18.
agrees 24:23.
ahead 14:5,
    43:18.
AK 1:30.
albeit 24:18.
Allen 1:25,
    2:5, 7:16,
    14:2, 18:7,
    28:1, 37:2,
    42:18,
    44:16.
allow 17:8.

allowed
    16:22.
alone 9:19,
    22:12.
already 12:13,
    18:13, 33:9,
    42:18.
Amendment
    28:25.
America 1:5,
    2:3, 23:16,
    29:12.
Americans
    28:21.
among 8:11,
    9:2, 32:5.
amount 7:9,
    17:21, 25:9,
    26:19, 38:7,
    40:1,
    41:18.
amounts
    41:13.
Anchorage
    1:30.
anybody 23:11,
    33:24.
anyway 22:5,
    44:9.
apart 33:23,
    37:7.
apologize
    27:11,
    32:15.
apologizing
    27:6.
appeal 42:9,
    42:10, 42:11,
    42:13,
    42:14.
appear 41:4.
appearance
    41:9.
APPEARANCES
    1:23.
applicable
    5:18, 6:12,
    6:21.
applies 3:9,
    4:23.

apply 15:10.
apportion
    31:8.
Appreciate
    25:17, 26:22,
    27:13.
approach
    38:17.
approaching
    9:19.
appropriate
    11:1, 16:15,
    18:3, 24:24,
    25:2, 35:19,
    42:2.
approval
    40:23.
approved
    42:3.
Architect 40:1,
    41:16.
are. 9:24.
area 12:15,
    12:24.
arguing
    18:25.
argument 19:4,
    25:13,
    36:11.
arguments
    37:10.
armed 9:20.
army 9:16.
around 11:17,
    12:25.
arrest 19:20,
    19:21.
articulated
    26:20.
Asif 1:41,
    45:20,
    45:25.
aspect 28:1.
assault 13:19,
    28:13.
assessed 27:16,
    40:11.
assessment
    7:10, 7:11,
    39:5.

assume 25:20.
assuming
  25:24.
attached
  2:15.
attacks 9:12,
  9:13.
attempt 4:24,
  18:14, 23:25,
  41:1.
attempts
  25:6.
attention 26:4,
  26:5,
  37:10.
Attorney 1:26,
  1:27,
  40:20.
authorize
  40:18.
authorizing
  39:22.
available 8:10,
  35:15.
Avenue 1:28,
  1:35, 1:45,
  41:22.
avoid 8:11.
away 8:25,
  10:8, 19:13,
  19:15, 25:9,
  43:17.
.
.
< B >.
back 11:18,
  12:1, 12:2,
  12:10, 27:9,
  30:9, 30:11,
  30:12, 32:21,
  32:25,
  45:6.
bad 21:17,
  27:10,
  33:10.
balance 40:4.
base 5:5.
based 3:10,
  24:25.
basic 39:11.

Basically
  19:1.
bear 25:18,
  33:25.
become 17:9,
  28:2, 28:3,
  29:18.
begin 27:23.
beginning
  37:4.
begun 18:13.
behavior
  16:10.
behind 9:17,
  10:10, 11:12,
  13:7, 27:9,
  31:24,
  45:9.
believe 6:15,
  7:17, 14:23,
  16:25.
believed 21:4,
  21:6,
  23:16.
believing
  20:24,
  21:5.
below 14:18,
  35:19, 36:7,
  38:11.
benefit
  34:15.
best 15:15.
beyond 28:6.
bit 44:13.
blow 30:6.
blown 19:7.
books 43:20.
BOP 26:14,
  43:11.
breach 16:18.
breached
  12:13.
break 10:4,
  18:24,
  31:18.
breaking 10:7,
  37:15.
briefly
  18:11.

broke 11:9,
  17:22, 31:5,
  36:14,
  37:14.
broken 11:10,
  16:21,
  30:11.
brother 9:25,
  10:19, 11:24,
  13:14, 14:11,
  14:22, 17:25,
  25:18, 35:24,
  36:17,
  45:2.
brought 23:10,
  37:9.
brunt 33:25.
Building 9:4,
  10:20, 11:11,
  11:14, 11:19,
  11:24, 12:5,
  13:7, 16:20,
  16:22, 16:24,
  17:8, 17:9,
  17:14, 17:15,
  23:2, 32:24,
  41:17.
bunch 35:23.
burden 42:25,
  44:1.
Bureau 26:3,
  39:1, 43:20,
  44:9.
.
.
< C >.
C. 1:10, 1:46,
  41:18, 41:22,
  42:14.
calculated
  15:17, 15:20,
  15:24, 16:1,
  35:16, 37:1,
  37:3.
calculates 5:5,
  5:18.
calculating
  36:4.
calculation
  35:4.

call 26:6,
  29:4.
candidate
  28:25, 29:11,
  29:12.
Candidates
  29:10.
Capitol 11:9,
  16:19, 40:1,
  41:16.
care 44:5.
cares 24:19,
  25:4.
carriage
  11:20.
cases 12:7,
  13:13, 14:13,
  17:2, 20:14,
  22:6, 27:25,
  35:8, 35:23,
  36:17,
  36:18.
Category 5:20,
  5:22,
  32:19.
caution 44:8.
certain 42:9.
certainly 6:14,
  9:10,
  13:24.
certification
  29:20.
certify
  45:20.
chambers
  44:3.
change 41:23,
  41:24.
changed 18:15,
  18:17, 18:19,
  29:7.
changes 40:8.
character 2:16,
  14:9,
  19:15.
characteristics
  8:8, 13:22,
  27:21, 32:14,
  33:18, 36:9,
  38:2.

charge 13:17.
charged 18:1.
charges
  40:22.
chase 11:13.
chased 11:11.
chasing
  31:23.
Chief 41:16.
chilled
  22:23.
chilling 9:8,
  22:23.
choose 42:10.
Christine 1:41,
  45:20,
  45:25.
Circuit
  42:14.
circumstance
  12:7.
circumstances
  8:7, 11:2,
  15:1, 16:13,
  18:4, 28:18,
  29:18, 40:9,
  42:9.
cited 13:12,
  36:17,
  36:18.
cites 35:22.
citizen 10:14,
  20:6.
citizens
  20:16.
civic 25:6.
claim 16:23.
claimed
  16:24.
claims 17:1.
clear 20:8,
  34:16.
Clerk 2:2,
  41:13, 41:21,
  41:24.
client 22:11.
climbed
  11:10.
climbing
  31:2.

Clock 9:14,
  10:3, 11:13,
  11:17,
  31:24.
close 11:12.
Code 3:18, 5:3,
  7:11, 7:21,
  38:24, 39:6,
  39:21,
  42:8.
colleagues
  27:25.
collection
  39:19.
College
  29:21.
Colorado
  25:19.
Columbia 1:44,
  41:15.
COLUMBIA 1:2.
coming 17:11.
commence
  40:15.
commencement
  41:8.
comments
  10:12.
commit 3:2,
  23:15, 35:5,
  39:13.
committed 2:24,
  20:20,
  39:1.
community 14:9,
  20:9, 21:1,
  35:9, 45:5.
comparable
  24:11.
comparison
  24:4,
  35:24.
complete
  34:10.
completely
  10:23,
  25:3.
completion
  42:6.
comply 7:23,

8:9, 38:9,
  38:21,
  39:24.
computer-aided
  1:50.
concerned
  32:19.
conclude 34:9,
  38:20.
concluded
  45:18.
concludes
  44:17.
conditions
  39:8, 39:9,
  39:12, 39:25,
  40:5.
conduct 8:3,
  8:13, 9:2,
  11:7, 17:19,
  18:2, 34:21,
  36:15,
  39:11.
conducted 22:2,
  29:4,
  29:12.
confinement
  24:23.
conform 35:5.
confrontation
  31:23.
confrontational
  37:19.
Congress 3:17,
  4:25, 7:21,
  27:6,
  29:19.
Congresspeople
  21:9.
connection
  4:15.
conscious
  25:10,
  26:19.
consequence
  10:22,
  24:18.
consequences
  3:1, 3:20.
consider 6:13,

7:20, 8:7,
  22:12, 22:13,
  24:2, 27:22,
  28:3, 28:18,
  35:20, 35:21,
  38:1, 38:6.
consideration
  14:12, 38:1,
  38:23.
considerations
  27:20.
considered
  20:12.
considering
  3:10, 38:3,
  38:8,
  38:20.
Constitution
  28:19, 30:8,
  41:22.
constitutional
  33:15.
consumed 24:16,
  25:5.
contact 19:20,
  34:5.
context 19:10,
  19:24, 20:1,
  20:14.
Contitution
  1:45.
controlled
  39:14,
  39:16.
controls
  26:11.
convicted
  13:18.
convictions
  15:4.
convince
  29:1.
convoluted
  43:10.
cooperate
  39:19.
cooperative
  19:23.
cops 10:17.
Correct 6:6,

6:17, 6:19,
15:22,
45:21.
correction
6:10.
Corridor 9:14,
10:3, 11:14,
11:17,
31:24.
cost 42:12,
42:14.
counsel 3:14,
23:19, 33:22,
38:16,
38:17.
Count 5:1,
39:2, 39:4,
44:24.
counterbalanced
22:8.
countries
28:20.
country 20:18,
21:5, 21:7,
27:6, 28:11,
29:15,
35:13.
country.
9:18.
counts 24:11,
44:20, 44:22,
44:23,
44:24.
course 13:18,
17:11, 19:11,
21:2, 36:20,
45:2.
courtroom
28:22.
Courts 22:2,
36:19.
crafting
30:17.
crazy 10:17.
create 42:25.
credit 17:1,
34:17, 40:22,
44:9,
44:12.
crime 2:25,

3:2, 16:3,
39:14.
crimes 8:4,
34:22,
35:5.
Criminal 1:5,
2:2, 3:10,
5:18, 5:19,
5:20, 5:22,
5:24, 8:3,
15:3, 20:4,
20:7, 20:19,
20:20, 20:24,
34:3, 34:6,
34:21, 36:3,
37:24,
40:12.
crisis 33:15.
critical
16:16.
crowd 11:25,
23:17,
23:19.
cryptic 14:4.
culpability
36:10,
36:12.
custody 13:15,
15:6, 39:1.
customs 30:6.
.
.
< D >.
damage 5:7,
28:10.
damaged 30:5,
30:14.
date 40:15.
daughter 24:20,
33:20, 33:24,
45:6.
day 9:1, 9:2,
9:3, 9:4,
9:23, 9:25,
10:14, 10:22,
18:16, 19:11,
22:18, 23:3,
24:1, 27:7,
28:8, 28:11,
28:14, 28:15,

28:17, 29:25,
30:5, 30:17,
30:23, 31:12,
33:5, 33:8,
33:11,
37:20.
days 39:17,
41:3, 41:7,
41:23,
42:11.
DC 1:37.
debate 21:10,
26:17.
decided 13:11,
15:9,
21:23.
decision 3:2.
deep 12:22.
DEFENDANT 1:12,
1:33, 2:3,
2:6, 2:8,
2:15, 2:16,
4:6, 5:18,
5:19, 6:15,
7:2, 8:4,
8:8, 11:7,
13:23, 15:15,
19:25, 35:17,
36:17, 37:14,
37:21, 37:23,
38:2, 42:6,
45:11.
defendants
8:11, 16:10,
17:25, 34:14,
35:3.
defense 5:15,
6:2.
defenseless
9:19.
degree 32:1,
34:23.
deliberate
23:25.
democracy
21:7.
departure 3:11,
6:16.
departures
6:13.

described
35:11.
designation
25:19,
25:23.
desks 13:1,
37:22.
destroy
10:17.
details 8:24.
deter 35:2.
determination
4:21.
determine 3:4,
3:8, 41:9.
determined
6:12, 39:18,
40:2.
determining
5:17.
deterrence 8:3,
34:21, 34:24,
35:6, 35:8,
35:9.
died 28:22.
differences
37:12.
different
17:12, 17:23,
18:25, 23:4,
32:19.
difficult
32:9.
difficulties
31:8.
diligently
6:11.
direct 43:23.
directed 38:14,
39:20.
disabled
42:25.
disaster
19:11.
disbursement
41:15.
disclosure
40:16.
discovered
11:19.

discretionary
  39:8.
discuss 6:20.
discussed
  31:6.
disgrace
  30:13.
dismiss 44:18,
  44:22.
dismissed
  44:25.
disparate
  16:9.
disparities
  8:11, 13:8,
  35:21,
  36:21.
dispersed
  17:7.
dispute
  23:23.
disputes
  22:3.
disrupted
  22:1.
disrupts
  29:19.
distinguish
  37:8.
distinguishing
  38:3, 38:4.
District 1:1,
  1:2, 1:19,
  1:43, 1:44,
  41:6, 41:14,
  41:21,
  42:4.
DNA 39:19.
docket 15:16,
  24:6.
documents
  2:17.
doing 16:25,
  21:18, 21:19,
  22:7, 22:17,
  22:18, 22:21,
  23:3,
  29:25.
done 10:13,
  10:18, 15:5,

19:12, 19:15,
  28:10, 30:19,
  31:7, 31:10,
  31:16, 31:17,
  37:11.
door 11:21,
  12:20, 16:17,
  16:18, 16:21,
  17:12, 17:17,
  17:20, 17:22,
  18:13, 18:14,
  18:20, 24:10,
  31:5, 31:18,
  36:14,
  37:16.
doors 10:10,
  11:23, 12:1,
  12:18, 17:8,
  17:14.
doubt 32:8,
  33:5.
Doug 13:16.
down 10:7,
  12:14, 12:16,
  12:19,
  19:16.
dramatically
  18:15,
  18:19.
drop 9:24.
drug 39:16,
  39:18.
due 40:13.
duped 21:5.
dwell 26:21.
  .
  .
< E >.
e-mail 44:3.
early 20:3,
  44:13.
east 11:23,
  11:25,
  12:1.
economic
  40:9.
effect 26:2,
  31:19,
  37:16.
effort 17:19,

23:21, 23:24,
  29:23, 31:3,
  31:18.
eight-level
  15:10.
eighth 11:11,
  16:19,
  24:9.
either 2:18,
  6:16, 19:5,
  37:5.
elected 29:5.
electing
  30:2.
election 21:6,
  21:21, 21:22,
  21:23, 22:1,
  29:3, 29:7,
  29:11.
Electoral
  29:20.
elevate 28:5.
eligible 7:3.
Emily 1:25,
  2:5.
emotional
  24:22.
end 14:13,
  14:23,
  15:12.
ended 36:4,
  37:21.
ending 37:4.
ends 31:13.
endure 27:7.
engage 18:1,
  29:7.
engaged 17:18,
  20:7,
  31:12.
Englewood
  25:19,
  38:16.
enhancement
  15:10,
  16:2.
enhancements
  5:6.
enough 4:13,
  9:5, 10:20,

12:10, 13:6,
  33:13.
ensure 7:22.
enter 11:11,
  31:4.
entered 12:4.
enters 42:11.
enthusiasm
  23:18.
equal 40:13.
error 6:4.
especially
  6:9.
Esquire 1:25,
  1:33.
essentially
  12:4, 20:6.
establish
  39:11.
Eugene 27:8.
evacuated
  10:9.
evaluating
  19:10.
event 17:16,
  22:11, 30:15,
  31:9, 31:25,
  32:1,
  32:21.
events 8:20,
  18:16, 20:17,
  20:19,
  28:17.
everybody
  27:6.
everyone 2:9,
  31:14.
everything
  18:10.
evidentiary
  4:3.
exactly
  24:12.
exaggerate
  33:7.
except 21:8,
  44:22.
excused
  45:17.
execute 42:4.

exit 11:20.
expectation
  44:12, 45:7,
  45:8.
expectations
  39:11.
expecting
  4:2.
expense
  20:25.
explained
  9:4.
exposed 8:24.
extended
  20:9.
extraordinary
  14:8.
extremely
  12:24, 22:9,
  30:12.
.
.
< F >.
F.3d 42:15.
face 3:1, 21:8,
  21:9.
fact 4:20, 9:3,
  10:16, 11:7,
  12:4, 17:18,
  17:22, 22:8,
  22:9, 22:10,
  31:5, 32:17,
  32:24, 32:25,
  33:23, 36:10,
  42:24.
factor 31:21,
  32:25,
  34:18.
factors 3:11,
  3:17, 7:21,
  8:17, 13:21,
  13:22, 24:1,
  24:2, 24:12,
  24:14, 26:20,
  27:17, 27:21,
  38:3, 38:4,
  38:8,
  38:20.
facts 4:18,
  8:21, 15:8,

27:17.
factual 3:25,
  4:6.
fair 3:17,
  18:18, 31:7,
  37:9.
fairly 22:2.
fairness
  21:22.
fall 24:19.
family 20:6,
  20:9, 20:10,
  27:9, 33:25,
  45:4, 45:5.
fan 17:13.
far 5:4, 30:19,
  32:19.
fashion 3:16.
fashioning
  24:13.
fault 26:14.
favor 28:25,
  30:24,
  32:24.
FCI 38:16.
FCRR 1:41,
  45:20.
federal 2:25,
  26:6, 29:6,
  29:9,
  39:13.
feel 4:13,
  25:10, 26:19,
  33:23,
  33:25.
feels 24:21,
  25:5.
feet 10:8.
few 28:16,
  34:7.
fight 10:17.
figure 31:8.
file 29:9,
  42:11,
  42:13.
filed 2:14,
  3:23, 4:15,
  11:15, 13:9,
  15:15.
filing 44:3.

final 3:22.
Financial 40:5,
  40:6, 40:10,
  40:11, 40:16,
  40:17, 40:18,
  40:19, 40:21,
  41:16, 41:20,
  41:25.
find 41:10,
  44:1.
finding 6:7.
findings
  4:20.
fine 7:6, 7:8,
  10:22,
  41:11.
fines 6:22,
  7:6.
First 3:3,
  4:24, 11:20,
  16:18, 28:16,
  28:24, 31:4,
  44:16.
five 7:3,
  39:20.
fled 13:3,
  13:4.
flip 21:16,
  29:16,
  30:25.
floodgates
  18:15.
floor 10:9,
  11:9, 11:20,
  12:15, 12:17,
  12:19, 12:20,
  12:22, 12:24,
  12:25, 33:1,
  37:21.
Florida 1:35.
focus 30:16,
  32:4.
folks 6:11,
  31:4.
followed 9:5,
  10:20,
  33:13.
following
  11:12, 15:14,
  39:8, 39:24,

41:15.
follows 4:24,
  40:13.
force 17:21.
forced 11:14,
  11:24, 11:25,
  12:5.
forcibly
  12:5.
Ford 41:17.
forefront
  29:22,
  32:7.
foregoing
  45:21.
foresee 9:23.
forfeiture
  6:22.
forth 3:17,
  3:25,
  10:15.
forward 35:4.
found 6:4, 6:9,
  6:10, 8:12,
  9:7.
four 2:23,
  37:23,
  39:19.
foyer 12:1.
framer 33:21.
framework 4:23,
  7:14.
frankly 9:15,
  19:14,
  25:24.
freedom
  29:15.
frequency
  8:24.
friend 9:23,
  10:13.
friends 29:1.
front 10:1,
  20:19, 23:9,
  23:19, 31:1,
  31:2.
fuck 9:6.
fulfill
  29:20.
full 8:19,

41:25.
fully 4:10.
fundamentally
  16:7.
future 8:4,
  34:22.
.
< G >.
gallery 12:3,
  12:12, 12:15,
  12:17.
gave 28:22,
  35:24.
gazing 13:2.
gee 23:1.
General 35:8,
  35:9,
  36:15.
generosity
  20:10.
genuinely
  22:19.
getting 7:19,
  31:3,
  33:14.
give 28:20,
  34:16,
  44:4.
Given 5:21,
  18:4, 28:9,
  36:13, 36:14,
  36:15, 36:19,
  42:24.
giving 14:11.
glad 30:20.
goals 10:24,
  11:3.
Goodman 9:18,
  11:12, 27:8,
  31:22,
  31:23.
goodness
  28:14.
gotten 12:9,
  22:10,
  33:6.
Government
  1:25, 2:5,
  3:14, 3:24,

4:2, 4:15,
5:13, 5:25,
8:16, 10:15,
11:15, 13:9,
14:18, 14:20,
19:4, 22:25,
25:11, 27:14,
29:6, 35:17,
35:22, 35:25,
36:5, 36:10,
36:16, 36:25,
38:11, 44:18,
45:13.
graduate
  33:20.
grapple
  27:25.
Grateful 6:7.
great 17:21,
  29:22,
  31:3.
greater 7:23,
  24:18, 38:9,
  38:21.
greatly
  30:24.
group 23:11,
  30:22.
guess 30:18,
  31:25,
  32:13.
guideline 5:25,
  15:18,
  16:15.
Guidelines 3:9,
  3:12, 4:22,
  5:4, 5:21,
  5:22, 6:12,
  6:14, 6:25,
  7:4, 7:7,
  7:14, 8:6,
  10:25, 11:5,
  14:14, 14:15,
  14:23, 15:10,
  15:18, 16:1,
  16:4, 17:24,
  18:3, 24:6,
  24:7, 34:15,
  35:16, 35:19,
  36:1, 36:4,

36:6, 36:7,
36:19, 37:1,
37:24, 37:25,
38:25.
guilt 24:17,
  24:21,
  25:5.
guilty 2:25,
  5:1, 8:12,
  11:8, 18:1,
  20:22, 32:16,
  32:18,
  34:13.
guys 32:5.
.
.
< H >.
H-2-205B
  41:17.
half 21:5.
hallway 12:2.
hammer 9:24.
hand 6:9, 12:9,
  19:2, 19:3,
  21:16, 22:17,
  23:10, 24:17,
  28:5.
happen 35:10,
  35:14,
  43:10.
happened 8:20,
  9:1, 9:25,
  18:16, 21:17,
  28:8, 28:15,
  30:5, 31:12,
  31:15, 33:9,
  33:11, 33:16,
  35:10, 35:12,
  35:13.
happening
  44:11.
happens 44:5.
hard 28:1.
hardest
  27:24.
harm 24:17.
He'll 25:16,
  38:13,
  43:8.
health 14:8,

33:22.
hear 3:13,
  8:16, 18:8,
  43:16.
heard 3:15,
  33:10.
hearing 2:22,
  3:3, 4:3,
  41:3, 41:5.
heart 7:19.
held 23:2,
  31:17,
  44:10.
help 20:10,
  30:7.
hereby 39:1,
  45:20.
high 33:20.
higher 16:1,
  37:4.
highlight
  37:13.
History 3:10,
  5:18, 5:19,
  5:20, 5:22,
  5:24, 8:8,
  15:3, 20:4,
  27:21, 32:14,
  34:3, 36:3.
hit 23:12,
  35:1.
Hold 9:5, 13:7,
  33:13,
  43:12.
home 24:23.
Honestly
  33:6.
Honor 2:2,
  2:19, 4:1,
  4:12, 4:17,
  5:14, 6:1,
  6:3, 8:18,
  8:21, 13:13,
  13:16, 14:6,
  14:17, 17:4,
  27:15, 42:19,
  43:9, 44:19,
  45:14.
Honorable
  1:18.

hope 6:8,
    8:23.
hoped 33:16.
hopeful
    10:21.
House 9:17,
    41:17.
hundreds 16:22,
    17:13.
Hunter 42:15.
hurt 23:11.
hurtful
    20:17.
.
.
< I >.
idea 18:12.
II 5:20,
    5:22.
immediately
    41:20.
importance
    8:25.
important
    34:13, 35:8,
    35:12.
impose 3:19,
    6:24, 7:22,
    25:8, 25:24,
    34:16, 38:18,
    38:19.
imposed 4:25,
    7:25, 8:9,
    11:3, 16:11,
    25:10, 39:11,
    42:10,
    42:17.
imposing 14:12,
    20:12, 24:2,
    25:11,
    27:18.
imposition
    41:11.
impossible
    26:12.
in. 31:19.
inadequate
    10:23.
incarcerated
    42:24.

incarceration
    5:4, 11:6,
    38:12, 41:4,
    43:2.
incident
    31:22.
include 7:24,
    39:12.
includes
    42:3.
including
    2:14.
incur 40:21.
indictment
    44:25.
indictments
    44:20, 44:21,
    44:24.
individual
    13:15,
    35:3.
ineligible 7:4,
    7:5.
influence
    18:21.
information
    40:16, 40:18,
    40:19,
    40:20.
injured 30:6.
innocent
    25:4.
inside 10:3,
    12:18.
insofar
    28:17.
installments
    40:14.
Instead 12:25,
    37:4.
instructed
    43:8.
intangible
    28:11.
intend 24:3.
intended
    21:3.
intentions
    33:5.
interest 40:2,

40:3.
interference
    5:7.
interrupt
    17:5.
investigation
    16:3, 19:18,
    42:2.
invited
    43:17.
involve 22:4.
involved 5:6.
issue 36:23.
issues 14:8,
    20:2,
    33:22.
itself 16:8,
    17:22, 37:6,
    38:5.
.
.
< J >.
January 6th
    1:11.
Jensen 13:16,
    13:17, 14:7,
    14:15.
Jerod 2:4,
    36:14, 37:19,
    38:25.
JEROD WADE
    HUGHES
    1:10.
jobs 32:8.
joined 18:12.
joining
    18:20.
Jonathan 1:33,
    1:34, 2:6.
Joshua 14:22,
    14:24.
Judge 1:19,
    2:20, 7:17,
    15:9, 15:23,
    15:25, 16:4,
    16:11, 18:9,
    18:10, 26:6,
    37:3,
    45:16.
judgment 38:25,

40:8, 40:15,
    42:12, 42:24,
    44:17.
jumped 12:14,
    12:16.
jumping
    16:20.
justice 5:8,
    16:2, 34:6.
.
.
< K >.
keep 2:23.
keeping
    19:14.
keeps 25:9.
kick 36:14,
    37:15.
kicked 16:17,
    17:17,
    17:21.
kicking 18:13,
    18:20,
    24:10.
kid 20:2.
kind 32:13,
    33:15.
kinds 8:10.
knows 13:14,
    14:4,
    35:10.
.
.
< L >.
large 9:20.
Last 3:16,
    3:18, 3:23,
    20:16, 35:20,
    38:5.
later 11:22.
Law 1:34, 8:1,
    30:7, 30:14,
    34:19,
    35:5.
laws 22:2,
    28:20,
    29:7.
lawsuit 29:9.
lawyer 30:20,
    31:6, 44:4,

45:1.
lay 15:17.
lays 4:22.
leader 11:12.
learn 36:24.
least 9:6,
    11:2, 25:9,
    26:18, 31:24,
    31:25,
    39:17.
leave 11:14,
    12:8.
led 12:2,
    12:20,
    13:17.
ledger 32:22.
left 9:4,
    11:17, 11:19,
    11:20, 13:2,
    13:3, 13:4,
    25:6, 32:24,
    33:5.
less 15:4,
    24:8.
letters 2:16,
    20:8, 24:16,
    45:1, 45:3.
letting
    31:19.
level 5:5, 5:8,
    5:10, 5:12,
    5:21, 21:15,
    21:17.
light 3:17,
    11:2,
    27:17.
lightly 12:9.
line 9:15,
    10:1, 10:2,
    10:4, 10:7,
    16:9, 23:9.
lines 11:10,
    40:22.
listening
    20:16.
little 8:18,
    43:10, 43:21,
    44:13.
live 33:19.
lived 14:9.

lives 28:22.
local 29:13,
    39:13.
lock 31:5.
long 12:21,
    20:3.
long-standing
    15:3.
look 15:15,
    19:18, 19:24,
    21:12, 22:5,
    31:7.
looking 10:21,
    19:17, 19:25,
    23:11.
loss 41:18.
lost 21:21.
lot 9:9, 20:13,
    20:14, 26:4,
    30:17, 31:12,
    33:7, 45:3.
loves 25:4.
low 14:13,
    14:23, 15:11,
    15:12,
    35:19.
lower 14:13,
    15:11, 36:2,
    36:4, 37:1.
luck 45:10.
.
.
< M >.
machine 1:49.
mad 9:16.
man 20:1,
    20:7.
mandatory 7:10,
    39:8,
    39:12.
manual 3:12.
materials
    2:17.
matter 2:2,
    3:23, 4:3,
    4:25, 7:20,
    17:18, 21:23,
    30:1,
    45:22.
matters 21:18,

32:15, 32:16,
    34:5.
maximum 4:25,
    5:4, 7:6.
mean 14:3,
    15:23, 17:5,
    18:22, 19:4,
    20:1, 21:4,
    21:24, 22:22,
    24:17, 26:8,
    32:6, 32:8,
    33:14, 35:6,
    35:22.
meaning 35:9.
means 29:15.
medical 14:7.
meet 29:5.
meh 10:18.
Mehta 15:9,
    15:23, 15:25,
    16:4, 16:11,
    37:3.
memo 10:15,
    11:15, 23:1,
    32:4,
    36:24.
memoranda
    2:13.
memorandum
    13:10.
memorandums
    18:11.
mental 14:8,
    23:4.
mentioned 8:10,
    28:19, 33:4,
    33:22.
mercy 26:22.
message 9:7,
    35:12.
messages 10:14,
    22:23.
messaging
    22:24.
methods 41:2.
microphone
    43:15.
middle 11:4,
    14:21, 33:15,
    36:5, 36:6.

middle-range
    18:3.
midpoint
    36:1.
mike 43:18.
mind 2:24,
    9:10, 21:19,
    25:18.
minds 23:5.
minimal
    30:24.
minimize 19:12,
    19:15.
minute 12:12.
minutes
    11:22.
miracle 10:6.
miscalculated
    6:5.
misguided 21:2,
    21:3, 21:7,
    23:24, 24:18,
    25:6.
mistaken
    15:13.
mitigating
    3:11, 13:21,
    13:22, 15:1,
    16:13, 21:16,
    24:2, 32:1,
    32:12.
mob 9:20, 10:2,
    29:18, 29:22,
    31:2.
model 10:14,
    20:6.
modification
    42:22.
modify 43:1.
moment 13:9,
    28:12.
monetary
    40:12.
money 43:20.
Montana
    43:23.
month 40:14,
    42:23.
monthly 40:13,
    43:1.

months 5:23,
  13:15, 13:18,
  14:13, 14:23,
  14:24, 15:12,
  15:20, 16:5,
  35:16, 37:2,
  37:4, 38:12,
  39:2,
  40:14.
motion 18:18,
  44:3,
  44:18.
motivated
  20:23.
motivations
  20:23,
  22:17.
MR. WALTERS
  43:5,
  43:19.
MR. ZUCKER
  2:20, 4:8,
  5:16, 6:3,
  6:7, 6:18,
  7:18, 18:9,
  19:1, 19:7,
  19:10, 21:14,
  23:7, 23:14,
  23:23, 25:17,
  26:8, 26:11,
  26:14, 27:2,
  42:21, 44:6,
  44:8,
  45:16.
Ms 7:16, 14:2,
  18:7, 28:1,
  37:2, 42:18,
  44:16.
MS. ALLEN 2:19,
  4:1, 4:4,
  5:14, 6:1,
  7:17, 8:18,
  13:24, 14:6,
  14:17, 14:20,
  15:1, 15:21,
  15:25, 16:7,
  17:4, 17:7,
  18:6, 27:15,
  42:19, 44:19,
  45:14.

.
.
< N >.
name 13:15,
  41:16.
national
  30:13.
nature 8:7,
  27:20, 27:23,
  28:18,
  35:11.
NE 1:35.
nearly 20:6,
  21:5.
necessarily
  26:14.
necessary 7:23,
  38:9,
  38:21.
need 7:24, 8:9,
  8:10, 8:13,
  24:20,
  38:6.
neighbors
  29:1.
netting 5:10.
new 40:21.
newer 34:8.
next 4:21,
  5:17, 6:13,
  9:23, 34:18,
  35:20.
night 9:22.
No. 1:5, 25:22,
  26:16.
Nobody 21:8,
  21:9.
None 4:8.
normal 20:23.
note 6:3,
  25:11.
noted 42:18.
Nothing 10:6,
  15:16, 18:25,
  19:15, 19:22,
  21:20, 30:1,
  30:3,
  45:16.
notify 40:8,
  41:24.

numb 8:25,
  28:2, 28:3.
Number 2:3,
  2:15, 11:21,
  13:12, 15:4,
  17:2, 17:25,
  37:8,
  37:16.
NW 1:45,
  41:22.
.
.
< O >.
objection 3:24,
  4:6, 5:12,
  42:21.
objections 3:6,
  3:7, 5:24,
  42:17.
obligation
  41:25.
obligations
  41:20.
obstruct
  41:1.
obstruction
  5:2, 16:2.
obvious 18:14,
  35:24.
obviously
  12:24, 13:14,
  24:25,
  26:20.
Occasionally
  43:19.
occasions
  30:13,
  34:7.
occurred
  19:11.
offender
  33:18.
offense 3:20,
  5:1, 5:5,
  5:6, 5:8,
  5:10, 5:12,
  5:21, 8:1,
  8:2, 8:8,
  8:14, 10:24,
  27:20, 27:24,

28:8, 28:18,
  34:19, 34:20,
  36:2, 36:8.
offenses 15:6,
  18:1.
Office 1:26,
  1:27, 2:7,
  2:13, 15:19,
  15:20, 39:9,
  40:19, 40:20,
  41:6, 41:16,
  41:17, 42:1,
  42:3, 42:6.
Officer 9:18,
  11:11, 27:8,
  30:21, 31:21,
  31:22, 31:23,
  39:20, 40:17,
  40:23, 41:17,
  43:23.
officers 9:13,
  9:16, 11:13,
  27:7, 28:14,
  32:3, 32:8,
  32:23.
Offices 1:34.
Official 1:42,
  5:2, 45:26.
officials
  29:5.
offset 5:9,
  43:21.
Ohio 9:14,
  10:3, 11:13,
  11:17,
  31:23.
Okay 2:21, 4:9,
  4:18, 16:6,
  18:17, 19:2,
  19:7, 19:21,
  20:2, 21:14,
  23:20, 25:15,
  25:22, 26:1,
  43:7,
  43:25.
old 33:19.
older 34:8.
once 8:21,
  10:3, 43:5.
One 7:1, 7:3,

15:6, 16:9,
18:19, 19:5,
20:5, 24:12,
24:17, 28:1,
28:10, 29:17,
30:14, 31:4,
31:8, 31:13,
31:14, 31:24,
32:3, 32:10,
34:2, 36:8,
37:13, 37:16,
39:13, 39:16,
40:6, 43:12,
44:22.
open 12:15,
16:17, 17:14,
17:17, 17:20,
17:22, 18:14,
18:24, 31:18,
36:14,
40:22.
opened 16:21,
17:8, 17:13,
18:15.
operating 7:14,
16:4.
opinion 22:1,
42:15.
opportunity
12:8.
options
39:10.
order 42:4.
ordered 39:5,
39:25.
orders 26:7.
ordinary
14:10.
others 20:10.
otherwise
43:22.
out. 9:6.
outcomes
33:12.
outlier 37:6,
38:5.
outrageous
26:6.
outside
16:14.

outstanding
3:5.
overall 22:11,
28:17, 30:15,
35:11.
overrun 17:9.
overstate
33:12.
overstated
36:9,
36:12.
own 13:5,
20:25,
34:25.
.
.
< P >.
p.m. 45:18.
page 10:15.
paid 41:25,
42:23.
papers 4:15,
13:12, 13:13,
33:2,
37:22.
paperwork 13:2,
13:3.
parallel
24:11.
part 3:18,
4:19, 23:11,
23:15, 29:18,
30:12, 30:22,
31:25, 35:6,
36:8, 36:18,
39:9.
particular
13:23, 27:17,
28:13.
Particularly
10:5, 15:2,
20:14,
32:17.
parties 2:14,
7:8, 36:9,
38:6, 41:19,
45:17.
party 6:16.
passage 8:23.
patriot 20:24,

21:4, 21:7.
patriotic
29:25, 30:1,
30:3.
pause 32:10.
pay 25:8, 26:4,
26:5, 39:5,
40:2, 40:6,
40:9, 40:12,
41:10,
45:7.
payable
41:20.
Payment 40:6,
40:11, 40:12,
40:13.
payments 40:7,
43:1, 43:22,
43:24.
peaceful 21:25,
28:9, 29:7,
30:9.
penalties 6:21,
40:3,
40:13.
penalty 40:6,
40:10,
45:7.
pending
44:24.
people 9:5,
9:7, 9:20,
10:20, 16:23,
17:13, 17:14,
21:21, 22:7,
22:15, 22:18,
23:1, 23:3,
23:5, 24:19,
25:4, 28:20,
29:24, 30:6,
31:12, 32:18,
32:20, 33:7,
33:11, 33:13,
34:4.
per 38:16.
percentage
43:21.
perceptions
21:22.
perform 25:6.

period 40:14.
periodic
39:18.
permission
42:13.
person 11:11,
13:16, 16:19,
18:13, 21:18,
23:8, 24:9,
29:2,
31:25.
physical 23:18,
24:22.
physically
23:9,
28:13.
pictures
13:1.
piece 33:9.
place 9:5,
17:23, 33:13,
33:14.
placed 29:22,
31:1,
38:16.
placement
39:17.
places 5:20,
17:12.
placing 32:6.
Plaintiff
1:7.
plan 22:21.
planned 23:15,
23:25.
planning
30:23.
plausibly
16:23.
play 28:14.
plea 6:18.
plead 32:15.
pleading
34:13.
Please 27:2,
27:3,
43:18.
pled 2:25, 5:1,
11:8, 18:1,
20:22, 24:11,

32:18.
point 11:24,
  12:13, 12:14,
  13:6,
  18:21.
pointed 22:25,
  30:20.
points 5:19,
  17:9.
police 9:13,
  9:16, 10:2,
  10:3, 10:7,
  11:10, 19:17,
  27:7, 31:20,
  34:13, 36:15,
  37:19.
policy 8:6.
population
  26:11.
position 20:15,
  31:3.
positive 32:25,
  33:3.
possess
  39:14.
possible 33:8,
  33:12.
power 21:25,
  28:10,
  30:9.
practices
  30:7.
precedent
  25:1.
preliminary
  4:24.
prepare 6:11.
Present 2:5,
  2:6, 2:7,
  13:23,
  15:2.
presentence
  2:12, 3:5,
  3:21, 3:22,
  4:14, 4:19,
  4:22, 5:5,
  6:4, 24:6,
  39:10, 42:1,
  42:5.
president

28:10, 28:24,
  29:21,
  30:3.
press 32:10.
Pretrial
  38:14.
pretty 12:6,
  30:24.
previously
  30:8.
price 25:8.
prior 44:19,
  44:23.
Prisons 26:3,
  39:2, 43:20,
  44:9.
probably
  23:18.
Probation 2:7,
  2:13, 7:2,
  7:3, 7:5,
  15:19, 15:20,
  35:16, 38:14,
  39:9, 39:20,
  40:17, 40:19,
  40:23, 41:5,
  42:1, 42:3,
  42:6, 43:9,
  43:23.
proceed 2:23.
proceeding
  2:25, 5:2,
  30:3.
Proceedings
  1:49, 45:18,
  45:22.
process 29:20,
  30:2.
produce 11:1.
produced
  1:49.
progress 41:3,
  41:5, 41:7.
prohibited
  40:25.
promote 8:1,
  8:4, 34:19,
  34:22.
property 5:7,
  30:5.

proportion
  19:8.
prosecutor
  14:3, 32:3.
protect 8:3,
  34:22.
protest 29:7.
provide 8:1,
  8:13, 24:22,
  27:18, 34:20,
  38:6,
  40:16.
provisions
  38:23.
prowess
  23:18.
PSR 5:18,
  15:24,
  37:1.
public 8:3,
  12:16,
  34:22.
punishment 8:2,
  34:20.
purposes 4:20,
  5:21, 7:24,
  8:9, 35:1,
  38:10,
  38:22.
Pursuant 6:18,
  38:22, 42:8,
  42:14.
pursuing
  24:17.
pursuits
  23:8.
pushed 37:24.
put 12:9, 16:8,
  18:16, 18:21,
  22:15, 22:19,
  23:9, 28:25,
  36:11,
  45:9.
puts 17:22.
.
.
< Q >.
quarrel 24:5.
question 4:5.
quite 12:9.

.
.
< R >.
raised 13:8,
  13:11,
  36:22.
range 3:9,
  5:22, 5:25,
  6:25, 11:5,
  14:21, 15:12,
  15:18, 16:4,
  16:15,
  36:7.
rather 24:11,
  44:3.
re-entered
  11:22.
re-entry 41:3,
  41:5.
react 20:17.
read 22:23,
  24:16, 45:1,
  45:3.
readily
  19:12.
ready 9:25,
  27:8.
realities
  9:1.
reality 9:8.
realize 35:3.
realized
  13:6.
really 9:8,
  9:12, 14:10,
  16:16, 21:10,
  22:20, 30:16,
  34:9, 34:11,
  34:24,
  36:10.
reason 9:4,
  20:4.
reasons 16:11,
  35:11,
  37:3.
recall 36:6.
receipt 41:8.
received 2:11,
  2:13, 3:4,
  13:17,

25:18.
recent 2:14.
recently
16:21.
recognizing
20:20,
25:3.
recommend
38:15.
recommendation
2:12, 3:22,
8:17, 25:25,
26:3,
26:18.
recommendations
26:7.
recommended
7:7, 25:20,
39:9.
recommends
35:17.
record 14:2,
14:7, 27:19,
37:24, 42:18,
45:22.
recorded
1:49.
records 8:12.
reduction
5:9.
references
14:9.
reflect 7:25,
34:18.
reflects
10:16.
Reform 38:22.
refrain
39:15.
refuse 32:20.
regard 8:16,
27:20.
regardless
37:25.
regards 20:1.
rehabilitation
8:5, 34:23.
relatively
9:19.
release 6:21,

6:23, 6:24,
7:1, 38:12,
39:4, 40:18,
41:4, 42:1,
43:23.
released 43:2,
43:6.
relevant
7:20.
rely 6:10.
remaining 6:21,
44:20.
remorse 24:21,
33:23.
repeat 18:10,
35:13.
repeated 10:19,
26:20.
report 2:12,
3:5, 3:6,
3:21, 3:22,
3:25, 4:7,
4:14, 4:19,
4:22, 5:5,
6:4, 24:6,
38:13, 39:10,
41:7, 41:8,
42:2, 42:6.
Reported
1:41.
Reporter 1:42,
43:14, 43:16,
45:26.
reports 6:11.
representation
36:25.
representations
24:5.
represented
37:2.
request 38:16,
42:13, 42:22,
43:3.
requested
14:18, 25:21,
40:17.
requesting
24:25.
required 3:19,
41:9.

requires
3:16.
residence
42:4.
resolve 3:6.
resort 21:24.
respect 8:1,
34:19.
respond
18:11.
responsibilitie
s 29:16.
responsibility
5:10, 11:8,
13:19, 19:16,
20:22, 31:9,
32:18, 32:20,
34:12,
34:14.
responsible
31:14.
Restitution
7:9, 8:13,
38:6, 38:7,
38:13, 39:21,
39:23, 39:25,
41:13,
42:23.
restrictions
40:21.
result 3:1,
11:5, 20:18,
25:5.
resulted 14:11,
14:23,
17:15.
results 15:3.
return 42:5,
44:15.
review 2:18.
reviewed 2:11,
3:4, 24:7.
reward 34:14.
rights 28:20,
28:23, 29:10,
29:11,
29:16.
rioter 17:19,
17:20.
rioters 11:21,

12:13, 13:6,
16:22, 17:7,
17:11,
31:19.
rises 5:8.
Robert 2:7.
role 28:13,
28:14, 28:15,
29:20,
32:14.
Room 1:29,
13:3,
41:17.
Rotunda 11:23,
11:25,
12:2.
RPR 1:41,
45:20.
rule 30:7,
30:14.
.
.
< S >.
S. 1:26,
41:21.
sacred 33:1.
sacrifices
20:25.
satisfied
4:10.
save 44:2.
saw 12:8,
12:23, 15:22,
17:16,
17:19.
saying 18:23,
19:21, 21:20,
32:6, 32:7.
says 43:16.
scaffolding
31:2.
scattered
13:4.
schedule 40:7,
40:11.
school 33:20.
scope 23:2.
scoring 15:4.
scorned
20:18.

screamed
   11:13.
screaming
   9:15.
seal 15:17.
seating
   12:16.
seats 44:15.
second 3:8,
   12:5, 12:19,
   43:13,
   44:20.
Section 5:3,
   7:11,
   39:22.
seem 24:10,
   24:24,
   37:5.
seems 24:13,
   30:23,
   38:4.
seen 12:6,
   13:1,
   30:25.
selflessness
   20:11.
Senate 10:9,
   11:9, 11:20,
   12:3, 12:11,
   12:13, 12:15,
   12:17, 12:20,
   12:22, 12:23,
   12:25, 13:5,
   16:17, 33:1,
   37:22.
senators 10:8,
   13:3, 33:2,
   37:22.
send 35:12.
sense 22:14,
   23:5.
sensitive
   12:24,
   13:2.
sentenced
   13:14, 14:24,
   39:3.
sentences 8:10,
   14:12, 15:7,
   16:10, 35:15,

36:19.
Sentencing
   1:17.
Sentencing
   2:10, 2:12,
   2:13, 2:22,
   3:9, 3:12,
   3:15, 3:22,
   4:16, 4:20,
   4:23, 5:21,
   7:24, 8:17,
   10:15, 10:25,
   11:15, 13:8,
   13:10, 13:12,
   13:13, 18:11,
   23:1, 35:2,
   35:21, 36:21,
   38:10, 38:22,
   38:24,
   39:10.
separate
   22:10.
serious 15:3,
   28:8,
   30:12.
seriously
   21:10,
   32:17.
seriousness
   2:24, 7:25,
   10:12, 10:24,
   11:6, 28:4,
   34:19.
serve 39:3.
served 15:5,
   44:13.
Services
   38:14.
set 3:17, 3:25,
   7:21, 10:15,
   14:8,
   18:18.
Seth 1:33.
severe 11:2.
severely
   30:14.
shall 39:7,
   39:24, 41:13,
   41:23, 42:1,
   42:5,

44:25.
share 40:19.
sheet 40:7.
shit 10:17.
shoes 37:11.
short 10:6.
shorthand
   1:49.
shouted
   32:23.
show 26:22.
shown 11:21.
shy 19:12,
   19:15.
side 2:18,
   11:23, 12:3,
   12:11, 21:16,
   29:16, 30:25,
   32:22,
   45:9.
sides 19:6.
significant
   28:7, 31:21,
   38:5.
significantly
   12:7, 15:11,
   24:8.
signs 29:1.
similar 8:12,
   15:9, 16:10,
   37:15,
   37:16.
simply 10:23,
   16:23.
sir 26:23,
   27:4, 27:12,
   45:10.
site 16:18.
situation 25:7,
   30:19.
six 24:11.
slight 42:22.
slightly 14:17,
   16:1, 36:2,
   36:7, 37:3.
small 28:15.
snapped 30:8.
social 24:18.
Somebody 12:14,
   17:17, 23:10,

23:16.
somehow 18:12,
   18:14,
   28:5.
Someone 12:16,
   18:12, 18:20,
   18:24, 20:7,
   20:8, 22:1,
   22:16, 26:5,
   31:7, 31:10,
   31:15.
sometimes
   26:8.
somewhat 15:9,
   37:15.
sorry 14:17,
   17:4.
sort 9:8, 13:4,
   18:2, 31:9,
   32:5, 34:25,
   35:18.
sorts 22:3.
sounded
   34:25.
space 33:1.
spats 20:2.
special 7:10,
   39:5, 39:24,
   40:5.
specific 34:24,
   35:6, 36:8.
spectrum
   22:18.
spent 20:16.
spin 18:16.
spot 27:10.
sprays 23:15.
stairs 11:12,
   11:25, 12:2,
   12:19,
   13:17.
standing 21:6,
   23:16.
start 3:21,
   27:5, 30:18,
   35:23, 43:2,
   43:5, 43:21,
   43:22,
   43:24.
started 16:4.

starting
  15:11.
state 29:6,
  29:9, 29:13,
  39:13.
stated 4:19,
  7:13.
statement
  33:4.
statements
  3:25, 4:7,
  8:7.
States 1:1,
  1:5, 1:19,
  1:27, 1:43,
  2:3, 2:7,
  3:18, 5:3,
  7:11, 7:21,
  13:11, 38:24,
  39:6, 39:21,
  40:20, 41:5,
  41:14, 42:3,
  42:8,
  42:15.
station
  19:17.
statute 6:23,
  7:2, 7:7,
  39:22.
statutory 4:22,
  4:25, 5:3,
  7:13.
steelworker
  33:21.
stenographic
  45:21.
step 3:3, 3:8,
  3:13, 3:16,
  3:18, 4:21,
  6:13.
steps 2:23.
stolen 21:6,
  21:24.
stood 10:10.
stop 9:21.
stormed 11:9.
straight 12:2,
  12:11, 21:8,
  21:9.
stream 16:22.

strike 30:21.
strong 23:7,
  45:5.
strongly
  22:13.
structured
  42:23.
submit 39:16,
  40:24,
  41:6.
submitted
  45:2.
Substance 20:2,
  39:15, 39:16,
  40:24, 40:25,
  41:1.
substantial
  5:7.
succeed 10:7.
succeeded
  10:5.
suffered
  15:5.
sufficient
  7:23, 38:9,
  38:21.
suggest
  16:14.
suggested
  10:13, 10:21,
  37:14,
  37:18.
suggests 9:8.
Suite 1:36.
summarize
  4:24.
superseding
  44:21.
supervised
  6:21, 6:23,
  6:24, 6:25,
  38:12, 39:4,
  41:6,
  43:22.
supervision
  39:7, 39:12,
  39:17,
  41:8.
supplement
  2:14.

support 2:16,
  24:22,
  30:7.
supportive
  20:9.
supposed 35:2,
  44:9.
surrender
  25:12, 25:16,
  38:15.
surrendered
  19:22.
suspended
  15:7.
swept 23:17.
system 34:6.
.
.
.
< T >.
T. 1:41,
  45:25.
talked 45:3.
tamper 41:1.
tangible
  28:11.
tape 19:18.
teenager
  20:3.
tenth 24:9.
term 6:24,
  6:25, 39:2,
  39:4.
termination
  42:7.
terms 6:21,
  6:23, 7:6,
  19:8, 23:4,
  36:16,
  40:5.
terrible
  33:25.
terrified
  9:16.
test 39:17.
testing 40:24,
  40:25,
  41:2.
tests 39:18.
text 9:7,
  10:14,

  22:24.
texted 9:22.
thankful
  6:10.
Thanks 18:6,
  18:9.
THE DEFENDANT
  4:12, 4:17,
  27:1, 27:5.
thereafter
  39:18.
They'll 43:5.
they've 36:17,
  36:18,
  43:17.
thinks 21:18,
  29:11.
Third 3:13,
  12:15,
  37:20.
though 12:22,
  13:20, 18:2,
  22:15, 24:19,
  38:4.
thoughts
  27:18.
threat 29:19.
threatened
  10:2, 28:9.
threatening
  10:5, 32:6.
threats
  32:22.
three 6:24,
  7:1, 14:13,
  17:21,
  39:15.
three-level
  5:9.
three-year
  39:4.
time. 10:18.
Timothy J.
  Kelly 1:18.
today 2:25,
  3:3, 32:15,
  38:15.
took 11:8,
  23:21, 31:3,
  32:18.

total 5:10,
    40:12.
tough 21:11,
    22:14.
toward 9:15,
    32:7,
    36:15.
tradition 30:8,
    30:10,
    30:11.
Transcript
    1:17, 1:49,
    45:21.
transcription
    1:50.
transfer 21:25,
    28:9, 30:9.
treat 24:2.
treated
    36:16.
treatment 42:5,
    42:7.
Trespass
    10:17.
trouble
    34:11.
true 18:17,
    19:3, 31:10,
    34:11,
    36:13.
Trump 9:24.
truth 19:5.
try 29:1, 29:5,
    29:6, 29:13,
    33:8.
trying 31:8.
turn 5:17,
    8:15.
turned 12:25.
Turning 33:18,
    35:15.
two 5:6, 5:19,
    8:19, 8:20,
    9:6, 20:16,
    20:21, 21:3,
    28:2, 37:17,
    39:14, 39:18,
    44:19.
two-level
    16:2.

types 35:15.
.
.
< U >.
ultimate 15:18,
    36:20.
unable 42:12.
unbelievable
    8:20.
unbroken 30:8,
    30:10.
underscore
    21:20.
understand
    6:14, 16:16,
    20:17, 42:22,
    43:9.
understanding
    15:25.
undue 18:21.
unfair 29:12.
Unfortunately
    23:7, 23:17,
    32:22.
United 1:1,
    1:5, 1:19,
    1:27, 1:43,
    2:3, 2:6,
    3:18, 5:3,
    7:11, 7:21,
    13:10, 38:23,
    39:6, 39:21,
    40:20, 41:5,
    41:14, 42:3,
    42:8,
    42:15.
unlawful
    39:15.
unlawfully
    39:14.
unless 24:23.
unlocked
    12:17.
unrelated
    36:18.
unspecified
    35:18.
until 17:22,
    41:24,
    43:22.

unto 37:6,
    38:5.
unwarranted
    8:11, 35:21,
    36:20.
us. 9:17,
    9:21.
using 29:18,
    31:20.
.
.
< V >.
vandalism
    10:18.
variance 6:15,
    35:18.
vary 24:14.
venom 9:15.
verbal 9:12.
versus 2:3,
    13:11,
    42:15.
vicious 9:12.
Victim 41:15.
victims 8:13.
video 13:1.
videos 31:1.
view 11:18.
violation
    5:2.
violence 21:24,
    22:4, 23:25,
    29:18,
    29:19.
voluntarily
    19:22,
    25:16.
voluntary
    25:11.
volunteers
    20:10.
vote 28:23,
    29:1.
vs 1:8.
vulnerable
    25:7.
.
.
< W >.
W. 1:25.

Wade 2:4,
    39:1.
waiting 10:9.
waive 41:11.
waives 40:3.
walked 12:3,
    12:11, 12:25,
    13:1,
    16:24.
Walters 2:7,
    43:4, 43:8,
    43:12,
    43:16.
wandered
    22:19.
wanted 23:8,
    36:24.
warrant 3:11,
    19:19,
    19:21.
Washington
    1:10, 1:37,
    1:46, 41:18,
    41:22.
watched
    17:19.
ways 7:20,
    20:21, 21:3,
    22:3, 22:8,
    27:24, 28:8,
    32:9.
weapon 23:10,
    30:22,
    31:20.
wear 28:4.
weeks 20:16.
weigh 22:6,
    30:15, 30:24,
    32:24,
    33:17.
weighty 8:19.
West 1:28.
Whatever 21:21,
    22:24, 22:25,
    23:4, 26:22,
    30:22.
whether 3:4,
    3:5, 21:23,
    29:13,
    32:13.

whoever
  28:24.
whole 26:4.
wife 24:20,
  33:19, 33:22,
  42:24,
  45:6.
will 3:19,
  4:18, 4:19,
  4:23, 8:16,
  21:13, 33:23,
  34:16, 38:15,
  38:19, 41:4,
  41:6, 41:9,
  42:25, 43:23,
  45:8.
window 11:10,
  16:19,
  16:20.
wing 16:17.
wish 3:14,
  21:1, 21:2,
  23:19,
  45:9.
Within 9:10,
  12:22, 39:17,
  41:3, 41:7,
  41:23,
  42:11.
without 27:10,
  40:22,
  42:14.
won 21:21.
Wood 13:11,
  17:23,
  36:23.
Woods 15:8,
  16:11, 18:12,
  24:4,
  24:25.
wording 43:9.
words 13:5,
  34:25.
work 4:10,
  33:21,
  44:5.
working 20:7,
  43:11.
world 34:4.
worried

10:19.
worse 9:9,
  30:19.
worst 34:3.
wounded
  20:18.
write 29:5.
writer 6:4.
wronged 29:8.
wrongly
  21:23.
.
.
< Y >.
year 3:23, 7:1,
  15:6.
years 5:4,
  6:25, 7:1,
  7:3, 8:19,
  8:20, 20:6,
  28:2,
  33:19.
yelling 32:2.
yourself 29:22,
  31:1, 31:3,
  32:7.
Yup 23:13.
.
.
< Z >.
zeal 23:25.
zealous 23:8.
Zucker 1:33,
  1:34, 2:6,
  4:5, 4:10,
  6:17, 18:8,
  25:15, 25:23,
  26:2, 26:17,
  26:24, 36:22,
  37:9, 42:20,
  43:3, 43:25,
  45:15.